# EXHIBIT C

ORIGINAL

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

JAN 27 2005

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO   GREGORY C. LANGHAM
                                              CLERK

Civil Action No. 01-RB-1451(CBS)

(Consolidated with Civil Action Nos. 01-RB-1472, 01-RB-1527, 01-RB-1616, 01-RB-1799, 01-RB-1930, 01-RB-2083, 02-RB-0333, 02-RB-0374, 02-RB-0507, 02-RB-0658 and 02-RB-755)

In re QWEST COMMUNICATIONS INTERNATIONAL INC. SECURITIES LITIGATION

---

**ORDER PROVIDING FOR COORDINATED DISCOVERY WITH PARALLEL QWEST LITIGATION**

---

## Background of Coordinated Discovery

1. Plaintiffs in *In re Qwest Securities Litigation* (the "Federal Class Securities Litigation") *In re Qwest Savings and Investment Plan ERISA Litigation*[2], *Stichting Pensioenfonds ABP v. Qwest Comm. Int'l Inc. et al.*[3], *Teachers' Retirement System of Louisiana v. Qwest et al.*[4], *Shriners Hospitals for Children v. Qwest et al.*[5], and *New York City Employees' Retirement Sys. v. Qwest et al.*[6] filed actions against Qwest Communications International Inc. ("Qwest"), certain current and former officers, directors, and employees of Qwest, Arthur Andersen LLP, certain bank defendants, and certain corporate defendants, asserting claims based on alleged misstatements and omissions in connection with Qwest securities. The term "Federal Coordinated Qwest Actions" shall refer to the actions described in this paragraph.

2. Plaintiffs in *California State Teachers' Retirement System v. Qwest et al.*[7], *State of New Jersey v. Qwest et al.*[8], *State Universities Retirement System of Illinois v. Qwest et al.*[9], and *Passage v. Qwest et al.*[10] (collectively "Qwest State Actions") separately filed actions against Qwest, certain current and former officers, directors, and employees of Qwest, certain bank defendants, certain corporate defendants, and Arthur

---

[1] Civil Action No. 04-RB-0238(CBS) (D. Colo.).
[2] Civil Action No. 02-RB-464(CBS) (D. Colo.).
[3] Civil Action No. 04-RB-0238(CBS) (D. Colo.).
[4] Civil Action No. 04-RB-782(CBS) (D.Colo.).
[5] Civil Action No. 04-RB-781(CBS) (D.Colo.).
[6] Civil Action No. 04-RB-1964(CBS) (D.Colo.).
[7] Civil Action No. CGC-02-415546 (Cal. Super. Ct.
[8] Civil Action No. L-3738-02 (N.J. Super. Ct.)
[9] Civil Action No. 03-CH-608 (Ill. Cir. Ct.)
[10] Civil Action No. 02-CV-1102 (Co. Dist. Ct.)

Andersen LLP, asserting claims based on alleged misstatements and omissions in connection with Qwest securities.

3.  With the exception of *Passage v. Qwest et al.*, which has only recently been remanded to state court in Colorado, each of the courts and parties in the Qwest State Actions have already recognized the significant overlap among these cases and the related importance of coordinating discovery.

4.  This Court desires to minimize the burden on the federal and state courts, promote the efficient and speedy resolution of the Federal Coordinated Qwest Actions and the Qwest State Actions, and to avoid the unnecessary expenditure of time, effort and expense by the parties, courts, and witnesses associated with duplicative discovery.

5.  In order to realize the goals of efficiency and minimization of costs, the Court has established the model discovery coordination protocol set forth herein. The courts presiding over the Qwest State Actions may adopt this protocol, or one substantially similar to it, and no defendant in any of the Federal Coordinated Qwest Actions may object to a proposal that any of the courts presiding over the Qwest State Actions adopt this protocol. Those courts presiding over the Qwest State Actions that adopt the protocol set forth herein, or one substantially similar to it, shall be deemed the "State Coordinated Qwest Actions" within the meaning of this Order. The Federal Coordinated Qwest Actions and State Coordinated Qwest Actions shall be referred to collectively herein as the "Coordinated Qwest Actions."

