UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In Re Fannie Mae Securities Litigation | ) ) ) | Consolidated Civil Action. No. 1:04-cv-1639 (RJL) |

| | | |
|---|---|---|
| Evergreen Equity Trust, et al. <br><br> v. <br><br> Federal National Mortgage Association, et al., | ) ) ) ) ) ) ) | No. 1:06-cv-00082 (RJL) |

| | | |
|---|---|---|
| Franklin Managed Trust, et al. <br><br> v. <br><br> Federal National Mortgage Association, et al., | ) ) ) ) ) ) ) | No. 1:06-cv-00139 (RJL) |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION TO LIFT THE PSLRA DISCOVERY STAY**

GRANT & EISENHOFER P.A.
Stuart M. Grant (DC BAR ID #450895)
Chase Manhattan Centre
1201 N. Market Street, Suite 2100
Wilmington, DE 19801
Tel: (302) 622-7000
Fax: (302) 622-7100

Dated: April 27, 2006

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ....................................................................................... 1

FACTUAL BACKGROUND AND OTHER PROCEEDINGS ........................................ 2

ARGUMENT .................................................................................................................... 6

THE PSLRA DISCOVERY STAY SHOULD BE LIFTED ........................................... 6

    A.    The Policy Rationale Underpinning The PSLRA Stay Does Not
          Apply To These Proceedings ............................................................... 6

    B.    Lifting The PSLRA Stay Will Impose No Additional Burden
          On Defendants ..................................................................................... 7

    C.    Plaintiffs Will Be Unduly Prejudiced If The PSLRA Stay Is Enforced .......... 9

CONCLUSION ............................................................................................................... 10

i

# TABLE OF AUTHORITIES

## CASES

*In re Enron Corp. Sec., Deriv. and "ERISA" Litig.,*
    No. Civ. A. H-01-3624, 2002 WL 31845114 (S.D. Tex. Aug. 16, 2002) ............ 8, 10

*In re Fannie Mae Securities Litig.,*
    362 F.Supp.2d 37 (D.D.C. 2005) ........................................................................... 9

*In re LaBranche Sec. Litig.,*
    333 F. Supp. 2d 178 (S.D.N.Y. 2004) ............................................................. 6, 8, 9

*In re Royal Ahold N.V. Sec. Litig.,*
    220 F.R.D. 246 (D. Md. 2004) ...................................................................... 8, 10

*In re WorldCom, Inc. Sec. Litig.,*
    234 F. Supp. 2d 301 (S.D.N.Y. 2002) ............. .................................................. 6, 9

## STATUTES

15 U.S.C. § 78u-4(b)(3)(B) ................................................................................... 6

Plaintiffs in *Evergreen Equity Trust, et al v. Federal National Mortgage Association, et al.*, No. 1:06-cv-00082 (RJL) ("Evergreen Action") and *Franklin Managed Trust v. Federal National Mortgage Assoc., et al.*, Civil Action No. 1:06CV00139 (RJL) ("Franklin Action") (collectively "Plaintiffs") submit this memorandum of law in support of their joint motion for relief from the automatic stay provision of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(b)(3)(B), so as to permit Plaintiffs to participate in coordinated discovery along with the Lead Plaintiffs in the related consolidated class action captioned *In re Fannie Mae Securities Litigation*, Master Civil Action No. 1:04CV01639 (the "Class Action") pending in this Court.

## PRELIMINARY STATEMENT

Plaintiffs seek relief from the PSLRA discovery stay so that they can participate fully in coordinated discovery with the Class Action, and thereby eliminate the need for duplicative discovery and depositions as between the various actions. Denying Plaintiffs' request will only increase the discovery burdens upon the defendants and third parties, and will unfairly prejudice Plaintiffs, as Plaintiffs will be unable to participate in any depositions at all prior to resolution of motions to dismiss in Plaintiffs' actions, and will be ill-equipped to participate in depositions even after the motions to dismiss are resolved if they are not permitted to review the documents that are produced in the Class Action and to serve their own discovery requests to the extent necessary to supplement those served in the Class Action.

