UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re Federal National Mortgage Association Securities, Derivative, and "ERISA" Litigation | MDL No. 1668 |

| | |
|---|---|
| In re Fannie Mae Securities Litigation; | Consolidated Civil Action No. 1:04-cv-01639 |
| | Judge Richard J. Leon |
| Evergreen Equity Trust, *et al.*, v. Federal National Mortgage Association, *et al.*; and | Case No. 1:06CV00082 (RJL) |
| Franklin Managed Trust, *et al.*, v. Federal National Mortgage Association, *et al.* | Case No. 1:06CV00139 (RJL) |

**DEFENDANT DANIEL H. MUDD'S MEMORANDUM OF LAW
IN SUPPORT OF HIS SUPPLEMENTAL MOTION TO DISMISS
THE EVERGREEN AND FRANKLIN COMPLAINTS**

Defendant Daniel H. Mudd files this memorandum in support of his supplemental motion to dismiss the Evergreen and Franklin Complaints.  Mr. Mudd incorporates by reference the arguments in the Fannie Mae Motion to Dismiss, the Director Defendants' Motion to Dismiss, and the Gorelick Motion to Dismiss and their accompanying Memoranda of Law.  This memorandum discusses only additional grounds for dismissal that apply specifically to Mr. Mudd.

## BACKGROUND

The Complaint filed by the Evergreen Equity Trust (and related entities) and the Complaint filed by Franklin Managed Trust (and related entities) make only the most cursory allegations about Mr. Mudd individually:

> Daniel H. Mudd was Vice Chairman of the Board, a director, and Chief Operating Officer of Fannie Mae from February 2000 until December 21, 2004, when he was appointed as the Company's interim CEO.  Mudd signed Fannie Mae's Form 10-K filing for 2002 and 2003.

(Evergreen Compl. ¶ 39; Franklin Compl. ¶ 60.)  Both Complaints include Mr. Mudd in the definition "Director Defendants,"  (Evergreen Compl. ¶ 42, Franklin Compl. ¶ 63), but do not include Mr. Mudd in the "Officer Defendants" definition.   (Evergreen Compl. ¶ 23; Franklin Compl. ¶ 44.)  Notably, neither Complaint makes allegations of individual wrongdoing against Mr. Mudd.[1]

Both Complaints focus on a variety of misapplications of accounting principles to various complicated accounting judgments made at Fannie Mae.  Neither Complaint offers any reason to impose liability upon individuals like Mr. Mudd who are not CPAs or accountants and who do not have any specialized training in the types of complicated accounting issues identified in

---

[1] All other references to Mr. Mudd by name appear in paragraphs in which he is grouped with the other Outside Directors who are also named individually.

1

the Complaints. The Complaints make no allegation that Mr. Mudd's positions at Fannie Mae as COO, CEO, or as a director included any specific responsibility for the accounting matters faulted in the Complaint. Indeed, as is conceded in the Franklin Complaint, Mr. Mudd had repeated assurances from both accounting professionals, including Fannie Mae's external auditor KPMG, that Fannie Mae's accounting practices were in compliance with the relevant standards. (*E.g.*, Franklin Compl. ¶¶ 211, 238, 270, 347.) In such circumstances, plaintiffs should not be permitted to group plead to entangle Mr. Mudd in a lawsuit about alleged wrongdoing by others which he was not in a position to suspect.

**ARGUMENT**

**I.    MR. MUDD CANNOT BE HELD LIABLE FOR ANY WRONGFUL ACTS THAT OCCURRED PRIOR TO HIS ARRIVAL AT FANNIE MAE.**

Mr. Mudd began work at Fannie Mae in February 2000. (Evergreen Compl. ¶ 39; Franklin Compl. ¶ 60.) The Complaints do not allege that he had any relationship with Fannie Mae prior to that time; nor could they -- for he did not. Consequently, Mr. Mudd is not and cannot be implicated in the various accounting decisions made prior to February 2000. The most prominent issue identified in the Complaints that predates 2000 is the 1998 decision concerning the proper application of FAS 91. There is ample authority for the proposition that a defendant cannot be liable for any securities law violations that occurred prior to affiliation with the entity. *E.g.*, *Roberts v. Heim*, 670 F. Supp. 1466, 1481, 1487 (N. D. Cal. 1987) (no liability for defendant Pyles under §§ 10(b) or 20(a) for alleged violations that occurred prior to the defendant's affiliation with the entity), *aff'd in part and rev'd in part as to other parties*, 857 F.2d 646 (9th Cir. 1988).

Moreover, there are no allegations in either Complaint to support a claim that Mr. Mudd would have had any reason to examine FAS 91 or other pre-2000 accounting decisions. In such circumstances, therefore, Mr. Mudd cannot be liable for any consequences of the FAS 91

2

decision or any other pre-2000 errors or wrongdoing.[2]  A contrary holding would mean that every time a new executive began a position (without responsibility for accounting matters) in a company, the new executive would have to perform an extensive examination of all prior accounting judgments or face the risk of liability for such prior decisions.  Such an outcome is unrealistic and nonsensical.

