# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| In re Federal National Mortgage Association Securities, Derivative and ERISA Litigation | MDL NO. 1668 |
| In re Fannie Mae Securities Litigation | Consolidated Civil Action No.: 1:04-CV-01639<br><br>Judge Richard J. Leon |
| Evergreen Equity Trust, et al.<br>            v.<br>Federal National Mortgage Association, et al. | Case No. 1:06-CV-00082 (RJL) |
| Franklin Managed Trust, et al.<br>            v.<br>Federal National Mortgage Association, et al. | Case No. 1:06-CV-00139 (RJL) |

## DEFENDANT LEANNE SPENCER'S MEMORANDUM OF LAW IN SUPPORT OF HER MOTION TO DISMISS THE EVERGREEN AND FRANKLIN COMPLAINTS

MAYER, BROWN, ROWE & MAW LLP
1909 K Street, N.W.
Washington, D.C.  20006
Tel. (202) 263-3000
Fax (202) 263-3300

*Counsel for Defendant*
*Leanne G. Spencer*

May 15, 2006

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 3

I.      The Section 20A Claims Against Spencer Should Be Dismissed ......................... 3

II.     The Section 18(a) And Section 15 Claims Should Be Dismissed Because
        They Are Outside The Statute Of Limitations ...................................................... 6

III.    The Section 15 Claim Should Be Dismissed Because Plaintiffs Fail To
        Plead An Underlying Section 11 Claim ................................................................. 8

IV.     SLUSA Preemption Requires The Dismissal Of The State Law Claims ............ 11

V.      Franklin's Claim Under The California Corporations Code Should Be
        Dismissed Because There Are No Allegations Of Willful Misconduct
        Against Spencer ................................................................................................... 13

VI.     Claims After September 22, 2004 Should Be Dismissed .................................... 16

CONCLUSION .................................................................................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*In re AST Research Sec. Litig.*, 887 F. Supp. 231 (C.D. Cal. 1995) ............................................4, 5

*In re Aldus Sec. Litig.*, No. C92-885C, 1993 WL 121478 (W.D. Wash. Mar. 1, 1993)...........................................................................................................................4, 5

*Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974)............................................................7, 8

*In re Baan Co. Sec. Litig.*, 103 F. Supp. 2d 1 (D.D.C. 2000) ........................................................13

*Backman v. Polaroid Corp.*, 540 F. Supp. 667 (D. Mass. 1982) .................................................4, 5

*In re Bankamerica Corp. Sec. Litig.*, 210 F.R.D. 694 (E.D. Mo. 2002)........................................15

*Bennett v. Kiggins*, 377 A.2d 57 (D.C. 1977) ...............................................................................11

*Cal. Amplifier, Inc. v. RLI Ins. Co.*, 94 Cal. App. 4th 102 (2001) ...........................................14, 15

*In re Commonwealth Oil/Tesoro Petroleum Corp. Sec. Litig.*, 467 F. Supp. 227 (W.D. Tex. 1979) ........................................................................................................7

*Cooperman v. Individual, Inc.*, 171 F.3d 43 (1st Cir. 1999)............................................................8

*Copland v. Grumet*, 88 F. Supp. 2d 326 (D.N.J. 1999) ...............................................................3, 4

*In re Cypress Semiconductor Sec. Litig.*, 836 F. Supp. 711 (N.D. Cal. 1993) ..........................................................................................................................................4

*Diamond Multimedia Sys., Inc. v. Superior Court*, 19 Cal. 4th 1036 (1999) ...............................13

*Dodds v. Cigna Sec., Inc.*, 12 F.3d 346 (2d Cir. 1993)...................................................................6

*In re Eng'g Animation Sec. Litig.*, 110 F. Supp. 2d 1183 (S.D. Iowa 2000)...................................4

*In re Enron Corp. Sec., Derivative, & "ERISA" Litig.*, 258 F. Supp. 2d 576 (S.D. Tex. 2003)..................................................................................................................3, 4, 5

*In re Fannie Mae Securities Litigation*, Civil Action No. 1:04-cv-01639............................1, 7, 11

*Gustafson v. Alloyd Co.*, 513 U.S. 561 (1995)................................................................................9

*Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454 (1975)............................................................7

*Lee v. Ernst & Young, LLP*, 294 F.3d 969 (8th Cir. 2002)..............................................................9

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Lindner Dividend Fund, Inc. v. Ernst & Young*, 880 F. Supp. 49 (D. Mass. 1995) ..................................................................................................................7

*In re Microstrategy, Inc. Sec. Litig.*, 115 F. Supp. 2d 620 (E.D. Va. 2000) ....................................3

*Neubronner v. Milken*, 6 F.3d 666 (9th Cir. 1993) ........................................................3

*In re Oxford Health Plans, Inc., Sec. Litig.*, 187 F.R.D. 133 (S.D.N.Y. 1999) ..................................................................................................................4