6.  Qwest shall maintain a current service list for the Coordinated Qwest Actions and shall periodically distribute such list to counsel of record in the Coordinated Qwest Actions

3

## Document and Written Discovery Coordination

All documents produced by any defendant in any of the Coordinated Qwest Actions shall be made available to counsel for plaintiffs in the other Coordinated Qwest Actions provided that any document designated "Confidential" or "Highly Confidential" pursuant to the protective orders in the action where the documents were produced shall be deemed and treated as "Confidential" or "Highly Confidential" for purposes of the relevant Coordinated Qwest Action's confidentiality order and vice versa. In the event documents are not produced directly to all plaintiffs in all Coordinated Qwest Actions, plaintiffs in the Coordinated Qwest Actions shall obtain copies directly from the counsel for the Plaintiff receiving the documents provided that any document designated "Confidential" or "Highly Confidential" pursuant to the protective orders in the action where the documents were produced shall be deemed and treated as "Confidential" or "Highly Confidential" for purposes of the relevant Coordinated Qwest Action's confidentiality order and vice versa. In the event documents are produced by any defendant directly to a document depository, plaintiffs in the Coordinated Qwest Actions shall obtain copies directly from the depository. To the extent practicable, plaintiffs' counsel in the Coordinated Qwest Actions shall avoid serving duplicative document requests.[11] Nothing herein shall preclude plaintiff's counsel in the Qwest State Actions from serving document requests that are substantially similar to those served in any of the

---

[11] In accordance with professional standards regarding client confidentiality, in the event that Arthur Andersen LLP is not a defendant in a Coordinated Qwest Action identified in footnotes 4, 5, and 10 of this Order, or in future Coordinated Qwest Actions not identified in this Order, nothing shall require Arthur Andersen LLP to provide documents to plaintiff(s) in such future Coordinated Qwest Action or in those currently identified in footnotes 4, 5, and 10 of this Order in the absence of a valid subpoena and an appropriate confidentiality order restricting use and dissemination of Confidential Information or Highly Confidential Information. Qwest consents to Arthur Andersen providing any documents pursuant to Paragraph 7 of this Order.

other Coordinated Qwest Actions so that such discovery requests may be enforceable in state court. No documents will be required to be provided under this Paragraph to plaintiffs in Coordinated Qwest Actions in which there is no protective order. Documents made available pursuant to this paragraph shall be made available at least 21 days (or as soon as practicable) before the first Common Qwest Deposition, as defined below.

8. All written discovery produced by any defendant in any of the Coordinated Qwest Actions shall be made available to plaintiffs in all other Coordinated Qwest Actions provided that any document designated "Confidential" or "Highly Confidential" pursuant to the protective orders in the action where the documents were produced shall be deemed and treated as "Confidential" or "Highly Confidential" for purposes of the relevant Coordinated Qwest Action's confidentiality order. Interrogatory responses provided to plaintiffs in the Coordinated Qwest Actions may be distributed by those plaintiffs to any other plaintiff in any Coordinated Qwest Action provided that any document designated "Confidential" or "Highly Confidential" pursuant to the protective orders in the action where the documents were produced shall be deemed and treated as "Confidential" or "Highly Confidential" for purposes of the relevant Coordinated Qwest Action's confidentiality order. Nothing herein shall preclude plaintiffs in the Coordinated Qwest Actions from serving written discovery to the extent otherwise permitted by law. To the extent practicable, however, plaintiffs' counsel in the Coordinated Qwest Actions shall avoid serving duplicative written discovery. Nothing herein shall preclude plaintiff's counsel in the Qwest State Actions from serving interrogatories that are substantially similar to those served in any of the other

Coordinated Qwest Actions so that such discovery requests may be enforceable in state court. No information will be required to be provided under this Paragraph to plaintiffs in Coordinated Qwest Actions in which there is no protective order.

### Deposition Coordination

9.  By January 14, 2005, plaintiffs in the Federal Class Securities Litigation will provide all counsel in the Federal Coordinated Qwest Actions and Qwest State Actions with a proposed schedule of depositions relevant to the Federal Class Securities Litigation that they intend to take. The proposed schedule will only set depositions during the first three weeks of each 4-week cycle. The January 14, 2005 proposed schedule also will note which deponents plaintiffs will seek to depose for more than one deposition day (of eight hours). All deposition discovery may be used by all parties in each of the Coordinated Qwest Actions to the extent provided for under the law governing each such Coordinated Qwest Action.

10. By February 14, 2005, defendants in the Federal Class Securities Litigation will provide all counsel in the Coordinated Qwest Actions with a proposed schedule of depositions relevant to the Federal Class Securities Litigation that they intend to take. The proposed schedule will only schedule depositions during the first three weeks of each four-week cycle and will attempt to schedule depositions around the schedule proposed by plaintiffs on January 14, 2005

11  Deponents identified on plaintiffs' January 14, 2005 proposed schedule and defendants' February 14, 2005 proposed schedule shall be referred to herein as the "Common Qwest Depositions.