Lifting the PSLRA stay to permit Plaintiffs to participate in coordinated discovery with the Class Action is in the best interests of all parties to these proceedings. The PSLRA's automatic stay is intended to prevent a plaintiff in a securities fraud action from exacting a quick settlement in a meritless suit by burdening defendants with costly discovery before the merits of

their claims have been tested. At bar, however, the merits of many of Plaintiffs' claims have already been established by virtue of the Court's denial of motions to dismiss similar claims in the Class Action in favor of the Class Plaintiffs. Indeed, counsel for Fannie Mae has recognized the logic of lifting the PSLRA stay in these action, stating at the last status conference that Fannie Mae did not intend to invoke the PSLRA to stop Plaintiffs from participating in discovery. The fact that the principal defendant in these proceedings does not oppose Plaintiffs' participation in the Class Action discovery demonstrates that the primary rationale supporting the enforcement of the PSLRA's stay is absent in this case.

While Plaintiffs have also asserted claims against parties not named in the Class Action, discovery is virtually inevitable against these parties in the Class Action, and indeed the Class Action plaintiffs have already requested discovery from at least one such party, KPMG. If these parties are to be subjected to discovery requests and depositions in the Class Action anyway, it makes sense to allow Plaintiffs to serve such requests and participate in such depositions as well, to ensure an orderly and efficient prosecution of all the related proceedings, with the least burden on the parties and without costly redundancy. There is no prejudice to these defendants in permitting Plaintiffs access to any documents they produce in the Class Action, and since they are producing these documents anyway, there is no additional burden to them and Plaintiffs will cover any reasonable costs in making additional copies of the documents.

## FACTUAL BACKGROUND AND OTHER PROCEEDINGS

This action arises out of a scandal of tremendous proportions, involving billions of dollars, at Fannie Mae (¶ 1).[1] On September 22, 2004, Fannie Mae disclosed that the Office of Federal Housing Enterprise Oversight ("OHEO") had issued a report (the "Report") finding that

---

[1]    "¶ __" refers to the paragraphs of the Complaint filed on January 17, 2006 in the Evergreen Action.

Fannie Mae had systematically manipulated its earnings in order to minimize fluctuations (thus

understating risk) and to meet compensation targets for senior executives. *Id.* After the close of

trading that day, OFHEO released its detailed 198-page Report to the public. *Id.* The

exhaustively researched Report concluded that Fannie Mae's management had (a) violated

generally accepted accounting principles ("GAAP") in accounting for derivative transactions and

hedging activities; (b) violated GAAP in accounting for amortization of purchase premiums and

discounts and other deferred charges; (c) failed to ensure adequate internal controls; (d) deferred

expenses to achieve bonus compensation targets; and (e) maintained a corporate culture that

emphasized earnings stability at the expense of accurate financial disclosures.

According to the OFHEO report, "The matters detailed in this report are serious and raise

concerns regarding the validity of previously reported financial results, the adequacy of

regulatory capital, the quality of management supervision, and the overall safety and soundness

of [Fannie Mae]." (¶ 2). In the cover letter to the Fannie Mae Board of Directors (the "Board")

which accompanied the Report, OFHEO further stated that its findings "cannot be explained as

mere differences in interpretation of accounting principles" but instead involved "clear instances

in which management sought to misapply and ignore accounting principles for the purposes of

meeting investment analyst expectations; reducing volatility in reported earnings; and enabling

fragmented process and systems, and an ineffective controls environment to exist." *Id.*

A formal SEC investigation and a criminal probe by the United States Justice Department

followed close on the heels of the release of the OFHEO Report, and in the days following the

disclosures of fraud, Fannie Mae's market capitalization fell by over $11.8 billion dollars. Yet,

the revelations of September 2004 were only the tip of the iceberg. Ongoing investigations into

Fannie Mae's accounting continue to uncover the broad scope of the Company's accounting

3

manipulations and the Company is in the process of preparing a restatement that will impact its past financial statements by more than *$12 billion*. Since the first disclosures of the fraud, the Company has lost over $25 billion in market capitalization. (¶¶ 3-4)

Following the commencement of securities class action lawsuits in the Fall of 2004, and the appointment of lead plaintiffs in the Class Action, on March 4, 2005, the lead plaintiffs filed their Consolidated Class Action Complaint For Violations of Federal Securities Laws ("Class Action Complaint"). The Class Action Complaint asserts claims pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, against four defendants: Fannie Mae, Franklin Raines ("Raines"), Timothy Howard ("Howard"), and Leanne Spencer ("Spencer"). On February 23, 2006, this Court rejected each of the defendants' motions to dismiss the Class Action in their entirety, and discovery commenced thereafter.