II.   THE ALLEGATIONS OF THE COMPLAINTS DO NOT SUPPORT IMPOSING LIABILITY ON INDIVIDUALS WITHOUT EXPERTISE IN ACCOUNTANCY.

The Complaints describe in some detail the various accounting problems at Fannie Mae.  In so doing, however, the Complaints also undercut their assertions of liability against individuals without accountancy training.  There can be little doubt that the accounting judgments attacked in the Complaints are highly complex.  For example, accounting for derivatives has been the subject of extensive review in the accounting profession since the mid-1990s.  As noted in the Directors' Memo, at 5, when the problem was identified in the OFHEO September 2004 Report, the then-Chairman of the Securities and Exchange Commission conceded that the issue was complicated.  Moreover, even to this day the accounting profession is re-examining various aspects of FAS 133.  FASB Project Update – Derivative Disclosures (noting FASB ongoing project to reconsider the disclosure requirements of FAS 133 due to extensive criticism of existing standard), available at www.fasb.org/project/derivative_disclosure.shtml (current through 12/21/05).  In such circumstances, plaintiffs should not be allowed to pretend that the accounting problems should have

---

[2] The Complaints identify the following bases for imposing liability upon Mr. Mudd and the other Director Defendants:  Exchange Act § 18 (Count III), Exchange Act § 20(a) (Count IV), Securities Act § 11 (Count V), and negligent misrepresentation (Count IX).  The Evergreen Complaint also asserts liability under Mass. Gen. Laws  Ch. 93A, § 11 (Count XI).  All of these Counts appear to be based solely on a negligence standard of fault.

3

been immediately apparent to those without accountancy training. This Court can and should use this opportunity to reject the plaintiffs' overbroad assumptions.

There is no warrant in logic or the law for imposing upon laypersons the duties and obligations of licensed or specially-trained professionals. In this regard, an analogy can be drawn to legal practice. The practice of accountancy requires a great deal of study. There are significant licensing requirements to obtain a CPA, and the practice of public accountancy is highly regulated. No one would expect a business to take definitive legal positions without consulting a lawyer, and no one would expect a business to take a definitive accounting position without consulting trained accountants. So, too, no one would hold a layperson liable for legal malpractice in following the advice of counsel. Yet, plaintiffs in these cases through the securities laws seek to impose the equivalent of accounting malpractice on defendants such as Mr. Mudd who are not trained in that discipline.

With regard to the control issue under Exchange Act § 20(a), Mr. Mudd also notes that the plaintiffs' decision to include him as part of the "Outside Director" group of defendants indicates that the plaintiffs do not seek to assert he is liable under § 20(a) merely because he is an officer of Fannie Mae. If plaintiffs are attempting to assert § 20(a) liability merely by virtue of officer status, Mr. Mudd adopts and incorporates by reference the arguments made in Ms. Gorelick's Memorandum demonstrating that such an effort is unavailing in this instance. Holding an offership at Fannie Mae does not impose liability for activities unrelated to the particular office held. The Complaints do not allege that Mr. Mudd's officerships at Fannie Mae encompass responsibility for the accounting determinations attacked in the Complaints. Control liability under § 20(a) cannot be established as to him merely because he signed financial statements. There are no allegations that

Mr. Mudd exercised control over the accounting decisions or that he culpably participated in the challenged accounting decisions.[3]

## CONCLUSION

In sum, for the reasons stated in Fannie Mae's Motion to Dismiss, in the Directors' Motion to Dismiss, in Ms. Gorelick's Motion to Dismiss, and in Mr. Mudd's Supplemental Motion to Dismiss there is no basis to allow the plaintiffs to subject Mr. Mudd to liability upon these Complaints as pled. The actions should be dismissed as to Mr. Mudd.

Respectfully submitted,

By:_____/s/_____
James D. Wareham (D.C. Bar No. 411799)
James E. Anklam (D.C. Bar No. 414122)
Carolyn E. Morris (D.C. Bar No. 463865)
PAUL, HASTINGS, JANOFSKY & WALKER LLP
875 15th Street, N.W.
Washington, D.C. 20005
202-551-1700 (tel.)
202-551-1705 (fax)

*Counsel for Defendant Daniel H. Mudd*

Dated: May 15, 2006

---

[3] Mr. Mudd also joins in Ms. Gorelick's arguments and restates them here concerning the bar of the statute of limitations and the failure to plead any state law claims with particularity as required under Rule 9(b). As previously noted, Mr. Mudd also adopts and incorporates by reference all of the arguments in the Fannie Mae Motion to Dismiss and the Directors Motion to Dismiss that apply to the theories of liability and the Counts asserted against Mr. Mudd.