*Rahr v. Grant Thornton LLP*, 142 F. Supp. 2d 793 (N.D. Tex. 2000) ..............................8

*Redmond v. State Farm Ins. Co.*, 728 A.2d 1202 (D.C. 1999) ........................................12

*Semerenko v. Cendant Corp.*, 223 F.3d 165 (3d Cir. 2000) ...........................................16

*In re Stratus Computer, Inc. Sec. Litig.*, Civ. A. 89-2075-2, 1992 WL 73555 (D. Mass. Mar. 27, 1992) ...................................................................4, 5

*Wachovia Bank & Trust Co., N.A. v. Nat'l Student Mktg. Corp.*, 461 F. Supp. 999 (D.D.C. 1978), *rev'd on other grounds*, 650 F.2d 342 (D.C. Cir. 1980) ....................................................................................................8

*In re WorldCom, Inc. Sec. Litig.*, 294 F. Supp. 2d 431 (S.D.N.Y. 2003) ........................8

*In re WorldCom, Inc. Sec. Litig.*, 308 F. Supp. 2d 236 (S.D.N.Y. 2004) ......................11

*Wyser-Pratte Mgmt. Co. v. Telxon Corp.*, 413 F.3d 553 (6th Cir. 2005) .........................7

**Statutes**

12 U.S.C. § 1719(d) ........................................................................................................9

15 U.S.C. § 77c(a)(2) ......................................................................................................9

15 U.S.C. § 77e [Securities Act of 1983 § 5] ..................................................................9

15 U.S.C. § 77g [Securities Act of 1983 § 7] ..................................................................9

15 U.S.C. § 77k [Securities Act of 1983 § 11] ........................................................ *passim*

15 U.S.C. § 77m [Securities Act of 1983 § 13] ...............................................................6

15 U.S.C. § 77o [Securities Act of 1983 § 15] ......................................................2, 6, 7, 8

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

15 U.S.C. § 77p ......................................................................................................11, 12

15 U.S.C. § 78bb(f)(5)(B) .........................................................................................11

15 U.S.C. § 78j(b) [Securities Exchange Act of 1983 § 10(b)] ........................... *passim*

15 U.S.C. § 78l(g) [Securities Exchange Act of 1983 § 12(g)] ...................................9

15 U.S.C. § 78r [Securities Exchange Act of 1983 § 18] ..................................2, 6, 7, 8

15 U.S.C. § 78t(a) [Securities Exchange Act of 1983 § 20(a)] ....................................2

15 U.S.C. § 78t-1 [Securities Exchange Act of 1983 § 20A] ...............................2, 3, 6

Cal. Corp. Code § 25400 ........................................................................... *passim*

Cal. Corp. Code § 25500 ........................................................................... *passim*

Mass Gen. Law. Ch. 93A ...................................................................................2, 12

## INTRODUCTION

Defendant Leanne G. Spencer ("Spencer") respectfully submits this memorandum of law in support of her motion to dismiss.  In their Complaints, Evergreen Equity Trust and related entities (collectively "Evergreen") and Franklin Managed Trust and related entities (collectively "Franklin") charge the Federal National Mortgage Association ("Fannie Mae"), the company's former outside auditor, KPMG LLP,[1] and 20 current and former officers and board members, including Spencer, with alleged departures from Generally Accepted Accounting Principles ("GAAP") in Fannie Mae's financial statements.

After the Office of Federal Housing Enterprise Oversight ("OFHEO") issued its Report in late September 2004, various plaintiffs brought putative class actions under federal securities laws.  This Court entered a Stipulated Order consolidating all cases brought pursuant to the federal securities laws under the caption *In re Fannie Mae Securities Litigation*, Civil Action No. 1:04-cv-01639.  Minute Order, December 16, 2004, approving Stipulated Order of Consolidation, Docket #21.  On January 13, 2005, the Court named the Ohio Public Employees Retirement System and the State Teachers Retirement System of Ohio as Lead Plaintiffs pursuant to the Private Securities Litigation Reform Act.  Mem. Op. and Order, Docket #52.

In mid January 2006, Evergreen and Franklin decided to "opt-out" of the class action even before a motion for class certification had been made.  They filed nearly identical complaints in this Court asserting claims arising out of alleged errors in Fannie Mae's accounting.  Evergreen and Franklin, like the Lead Plaintiffs, rely heavily on and quote selectively from the OFHEO Report.  Two of the claims asserted by Evergreen and Franklin are the same as in the class action, and the others involve claims arising out of the same facts and

---

[1] Evergreen has not sued KPMG.

circumstances.  Evergreen Complaint ¶ 440; Franklin Complaint ¶ 517.  Eight of the Complaint's

11 counts are directed towards Spencer (and other defendants).  While the Court already has

ruled that similar allegations satisfy the pleading burden with respect to the Section 10(b) and

Section 20(a) claims, Spencer does not concede the allegations should be permitted to proceed,

but will not repeat her arguments that the facts alleged preclude a finding that Spencer intended

to defraud Fannie Mae investors.  However, the other six claims in the Complaints against

Spencer should all be dismissed.