12  By February 21, 2005, counsel for plaintiffs in the State Coordinated

6

Qwest Actions shall propose a schedule for depositions of witnesses not identified among the Common Qwest Depositions during the fourth week of each four-week deposition cycle. By March 25, 2005, counsel for plaintiffs in the State Coordinated Qwest Actions may propose a schedule for further depositions during the fourth week of each four-week deposition cycle for witnesses not identified among the Common Qwest Depositions. Subject to Paragraph 20 of this Order, nothing in this paragraph shall be construed as a limitation on the right of the plaintiffs in the State Coordinated Qwest Actions to take such further depositions as permitted under each action's rules. No defendant in any of the Coordinated Qwest Actions shall notice depositions of any Qwest State Plaintiffs during the fourth week in any four-week deposition cycle, but such defendant may notice such depositions during the first 3 weeks of any such cycle.

13. Within two weeks of receiving any of the proposed deposition schedules listed above, any counsel in any Coordinated Qwest Action that represents any proposed deponent shall advise whether the proposed date for such person's deposition is acceptable. Scheduling disputes may be brought before the court(s) where the action is pending, although this Court is willing to attempt to resolve such scheduling disputes in any of the Qwest Coordinated Actions. No plaintiff in any of the Qwest State Actions shall be required to present such matters to this Court.

14. Within two weeks of receiving any of the proposed deposition schedules listed above, to the extent counsel for any party is aware that any deponent is represented by counsel other than counsel for defendants in the Coordinated Qwest Actions, they shall identify that counsel to all other counsel.

15. The party seeking to depose any non-party deponent shall have the burden

of scheduling such deposition in accordance with the applicable rules for the scheduling of non-party depositions – *e.g.*, in the case of the Federal Class Securities Litigation, Federal Rule of Civil Procedure 30(b). Any notice of any deposition in any of the Coordinated Qwest Actions must be issued more than 30 days before the time it states for taking the deposition.

16. Alteration of the date of a noticed deposition may be agreed upon by the party seeking the deposition and counsel for the deponent, if all parties in the Coordinated Qwest Actions receive reasonable notice of the alteration.

17. All deposition notices shall be served by facsimile and, if possible, by email, to all parties in the Coordinated Qwest Actions. The parties to the Coordinated Qwest Actions consent to service of deposition notices in this manner. Deposition notices or attachments to such notices shall clearly identify all parties and counsel in the Coordinated Qwest Actions such that a non-party is able to understand who is eligible to participate at the deposition. Deposition notices shall include a copy of this Order.

18  Any party to any of the Coordinated Qwest Actions shall be entitled to participate through counsel in any deposition proceeding pursuant to this Order. In the event that any counsel in any Coordinated Qwest Action is excluded from a deposition for any reason, this Order shall in no way be used to limit such party's right to pursue such deposition in its own action, whether or not such deposition is duplicative of a deposition taken in the Federal Class Securities Litigation. Additionally, in the event that any party in any Coordinated Qwest Action is precluded from receiving documents under Paragraph 7 of this Order, this Order shall in no way be used to limit such party's right to pursue such document discovery or to retake the deposition of any party who fails to

8

produce documents pursuant to Paragraph 7 of this Order. Counsel for any party to any of the Coordinated Qwest Actions shall be entitled to copies of deposition transcripts and exhibits to depositions taken pursuant to this Order.

19. Unless otherwise agreed among plaintiffs' counsel in the Coordinated Qwest Actions, plaintiffs' counsel in the Federal Class Securities Litigation shall be the Lead Questioner on behalf of plaintiffs for all Common Qwest Depositions. Other plaintiffs' counsel attending depositions may question the witness after the Lead Questioner concludes, but to the extent practicable, such questioning shall not be duplicative of questions already addressed during earlier examinations of the deponent. Subject to Paragraph 25 of this Order, Fed. R. Civ. Proc. 30(d), or any state law equivalent, witnesses shall not be directed not to answer a question on the grounds that the question has previously been asked.

20. No deponent in any of the Coordinated Qwest Actions shall be deposed more than once in his individual capacity in any of the Coordinated Qwest Actions without the agreement of the deponent or an order of the Court based on a showing of good cause.