Plaintiffs are institutional investors whose massive purchases and losses in Fannie Mae stock exceed those of the Class Action lead plaintiffs.[2] On January 17, 2006, Plaintiffs filed individual actions alleging four state law claims, plus federal securities claims pursuant to Sections 10(b), 18, 20A and 20(a) of the Securities Exchange Act of 1934 and Sections 11 and 15 of the Securities Act of 1933. Plaintiffs brought these claims against Fannie Mae and the three individual defendants who are named in the Class Action, as well as 17 current and former members of Fannie Mae's Board of Directors and one "John Doe" defendant (an insurance company). In addition, the Franklin Action asserts claims against KPMG.

Pursuant to a Stipulated Order of Consolidation entered in the Class Action, the defendants in the Evergreen and Franklin Actions have sought to consolidate those individual

---

[2]    According to their motion for appointment as lead plaintiffs, the Class Action lead plaintiffs sustained losses of approximately $38 million. Plaintiffs in the Evergreen Action sustained losses of approximately $48 million, while Plaintiffs in the Franklin Action sustained losses of approximately $45 million.

actions with the Class Action.   Plaintiffs have objected to consolidation and have argued that it is more appropriate to *coordinate* Plaintiffs' individual actions for discovery purposes with the Class Action while allowing Plaintiffs to maintain autonomy over the prosecution of their own cases.  Indeed, a principal reason for bringing individual actions was to ensure that Plaintiffs could directly prosecute their sizeable claims with their own counsel and own litigation strategy.

On March 17, 2006, this Court convened a status conference ("March 17 Hearing") and heard arguments from all interested parties on the issue of consolidation versus coordination, and this issue is now *sub judice*.  *See* Transcript of Status Hearing dated March 17, 2006 ("Hearing Tr."), attached hereto as Exhibit A.  At the March 17 Hearing, Fannie Mae's counsel indicated that Fannie Mae would not invoke the PSLRA stay against Plaintiffs because its interests were to ensure a coordinated discovery schedule:  "Fannie Mae is not going to invoke the Reform Act to stop discovery in these proceedings. We are moving forward . . . on a coordinated basis . . . 99.9 percent of the discovery is coming from my client . . . these cases are going to move forward. We're going to have discovery. The depositions are going to continue."  Hearing Tr. at 27:11-19.

Class Counsel, meanwhile, is pursuing discovery against defendants and other third parties in the Class Action.  At the March 17 Hearing, Class Counsel represented that the defendants had produced over 500,000 pages of discovery, that discovery production was ongoing, and that document discovery was scheduled to be completed by June 16, 2006. *See* Hearing Tr. at 24:14; 36:12-13.  In addition to discovery obtained from Fannie Mae, Class Counsel has served subpoenas on KPMG, Fannie Mae's independent auditor, as well as on third parties.  Documents obtained in the Class Action are also being shared with the plaintiffs in the related derivative and ERISA litigation.  Hearing Tr. at 11:9-12.

## ARGUMENT

### THE PSLRA DISCOVERY STAY SHOULD BE LIFTED

The PSLRA's automatic stay of discovery was enacted "to minimize the incentives for plaintiffs to file frivolous securities class actions in the hope either that the corporate defendants will settle those actions rather than bear the high costs of discovery, or that the plaintiff will find during discovery some sustainable claim not alleged in the complaint." *In re WorldCom, Inc. Sec. Litig.*, 234 F. Supp. 2d 301, 305 (S.D.N.Y. 2002) (internal citations omitted). To that end, the PSLRA provides that "all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party." 15 U.S.C. § 78u-4(b)(3)(B).