       The Section 20A insider trading claims should be dismissed because Plaintiffs have not

met their requirement of pleading "contemporaneous" purchases on their part and sales on

Spencer's part.  Section 20A protects persons from making unlawful purchases from insiders —

thus, Plaintiffs fail to satisfy both the letter and the spirit of the rule.  The Section 18 and Section

15 claims should also be dismissed because they were filed after the applicable one-year statute

of limitations had run.  Additionally, the Section 15 claims, which assert control person liability

for separate Section 11 claims, would have to be dismissed because Plaintiffs underlying Section

11 claims fail for two reasons: (1) Fannie Mae shares are exempt securities; and (2) the Fannie

Mae shares cannot be traced to the Registration Statement.  Similarly, the state law claims, which

include the common law fraud and negligent misrepresentation claims, Evergreen's claim under

Massachusetts General Law Chapter 93A, and Franklin's claim under California Corporations

Code Sections 25400 and 25500, are preempted under the Securities Litigation Uniform

Standards Act ("SLUSA").  The Section 25500 claim also fails because Plaintiffs do not plead

facts that would demonstrate Spencer is guilty of willful misconduct, a high burden under

California law.  Finally, those claims regarding purchases after September 22, 2004, should be

dismissed because the OFHEO Report publicly revealed the issues with respect to Fannie Mae's accounting on that date.

## ARGUMENT

**I.      The Section 20A Claims Against Spencer Should Be Dismissed.**

To succeed under Section 20A, plaintiffs must show that (1) Spencer sold Fannie Mae securities while in possession of material non-public information, and (2) plaintiffs purchased Fannie Mae securities "contemporaneously" with Spencer's sale.  Plaintiffs must plead the contemporaneous transaction component with specificity.  *See*, *e.g.*, *Neubronner v. Milken*, 6 F.3d 666, 673 (9th Cir. 1993); *Copland v. Grumet*, 88 F. Supp. 2d 326, 338 (D.N.J. 1999).  They have failed to do so.

Section 20A claims target direct purchases of securities from insiders.  The contemporaneous trade requirement "was developed as a more feasible avenue," "since identifying the party in actual privity with the insider is virtually impossible in trades occurring on an anonymous public market."  *In re Enron Corp. Sec., Derivative, & "ERISA" Litig.*, 258 F. Supp. 2d 576, 599 (S.D. Tex. 2003) (quoting *In re Microstrategy, Inc. Sec. Litig.*, 115 F. Supp. 2d 620, 662 (E.D. Va. 2000).  Thus, Plaintiffs can proceed under 20A by showing a "contemporaneous" purchase on their part and sale on defendants' part.  However, the trades must be sufficiently close to be consistent with the purpose of simulating actual privity.  Wide latitude is not permitted to plaintiffs.  Indeed, "a restrictive reading of the term serves the privity-substitute function of the provision while simultaneously guard[ing] against mak[ing] the insider liable to the world."  *Enron*, 258 F. Supp. 2d at 600  (quotations omitted).

The importance of limiting the privity-substitute function has been consistently recognized by the courts.  The best-reasoned cases have required that contemporaneous trades occur on the same day.  For instance, in *Copland*, the court held that trades two days apart were

not contemporaneous and dismissed the claim because "there [we]re no factual allegations which demonstrate that any of the named plaintiffs traded in [company] stock on the same date as [defendant]."  88 F. Supp. 2d at 338; *see also In re AST Research Sec. Litig.*, 887 F. Supp. 231, 234 (C.D. Cal. 1995) (requiring trades on the same day); *In re Aldus Sec. Litig.*, No. C92-885C, 1993 WL 121478, at *7 (W.D. Wash. Mar. 1, 1993) (same); *In re Stratus Computer, Inc. Sec. Litig.*, Civ. A. 89-2075-2, 1992 WL 73555, at *5 (D. Mass. Mar. 27, 1992) (same); *Backman v. Polaroid Corp.*, 540 F. Supp. 667, 670-71 (D. Mass. 1982) (gap of two trading days too long to meet contemporaneous requirement).  A few cases have found that "two or three days, certainly less than a week, constitute a reasonable period to measure the contemporaneity."  *Enron*, 258 F. Supp. 2d at 600; *see also In re Eng'g Animation Sec. Litig.*, 110 F. Supp. 2d 1183, 1196 (S.D. Iowa 2000) (allowing a three-day gap); *In re Oxford Health Plans, Inc., Sec. Litig.*, 187 F.R.D. 133, 144 (S.D.N.Y. 1999) (allowing a five-day gap); *In re Cypress Semiconductor Sec. Litig.*, 836 F. Supp. 711, 714 (N.D. Cal. 1993) (same).  In keeping with the privity-substitute rationale, "the plaintiff's trades must have taken place *after* the challenged insider trading transaction." *Enron*, 258 F. Supp. 2d at 600 (emphasis added).