21. Any counsel otherwise permitted to participate in a deposition under this Order shall be permitted to do so telephonically and/or by such real-time transcription services as that counsel may arrange. [However, no participant appearing other than in person may question the deponent.] Counsel of record in any of the Coordinated Qwest Actions may participate in depositions as provided for herein notwithstanding that such counsel may not be admitted pro hac vice or otherwise in all of the Coordinated Qwest Actions. A party's participation in any deposition shall not constitute a waiver of that

9

party's objection to personal jurisdiction in any of the Coordinated Qwest Actions

22. Lead Plaintiffs in the Federal Class Securities Litigation shall be limited to 80 Common Qwest Depositions. Defendants in the Federal Class Securities Litigation shall be limited to 80 Common Qwest Depositions.

23. Depositions shall each be subject to a presumptive limit of two 8-hour deposition days, with the side noticing a deposition collectively permitted to depose a witness for up to 8 hours, and the other side collectively permitted to depose the witness for an additional 8 hours.[12] Where plaintiffs in the Federal Class Securities Litigation notice a deposition, Lead Plaintiffs in that case shall be entitled to 6 of the 8 hours, with the remaining 2 hours shared among plaintiffs' counsel in the State Coordinated Qwest Actions.[13] These time limits may be altered by agreement of the parties, or an order of the Court based on a showing of good cause. Where plaintiffs in the Federal Class Securities Litigation notice a deposition and the limits for that deposition are increased, Lead Plaintiffs shall complete their examination before plaintiffs' counsel in the other Coordinated Qwest Actions commence their examinations. Further, where plaintiffs in the Federal Class Securities Litigation notice a deposition and the limits for that deposition are increased, plaintiffs in the State Coordinated Qwest Actions shall receive 25% of the additional time.

24. Any objections stated by any counsel attending the deposition shall be preserved in all the Coordinated Qwest Actions on behalf of all parties to such actions.

---

[12] Plaintiffs in the Qwest State Actions do not consent to Philip Anschutz, Joseph Nacchio, Afshin Mohebbi, Drake Tempest, Robert Woodruff, Robin Szeliga, and Gregory Casey being subject to the limits set forth in this paragraph. This list is not exhaustive and is not intended to prevent plaintiffs in the Qwest State Actions from seeking additional time with other witnesses.

[13] Deposition time available to plaintiffs in *In re Qwest Savings and Investment Plan ERISA Litigation* to examine witnesses about issues unique to that litigation shall be specified by a separate order entered in that case.

25    Nothing herein shall constitute a waiver of a witness' or party's right to apply to a court of competent jurisdiction for protections to which he/she is otherwise entitled

At the deponent's election, all Common Qwest Depositions shall take place in Denver, Colorado, or within 25 miles of a deponent's residence or primary place of business.

Where a deposition notice is accompanied by a subpoena *duces tecum*, documents responsive to the subpoena shall be produced to counsel in all the Coordinated Qwest Actions no fewer than 5 days before the deposition is scheduled to commence.

28.    Upon the resolution of the pending dispositive motions in their respective cases, plaintiffs in *Stichting Pensioenfonds ABP v. Qwest Comm. Int'l Inc. et al., Teachers' Retirement System of Louisiana v. Qwest et al., Shriners Hospitals for Children v. Qwest et al., and New York City Employees' Retirement Sys. v. Qwest et al.* ("Federal Opt-Out-Cases") reserve the right collectively to take up to 10 depositions of those individuals whose depositions have not previously been taken, provided however, that plaintiffs in the Federal Opt-Out Cases shall not seek to notice the deposition of any deponent identified among the Common Qwest Depositions until such time as plaintiffs in the Federal Class Securities Litigation determine not to depose that individual. Further, upon an order of the Court based on a showing of good cause, plaintiffs in the Federal Opt-Out Cases may examine additional witnesses not previously deposed in the Coordinated Qwest Actions, and re-examine witnesses previously deposed in the Coordinated Qwest Actions provided however, that plaintiffs in the Federal Opt-Out Cases shall not to seek to notice the deposition of any deponent identified among the

Common Qwest Depositions until such time as plaintiffs in the Federal Class Securities Litigation determine not to depose that individual. Defendants in the Coordinated Qwest Actions preserve all rights to move for protective orders of otherwise object to the noticing of such depositions. Any deposition noticed pursuant to this Paragraph must otherwise comply with the deposition procedures set forth above for the depositions taken by the State Coordinated Qwest Actions.

SO ORDERED this 20th day of January, 2005