The PSLRA stay should be lifted to permit Plaintiffs to participate in coordinated discovery with the Class Action because (1) the policy reasons underlying the PSLRA stay do not warrant its continued application to Plaintiffs' cases; (2) Plaintiffs' request will pose no additional burdens on any defendants, and will actually promote efficiency and avoid duplication; and (3) Plaintiffs' ability to effectively strategize and prosecute their case will be unfairly prejudiced if plaintiffs and defendants in related proceedings obtain an informational and strategic advantage over Plaintiffs because of their greater access to discovery.

### A.    The Policy Rationale Underpinning The PSLRA Stay Does Not Apply To These Proceedings

At bar, the policy reasons for enforcing the PSLRA stay against the Franklin and Evergreen Actions are notably absent. Clearly, Plaintiffs' complaint is not a strike suit seeking to extort a quick settlement through costly discovery. *In re LaBranche Sec. Litig.*, 333 F. Supp. 2d 178, 181 (S.D.N.Y. 2004) (noting that Congress enacted the discovery stay to prevent

6

plaintiffs from filing securities class actions with the intent of using the discovery process to force a coercive settlement or to find a claim not alleged in the complaint). In the Class Action, this Court rejected the defendants' motions to dismiss in their entirety. Since the facts and circumstances supporting the Section 10(b) and 20(a) claims asserted in the Franklin and Evergreen Actions are almost identical to the Class Action, those claims are on the same sound footing as the claims in the Class Action. Thus, there is no real question that Plaintiffs' cases will proceed as to those claims, and there is no reason to subject Plaintiffs to a stay of discovery regarding the facts pertinent to those claims. Although Plaintiffs have also asserted other claims that have not yet been addressed in the Class Action, those claims arise out of substantially the same facts as Plaintiffs' Section 10(b) and 20(a) claims, and thus it would be impracticable to try to stay discovery as to only the claims that have not yet been addressed.

Nor is there any prejudice to the defendants in the Evergreen and Franklin Actions who are not named as defendants in the Class Action. These individuals and entities will be (and in some cases already are) targets of discovery in the Class Action, and even if the Court were to dismiss Plaintiffs' claims against them, they would be targets of third party discovery in Plaintiffs' actions. Therefore, continuing the PSLRA stay will not save these parties from the cost or burden of discovery.

### B.  Lifting The PSLRA Stay Will Impose No Additional Burden On Defendants

Not only is the policy rationale for enforcing the PSLRA stay against Plaintiffs wholly absent in this case, there are compelling policy reasons to allow Plaintiffs to pursue discovery along with the other related actions. Permitting Plaintiffs to participate in discovery now will allow Plaintiffs and the Class Action plaintiffs to litigate their cases and develop their strategies

based on the same universe of facts, and will reduce the burden on defendants and third parties by eliminating the need for deposition witnesses to appear more than once.

Plaintiffs seek access to the documents produced in the Class Action, as well as the opportunity to participate in depositions in the Class Action and to serve their own discovery requests to the extent necessary to supplement requests served by the Class Action plaintiffs. Courts frequently lift the PSLRA discovery stay to allow plaintiffs to obtain documents produced in other proceedings, since the burden on defendants in producing those documents is slight. *See, e.g., In re Royal Ahold N.V. Sec. Litig.*, 220 F.R.D. 246, 253 (D. Md. 2004) ("the burden of production on the defendants should be relatively slight in this case because the requested materials have been produced already to other parties."); *In re Enron Corp. Sec., Deriv. and "ERISA" Litig.*, No. Civ. A. H-01-3624, 2002 WL 31845114, *2 (S.D. Tex. Aug. 16, 2002) ("Lead Plaintiff argues that here the burden would be slight because Enron has already found, reviewed, and organized the documents. The Court agrees. In a sense this discovery has already been made and it is merely a question of keeping it from a party because of the strictures of a statute designed to prevent discovery abuse"). Any incidental burden will be further reduced by the fact that Plaintiffs are willing to pay the reasonable costs of copying the materials to be produced. *See LaBranche*, 333 F. Supp. 2d at 183 (offer to pay costs of production lessens any burden on the producing party).