Evergreen and Franklin fail to plead facts that satisfy the requirement of contemporaneous transactions.  For one thing, Evergreen and Franklin do not plead a single allegation of contemporaneous transactions for entire years.  Neither Evergreen nor Franklin lists a single contemporaneous purchase prior to 2003.  Evergreen Complaint Schedule A; Franklin Complaint Schedule A.  Therefore, the claims should be dismissed in their entirety with respect to stock purchases up to and including those that occurred in 2002.

In fact, Franklin does not plead a single contemporaneous transaction at any point.  Not one set of transactions occurred on the same day.  Only one set of transactions occurred within

three days: Spencer sold 1,044 shares on January 21, 2003, and Franklin Templeton Global

Fund purchased 1,400 shares on January 23, 2003. Franklin Complaint Schedule A.[2] And,

contrary to the holdings in *AST* (transactions on same date), *Aldus* (same date), *Stratus* (same

date), and *Polaroid* (two day gap), only two other transactions occurred within five days of each

other: (1) Spencer sold 1,452 shares on January 5, 2004, and on January 9, 2004, Franklin

Managed Trust purchased 4,000 shares and Franklin Templeton Variable Insurance Products

Trust purchased 6,000 shares; and (2) Spencer sold 6,800 shares on February 19, 2004, and on

February 24, 2004, Franklin Managed Trust purchased 6,000 shares, and Franklin Templeton

Variable Insurance Products Trust purchased 19,000 shares. Franklin Complaint Schedule A.

Similarly, Evergreen alleges only one contemporaneous sale: on January 21, 2003,

Spencer sold 1,044 shares and Evergreen Select Equity Trust purchased 6,500 shares on January

21, 2003. Evergreen Complaint Schedule A.[3] Evergreen alleges only one other set of

transactions that occurred within three days: Evergreen Equity Trust purchased 200 shares of

Fannie Mae stock on May 17, 2004, while Spencer sold 194 shares of Fannie Mae stock on May

18, 2004. However, Evergreen's purchase came *before* Spencer's sale, and thus is not

considered to be a contemporaneous transaction. *See Enron*, 258 F. Supp. 2d at 600. The only

other set of transactions within five days involves a sale by Spencer on January 5, 2004, of 1,452

shares, and a purchase by Evergreen Equity Trust on January 9, 2004, of 3,800 shares.

_____

[2] Franklin Templeton International also purchased 100 shares on January 16, 2003, five days
before Spencer's sale, and 10,000 shares on January 27, 2003, a week after. *Id.*

[3] Evergreen Variable Trust purchased 200 shares on January 17, 2003, Evergreen Equity Trust,
Evergreen Variable Annuity Trust, and Evergreen Select Equity Trust combined to purchase
61,194 shares on January 16, 2003, both before Spencer's January 21 sale, and Evergreen Select
Equity Trust purchased 2,725 shares on January 24, 2003. Evergreen Complaint Schedule A.

Plaintiffs have failed to adequately allege "contemporaneous transactions," a fundamental element of their 20A claims. One same day transaction should not satisfy the pleading requirements for their sweeping claims under Section 20A. Therefore, their claims should be dismissed.

## II. The Section 18(a) And Section 15 Claims Should Be Dismissed Because They Are Outside The Statute Of Limitations.

Section 18(c) provides a one-year statute of limitations for all Section 18(a) claims. 15 U.S.C. § 78r(c). The Section 18(a) claim against Spencer found in Count III of both Complaints must be dismissed because Plaintiffs failed to file their Complaint within one year of the release of the OFHEO Report on September 22, 2004.

Additionally, the Section 15 claims in Count VI of the Complaints should be dismissed because they too are subject to a one-year statute of limitations. "No action shall be maintained to enforce any liability created under [Section 11] * * * unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence." 15 U.S.C. § 77m. "Since Section 15 merely creates a derivative liability for violations of Sections 11 * * *, Section 13 [15 U.S.C. § 77m] applies to it as well." *Dodds v. Cigna Sec., Inc.*, 12 F.3d 346, 349 n.1 (2d Cir. 1993).

Plaintiffs admit that the alleged errors in Fannie Mae's financial statements were revealed when OFHEO made public its report on September 22, 2004. Evergreen Complaint ¶ 439; Franklin Complaint ¶ 516 ("Plaintiffs did not know, and could not reasonably have discovered, the falsity of Fannie Mae's financial statements and Defendants' other public statements regarding the Company's financial condition before September 22, 2004, when the Company first disclosed OFHEO's finding that Fannie Mae's financial results had been intentionally

distorted.").  Yet Franklin failed to file suit until January 25, 2006; similarly, Evergreen did not file until January 17, 2006.