Nor will the defendants be burdened if Plaintiffs are permitted to participate in depositions taken in the Class Action, or to serve their own discovery requests to supplement those served by Class Counsel. Allowing Plaintiffs to participate in Class Action depositions will actually decrease the burden on the defendants and witnesses, as it will eliminate the need for multiple depositions of the same witnesses. Likewise, allowing Plaintiffs to serve

supplemental discovery requests will enable Plaintiffs to obtain information that may be relevant to their claims and necessary for their questioning of witnesses in depositions, but which was not requested by Class Counsel. Again, this will eliminate the need for multiple depositions of the same witnesses.

### C.    Plaintiffs Will Be Unduly Prejudiced If The PSLRA Stay Is Enforced

Lifting the discovery stay will avoid undue prejudice to Plaintiffs. As this Court recently recognized, a lifting of the stay to prevent undue prejudice "is warranted when the 'prejudice . . . is improper or unfair under the circumstances.'" *In re Fannie Mae Sec. Litig.*, 362 F. Supp. 2d 37, 39 (D.D.C. 2005) (quoting *In re CFS-Related Securities Fraud Litig.*, 179 F.Supp.2d 1260, 1265 (N.D. Okla. 2001). To demonstrate unfair prejudice, the plaintiff must show that either the defendant will be unfairly shielded from liability without the requested discovery, or the plaintiffs would be at an informational disadvantage during settlement negotiations. *Id.* Defendants have produced over 500,000 pages of discovery to Class Counsel and discovery is ongoing. Hearing Tr. at 11:1. Class Counsel has represented that such discovery will be shared with the plaintiffs in certain related actions. Hearing Tr. at 10:16-17. If Plaintiffs are forced to wait months until motions are briefed and the PSLRA stay is lifted before having access to this critical information, their ability to plan their litigation strategy, or to participate meaningfully in any settlement discussions, will be severely hampered.

Courts in similar cases have held that withholding documents that have been or will be produced to others in related cases impedes a plaintiffs' litigation and settlement strategy and results in undue prejudice. *LaBranche*, 333 F. Supp. 2d at 183 (lifting stay as "Lead Plaintiffs will be the only interested party without access to those documents and will be prejudiced by their inability to make informed decisions about their litigation strategy"); *WorldCom*, 234 F. Supp. 2d at 305 ("Without access to documents already made available to the U.S. Attorney, the

SEC, and in whole or in part to the WorldCom's Creditors Committee and the documents that will in all likelihood soon be in the hands of the ERISA plaintiffs, [lead plaintiff] would be prejudiced by its inability to make informed decisions about its litigation strategy in a rapidly shifting landscape."); *Royal Ahold*, 220 F.R.D. at 252 (lifting PSLRA stay and requiring production by Royal Ahold, and other defendants, because without access to those documents the securities plaintiffs could suffer a "severe disadvantage in formulating their litigation and settlement strategy.")

Thus, while the Class Action and other related actions are unhindered in their discovery of information and progress toward resolution, whether by settlement or judgment, Plaintiffs are presently left without access to information that is essential to protect their interests in a "rapidly shifting landscape." *See generally Enron*, 2002 WL 31845114, at *1 ("PSLRA's discovery stay … 'was not designed to keep secret from counsel in securities cases documents that have already become available for review by [other] means.'"). The Court can prevent the unfair disadvantage to Plaintiffs, and promote efficient and non-duplicative discovery in these cases, by lifting the PSLRA stay of discovery.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion to lift the PSLRA discovery stay.

## CERTIFICATION

Pursuant to D.D.C. L. Civ. R. 7(m), Plaintiffs' counsel conferred with counsel for KPMG, who indicated that KPMG opposed the relief sought herein.  Plaintiffs' counsel also contacted counsel for Fannie Mae, who has not yet taken a position on Plaintiffs' motion.


DATED:  April 27, 2006                    **GRANT & EISENHOFER P.A.**

BY:    _____

**STUART M. GRANT (DC BAR ID #450895)**
GRANT & EISENHOFER P.A.
Chase Manhattan Centre
1201 N. Market Street, Suite 2100
Wilmington, DE  19801
Telephone:  (302) 622-7000
Facsimile:  (302) 622-7100

*Attorneys for Plaintiffs*

11