Plaintiffs seek to evade the rule by arguing that "the statute of limitations on Plaintiffs' claims have been tolled since September 23, 2004, due to the filing of a securities class action complaint on that date * * * now pending as *In re Fannie Mae Securities Litigation*."  Franklin Complaint ¶ 517; *see also Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974) (holding that if a class action complaint is timely filed, the same claims of all class members are deemed timely). But the case law is clear that the claims are not tolled for two separate and individually sufficient reasons.

First, equitable tolling under *American Pipe* applies only when identical claims were asserted in the class action.  *See Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 467 n. 14 (1975) ("Only when there is complete identity of the causes of action will the protections [against the running of the limitations period] necessarily exist.").  The Lead Plaintiffs in *In re Fannie Mae Securities Litigation* do not allege Section 18 claims, Section 11 claims, or Section 15 claims.  Thus, the statute of limitations was not tolled as to these newly asserted claims.  *See Lindner Dividend Fund, Inc. v. Ernst & Young*, 880 F. Supp. 49, 54 (D. Mass. 1995) (ruling that a Section 10(b) class action did not toll the statute of limitations for an individual plaintiff's Section 18 claim); *In re Commonwealth Oil/Tesoro Petroleum Corp. Sec. Litig.*, 467 F. Supp. 227, 259-60 (W.D. Tex. 1979) (holding that a pending Section 10(b) class action did not toll the statute of limitations for an individual plaintiff's Section 11 claim).

Second, Plaintiffs forfeited any tolling benefit under *American Pipe* by filing suit before this Court rendered a decision on class certification in the lead case.  *See Wyser-Pratte Mgmt. Co. v. Telxon Corp.*, 413 F.3d 553, 569 (6th Cir. 2005) ("The purposes of *American Pipe* tolling

[such as sparing the parties and the courts the burden of separate lawsuits] are not furthered when plaintiffs file independent actions before decision on the issue of class certification, but are when plaintiffs delay until the certification issue has been decided."); *In re WorldCom, Inc. Sec. Litig.*, 294 F. Supp. 2d 431, 451 (S.D.N.Y. 2003) ("district courts in this circuit have held that a plaintiff who chooses to file an action independently of the class before a determination on class certification cannot benefit from the *American Pipe* tolling rule."); *Rahr v. Grant Thornton LLP*, 142 F. Supp. 2d 793, 799-800 (N.D. Tex. 2000) (Section 18(a) plaintiff forfeited tolling by filing action before decision on class certification in earlier filed class action).  A court in this district held that a plaintiff forfeited a tolling argument in similar circumstances:  "By filing their action before a certification decision, opting out of the class after certification, and then claiming the benefits of tolling, they appear to have been manipulating the tolling doctrine and other class action procedures."  *Wachovia Bank & Trust Co., N.A. v. Nat'l Student Mktg. Corp.*, 461 F. Supp. 999, 1012 (D.D.C. 1978), *rev'd on other grounds*, 650 F.2d 342 (D.C. Cir. 1980). Consequently, Counts III and VI in the Evergreen and Franklin Complaints must be dismissed.

**III.    The Section 15 Claim Should Be Dismissed Because Plaintiffs Fail To Plead An Underlying Section 11 Claim.**

The Section 15 claims against Spencer, which seek to establish control person liability against Spencer for separate Section 11 claims, must be dismissed because plaintiffs fail to state any underlying claims.  "A necessary element of a § 15 claim is a primary violation of § 11." *See Cooperman v. Individual, Inc.*, 171 F.3d 43, 52 (1st Cir. 1999); *see also id.* ("Because plaintiffs have failed to state a claim for such a primary violation [under Section 11], they have also failed to state a claim under § 15.").

In their Section 11 claims, Plaintiffs seek to impose liability for alleged false or misleading statements in Fannie Mae's 2002 Form 10-K, which was attached to and incorporated

by reference in the Registration Statement. Evergreen Complaint ¶ 477; Franklin Complaint ¶ 555. However, the underlying Section 11 claims fail for two reasons.

First, Fannie Mae securities are exempt securities under the Securities Act, and Fannie Mae's Registration Statement was not subject to the requirements under Section 11(a). *See* 15 U.S.C. § 77c(a)(2) (the Securities Act does not apply to "[a]ny security issued or guaranteed by the United States * * * or by any person controlled or supervised by and acting as an instrumentality of the Government of the United States pursuant to authority granted by the Congress of the United States"). Fannie Mae's charter makes clear that the securities are exempt: "Securities issued by [Fannie Mae] * * * shall, to the same extent as securities which are direct obligations of or obligations guaranteed as to principal and interest by the United States, be deemed to be exempt securities within the meaning of laws administered by the Securities and Exchange Commission." 12 U.S.C. § 1719(d). Fannie Mae registered its shares under Section 12(g) of the Exchange Act, but not pursuant to the Securities Act. *See* Evergreen Complaint ¶ 253; Franklin Complaint ¶ 281. The Supreme Court has made clear that "the liability imposed by § 11 flows from the requirements imposed by §§ 5 and 7 [of the Securities Act] providing for the filing and content of registration statements." *Gustafson v. Alloyd Co.*, 513 U.S. 561, 571 (1995). As discussed above, Fannie Mae is exempt from the registration requirements of Sections 5 and 7 of the Securities Act and thus cannot be liable under Section 11. *See also* Fannie Mae Memorandum § 3.A.1.

Second, Plaintiffs cannot show that their Fannie Mae stock is traceable to the Registration Statement because no stock was offered for sale pursuant to the Registration Statement. In order to have standing to assert a Section 11 claim, plaintiffs must establish that the securities they purchased were issued pursuant to the allegedly misleading registration statement. *See Lee v.*

*Ernst & Young, LLP*, 294 F.3d 969, 978 (8th Cir. 2002) (holding that standing to pursue a Section 11 claim exists for those who can make a prima facie showing that the shares they purchased "can be traced to the registration statement alleged to be false and misleading"); 15 U.S.C. § 77k(a) ("In case any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading, any person acquiring *such security* * * * may, either at law or in equity, in any court of competent jurisdiction, sue.") (emphasis added).

In this case, Fannie Mae's March 31, 2003 Registration Statement related solely to the registration of its previously issued outstanding common stock.  No new securities were issued, and thus Evergreen and Franklin cannot trace the securities they purchased to the Registration Statement.  Moreover, prior to filing the Registration Statement, Fannie Mae requested the concurrence of the Corporate Finance section of the Securities and Exchange Commission that voluntary registration would not cause any alteration of the existing treatment of Fannie Mae, specifically including that Fannie Mae's securities were exempt securities under the Securities Act and may be sold without registration under the Securities Act.  The Office of the Chief Counsel of the Division of Corporate Finance expressed its concurrence by letter dated July 12, 2002.  *See* Stern Declaration.  Finally, the Registration Statement itself put purchasers on notice that Fannie Mae was exempt from the Securities Act:  "The securities Fannie Mae issues are 'exempt securities' under the laws administered by the SEC to the same extent as securities that are obligations of, or guaranteed as to principal and interest by, the United States."  *See* Stern Declaration, Fannie Mae SEC Form 10-12G, Item 10 p. 17.

**IV.    SLUSA Preemption Requires The Dismissal Of The State Law Claims.**

All of Evergreen's and Franklin's state law claims must be dismissed because they are

preempted under SLUSA.  SLUSA preempts state law claims in a "covered class action" that

allege "(1) an untrue statement or omission of a material fact in connection with the purchase or

sale of a covered security; or (2) that the defendant used or employed any manipulative or

deceptive device or contrivance in connection with the purchase or sale of a covered security."

15 U.S.C. § 77p(b).

A "covered class action" includes "any group of lawsuits filed in or pending in the same

court and involving common questions of law or fact, in which (I) damages are sought on behalf

of more than 50 persons; and (II) the lawsuits are joined, consolidated, or otherwise proceed as a

single action for any purpose."  15 U.S.C. §§ 77p(f)(2), 78bb(f)(5)(B).  Where lawsuits are

consolidated and collectively seek damages on behalf of more than fifty plaintiffs, the action is a

covered class action.  *See In re WorldCom, Inc. Sec. Litig.*, 308 F. Supp. 2d 236, 247 (S.D.N.Y.

2004) (holding that ten individual actions collectively seeking damages on behalf of more than

50 plaintiffs formed a covered class action.).  In this case, the Evergreen and Franklin actions

have been consolidated with *In re Fannie Mae Securities Litigation*, and so constitute a covered

class action.  *See* Stipulated Order of Consolidation, Feb. 2, 2006, 1:06-cv-00139, Docket #6,

1:06-cv-00082, Jan. 30, 2006, Docket #3.

Plaintiffs' common law fraud claims also allege a false statement or omission in

connection with the purchase or sale of a covered security, which is an essential element of the

common law fraud claims.  Evergreen Complaint ¶ 495; Franklin Complaint ¶ 574; *Bennett v.

Kiggins*, 377 A.2d 57, 59 (D.C. 1977) ("The essential elements of common law fraud are: (1) a

false representation (2) in reference to material fact, (3) made with knowledge of its falsity, (4)

with the intent to deceive, and (5) action is taken in reliance upon the representation.").

Similarly, the negligent misrepresentation claims allege false statements and omissions in connection with the purchase or sale of a covered security, an essential element of the negligent misrepresentation claims.  Evergreen Complaint ¶ 504; Franklin Complaint ¶ 583; *Redmond v. State Farm Ins. Co.*, 728 A.2d 1202, 1207 (D.C. 1999) (stating that a plaintiff asserting a negligent misrepresentation claim must show "(1) that [the defendant] made a false statement or omitted a fact that he had a duty to disclose; (2) that it involved a material issue; and (3) that [plaintiff] reasonably relied upon the false statement or omission to his detriment for the period of time at issue in this case.").

Likewise, Franklin's claim for violation of California Corporations Code Section 25400(d) alleges false statements and omissions in connection with the purchase or sale of a covered security, and the false statement or omission are essential elements to those claims. Franklin Complaint ¶ 601; Cal. Corp. Code § 25400(d) (making it unlawful for a "person selling or offering for sale * * * [a] security, to make, for the purpose of inducing the purchase or sale of such security by others, any statement which was * * * false or misleading with respect to any material fact, or which omitted to state any material fact").  Finally, Evergreen's claim for violation of Massachusetts General Laws Chapter 93A claim alleges a manipulative or deceptive device and a false statement or omission in connection with the purchase or sale of a covered security, which is an essential element to that claim as well.  Evergreen Complaint ¶ 521; Mass Gen. Law. ch. 93A § 2 (declaring "deceptive acts or practices in the conduct of any trade or commerce * * * unlawful").  Thus, all of Plaintiffs' state law claims must be dismissed because they are preempted under SLUSA since they allege "untrue statement[s] or omission[s] of [] material fact[s]."  15 U.S.C. § 77p(b).

**V.**     **Franklin's Claim Under The California Corporations Code Should Be Dismissed Because There Are No Allegations Of Willful Misconduct Against Spencer.**

In addition to being preempted under SLUSA, Franklin's claim against Spencer for violation of the California securities laws should be dismissed because there are no allegations that would demonstrate the necessary state of mind.  California imposes an even higher standard for pleading scienter in a private securities case than the PSLRA:  willful misconduct.  A claim under Section 25500 requires a higher level of scienter than is required to satisfy Section 10(b), which requires extreme recklessness.  *See In re Baan Co. Sec. Litig.*, 103 F. Supp. 2d 1, 19 (D.D.C. 2000) (holding that Section 10(b) can be satisfied by a "strong circumstantial evidence of conscious misbehavior or recklessness").  Section 25500, on the other hand, requires that the defendant acted "with knowledge that the omission was false or misleading." *Diamond Multimedia Sys., Inc. v. Superior Court*, 19 Cal. 4th 1036, 1048 n.13 (1999).  Because Franklin's complaint fails to allege with particularity any facts from which to conclude that Spencer acted in such fashion, this claim should be dismissed as against Spencer.

Section 25400(d) of the California Corporations Code provides that it is unlawful for a person:

> selling or offering for sale or purchasing or offering to purchase the security, to make, for the purpose of inducing the purchase or sale of such security by others, any statement which was, at the time and in the light of the circumstances under which it was made, false or misleading with respect to any material fact, or which omitted to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, and which he knew or had reasonable ground to believe was so false or misleading.

Cal. Corp. Code §25400(d).  But private investors like Franklin cannot enforce Section 25400.  Instead, they have a right of action under Section 25500 against "[a]ny person who *willfully*

13

participates in any act or transaction in violation of Section 25400." Cal. Corp. Code §25500 (emphasis added).[4]

The California Court of Appeal recently highlighted the high standard for scienter in a private action under Section 25500. *See Cal. Amplifier, Inc. v. RLI Ins. Co.*, 94 Cal. App. 4th 102 (2001). In that case, RLI refused coverage under a D&O policy after CalAmp settled a Section 25500 securities claim against it and its officers. While RLI noted that coverage was not required for willful acts, CalAmp argued that it could not be determined from the settlement whether the acts were willful or merely reckless, but the court disagreed. *Id.* at 111.

A Section 25500 claim based on a false or misleading statement or omission ultimately involves three elements, each with its own mental state. First, to violate Section 25400(d), the defendant must have made a statement "which he knew or had reasonable ground to believe was so false or misleading." Cal. Corp. Code §25400(d). Second, the defendant must have made the statement "for the purpose of inducing the purchase or sale of such security by others." *Id.* Third, to state a claim under Section 25500, the defendant must have "willfully participate[d]" in the violation of Section 25400(d). *See* Cal. Corp. Code §25500.

The court held that the first element, like Section 10(b), could be satisfied by "recklessness." *See Cal. Amplifier*, 94 Cal. App. 4th at 109-10. But the "inducing" element required more. "A person must have a specific intent to affect the price of a security in order to induce its purchase or sale. The requirement of a specific intent to affect the price and induce a purchase or sale raises the level of scienter required for a section 25400, subdivision (d) violation. Recklessness satisfies one element of the statute, but deliberate intent is required to

---

[4] State regulatory authorities can directly enforce Section 25400. *See Cal. Amplifier, Inc. v. RLI Ins. Co.*, 94 Cal. App. 4th 102, 109 (2001).

satisfy another element."  *Id.* at 110 (citation omitted).  Finally, "Section 25500 imposes

conditions for the recovery of damages, which are not included in section 25400, subdivision (d),

and which make it clear that liability requires a knowingly false statement made with the

deliberate intent to manipulate the price of a security."  *Id.* at 111.  This requirement is

particularly important:

> We conclude that the purpose and intent of the willful participation requirement is
> to clarify and underscore the high level of scienter required for a violation of
> section 25500.  The most reasonable interpretation of the phrase 'willfully
> participates' is to limit section 25500 liability to situations where there is an intent
> to defraud through a knowingly false statement.  *Only persons who willfully, not
> merely recklessly, violate section 25400, subdivision (d) can be liable for
> damages*.

*Id.* at 112 (emphasis added).[5]  Accordingly, the fact that the Court held that the allegations

against Spencer satisfy the pleading burden under Section 10(b) does not mean that they satisfy

the higher requirements imposed by California law.

    At most, Franklin's complaint supports an inference that Spencer acted recklessly.  In

fact, the first paragraph underneath the heading "Fannie Mae's and the Officer Defendant's

Scienter" reads as follows:  "Throughout the Loss Period, Fannie Mae and the Officer

Defendants intentionally, *or at the very least recklessly*, made materially false and misleading

statements regarding Fannie Mae's financial condition, as alleged herein."  Franklin Complaint ¶

432 (emphasis added).

    The remainder of Franklin's scienter allegations fall into several categories, none of

which directly accuses Spencer of making a knowingly false statement with the deliberate intent

to manipulate the price of a security.  The first set of allegations charges that the Defendants

---

[5] *See also In re Bankamerica Corp. Sec. Litig.*, 210 F.R.D. 694, 708 (E.D. Mo. 2002) (holding
that a class action settlement was fair in part because Section 25500 imposes a "particularly high
hurdle" on plaintiffs).

"simply ignored" the accounting deficiencies raised by Roger Barnes. *Id.* ¶¶ 433-34. This is a classic allegation of recklessness. Next comes several paragraphs involving the conduct of Raines and Howard, but not Spencer. *Id.* ¶¶ 436-38. The remaining paragraphs deal with the defendants' alleged "motive and opportunity" to commit fraud, including their stock sales. *Id.* ¶¶ 439-45. While possibly relevant to the Section 10(b) claims, these allegations plainly cannot satisfy the Section 25500 standards discussed above. Finally, the allegations under Count XI of Franklin's Complaint also fail to allege with particularity any facts from which to conclude that Spencer made a knowingly false statement with the deliberate intent to manipulate the price of a security. *Id.* ¶¶ 598-606.

## VI. Claims After September 21, 2004 Should Be Dismissed.

Even if some of Plaintiffs' claims survive the above arguments, the claims should be dismissed insofar as they relate to purchases of Fannie Mae securities that occurred after September 22, 2004. Any reasonable reliance on Fannie Mae's financial statements ended on September 22, 2004, when the OFHEO Report was made public. Plaintiffs admit this point: "Plaintiffs did not know, and could not reasonably have discovered, the falsity of Fannie Mae's financial statements and Defendants' other public statements regarding the Company's financial condition before September 22, 2004, when the Company first disclosed OFHEO's finding that Fannie Mae's financial results had been intentionally distorted." Evergreen Complaint ¶ 439; Franklin Complaint ¶ 516. Moreover, on December 22, 2004, Fannie Mae publicly warned investors that they should not rely upon previously issued financial statements. Evergreen Complaint ¶ 382; Franklin Complaint ¶ 413; *see Semerenko v. Cendant Corp.*, 223 F.3d 165, 181 (3d Cir. 2000). Finally, Spencer stepped down as Controller of Fannie Mae on January 17, 2005, over nine months before the date chosen by the Plaintiffs. However, Evergreen and Franklin assert claims for purchases through September 28, 2005. Evergreen Complaint ¶ 5; Franklin

Complaint ¶ 5.  The claims regarding purchases following September 22, 2004, or one of the other applicable dates, should be dismissed.

## CONCLUSION

For the foregoing reasons, Leanne Spencer respectfully requests that Plaintiffs' claims against her that are addressed above be dismissed.

Dated:  May 15, 2005           Respectfully submitted,

By:      _____/s/ David S. Krakoff_____
           David S. Krakoff (D.C. Bar No. 229641)
           Mark W. Ryan (D.C. Bar No. 359098)
           Christopher F. Regan (D.C. Bar No. 433972)
           Eldad Z. Malamuth (D.C. Bar No. 479457)
           MAYER, BROWN, ROWE & MAW LLP
           1909 K Street, N.W.
           Washington, D.C.  20006
           Tel. (202) 263-3000
           Fax (202) 263-3300

           *Counsel for Defendant*
           *Leanne G. Spencer*

**CERTIFICATE OF SERVICE**

I certify that on May 15, 2006, I caused the foregoing Defendant Leanne Spencer's Memorandum of Law in Support of her Motion to Dismiss the Evergreen and Franklin Complaints to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the counsel of record in this matter who are registered on the CM/ECF.


        /s/ Eldad Z. Malamuth
        Eldad Z. Malamuth