UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re Federal National Mortgage Association Securities, Derivative, and "ERISA" Litigation | MDL No. 1668 |

| | |
|---|---|
| In re Fannie Mae Securities Litigation | Consolidated Civil Action No. 1:04-cv-01639 |
| | Judge Richard J. Leon |
| Evergreen Equity Trust, *et al.* v. Federal National Mortgage Association, *et al.* | |
| and | Case No. 1:06CV00082 (RJL) |
| Franklin Managed Trust, *et al.* v. Federal National Mortgage Association, *et al.* | Case No. 1:06CV00139 (RJL) |

**DIRECTOR DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION
TO DISMISS EVERGREEN AND FRANKLIN COMPLAINTS**

## TABLE OF CONTENTS

**Page**

SUMMARY OF ARGUMENT ........................................................................................1

STATEMENT OF FACTS ...........................................................................................4

    I.      Background .................................................................................4

    II.     The Allegations Of Scienter Against The Audit Committee Directors .................5

    III.    The Allegations of Director Control.........................................................7

ARGUMENT..............................................................................................................7

    I.      The E&F Plaintiffs Have Failed To State a Claim Under Section 10(b) and Rule 10b-5 of the Securities Exchange Act Against the Audit Committee Directors ...............................................................................................7

          A.     The Heightened Pleading Requirements Of The PSLRA..........................8

          B.     The E&F Plaintiffs' Attempt To "Group Plead" Scienter Against The Audit Committee Directors Is Insufficient As A Matter Of Law ...............................................................................................9

          C.     Membership On Fannie Mae's Audit Committee, Without More, Is Insufficient To Support A Strong Inference Of Scienter ..........................11

               1.     The Alleged 1998 Audit Difference Does Not Support a Strong Inference that the Audit Committee Fraudulently Approved Financial Statements Years Later ...............................12

               2.     The Alleged Reporting of Barnes' Concerns to the Audit Committee Does Not Support A "Strong Inference" of Scienter .....................................................................................13

               3.     The Significance of Derivatives Coupled with the Change in Accounting Treatment Does Not Support a Strong Inference of Scienter .................................................................14

               4.     The Alleged Inadequacy of Internal Controls Does Not Support a Strong Inference of Scienter.........................................15

          D.     Alleged GAAP Violations by Fannie Mae Do Not Create the Required "Strong Inference" of Scienter for Outside Directors ...............16

          E.     The E&F Plaintiffs Cannot Plead Group Liability for the Allegedly False or Misleading 2002 and 2003 Financial Statements ......................17

    II.     The E&F Plaintiffs Have Failed To State Claims For "Control Person" Liability Against Any Of The Outside Directors ................................................19

          A.     The E&F Plaintiffs Do Not Allege That The Outside Directors Controlled The Technical Accounting Determinations That Gave Rise To The Alleged Securities Violation.................................................22

## TABLE OF CONTENTS

**Page**

1.    The E&F Plaintiffs Do Not Allege that the Audit Committee Directors Controlled The Technical Accounting Judgments At Issue ..................................................................23

2.    The E&F Plaintiffs Do Not Allege that the Non-Audit Committee Directors Controlled The Technical Accounting Judgments At Issue ..................................................................24

B.    The E&F Plaintiffs Fail to Allege That Any of the Outside Directors Culpably Participated in the Alleged Fraud ............................25

III.    The E&F Plaintiffs Cannot State A Claim For Control Person Liability Under Section 15 Of The Securities Act ............................................25

IV.    The E&F Plaintiffs' Exchange Act Section 18 Claims And Securities Act Sections 11 And 15 Claims Are Time Barred .......................................26

V.    The E&F Plaintiffs Fail To Plead A Common Law Fraud Claim With Particularity Against The Audit Committee Directors .........................27

VI.    The E&F Complaints Cannot Establish A Claim For Negligent Misrepresentation ................................................................28

CONCLUSION..................................................................30

## TABLE OF AUTHORITIES

**Page**

CASES

*Abbott v. Equity Group, Inc.*,
  2 F.3d 613 (5th Cir. 1993) ........................................................................................25

*Acito v. IMCERA Group, Inc.*,
  47 F.3d 47 (2d Cir. 1995) .........................................................................................29

*Adams v. Kinder-Morgan, Inc.*,
  340 F.3d 1083 (10th Cir. 2003) ................................................................................22

*Allison v. Brooktree Corp.*,
  999 F. Supp. 1342 (S.D. Cal. 1998) .........................................................................19

*Arneil v. Ramsey*,
  550 F.2d 774 (2d Cir. 1977) .....................................................................................29

*Branca v. Paymentech, Inc.*,
  No. Civ. A. 3:97-CV-2507-L, 2000 WL 145083 (N.D. Tex. Feb. 8, 2000) ...........12

*Brown v. Enstar Group, Inc.*,
  84 F.3d 393 (11th Cir. 1996) ....................................................................................21

*Bryant v. Avado Brands, Inc.*,
  187 F.3d 1271 (11th Cir. 1999) ................................................................................10

*Carpenter v. Harris, Upham & Co.*,
  594 F.2d 388 (4th Cir. 1979) ..............................................................................22, 27

*City of Philadelphia v. Fleming Cos.*,
  264 F.3d 1245 (10th Cir. 2001) ................................................................................10

*Coates v. Heartland Wireless Commc'ns*,
  26 F. Supp. 2d 910 (N.D. Tex. 1998) ...........................................................12, 18, 19

*Cooperman v. Individual, Inc.*,
  171 F.3d 43 (1st Cir. 1999) .......................................................................................28

*Demaria v. Andersen*,
  153 F. Supp. 2d 300 (S.D.N.Y. 2001) ......................................................................28

*First Interstate Bank v. Pring*,
  969 F.2d 891, 898 (10th Cir. 1992) ..........................................................................25

*Fla. State Bd. of Admin. v. Green Tree Fin. Corp.*,
  270 F.3d 645 (8th Cir. 2001) ....................................................................................10

*G.A. Thompson & Co. v. Partridge*,
  636 F.2d 945 (5th Cir. 1981) ....................................................................................23

*Greebel v. FTP Software, Inc.*,
  194 F.3d 185 (1st Cir. 1999) .....................................................................................10

*Harrison v. Dean Witter Reynolds, Inc.*,
  974 F.2d 873 (7th Cir. 1992) ....................................................................................25

*Helwig v. Vencor, Inc.*,
  251 F.3d 540 (6th Cir. 2001) ..................................................................................9, 10

*Hemming v. Alfin Fragrances, Inc.*,
  690 F. Supp. 239 (S.D.N.Y. 1988) ...........................................................................26

## TABLE OF AUTHORITIES

**Page**

*Hollinger v. Titan Capital Corp.*,
    914 F.2d 1564 (9th Cir. 1990) ...........................................................................22

*Howard v. SEC*,
    376 F.3d 1136 (D.C. Cir. 2004) ........................................................................10

*In re Advanta Corp. Sec. Litig.*,
    180 F.3d 525 (3d Cir. 1999) .......................................................................10, 12

*In re Baan Co. Sec. Litig.*,
    103 F. Supp. 2d 1 (D.D.C. 2000) ...............................................10, 19, 21, 24

*In re Bayer AG Sec. Litig.*,
    No. 03 Civ. 1546 WHP, 2004 WL 2190357 (S.D.N.Y. Sept. 30, 2004) ...........23

*In re Bell Atlantic Corp. Sec. Litig.*,
    Civ. A. No. 91-0514, 1997 WL 205709 (E.D. Pa. Apr. 17, 1997) .....................23

*In re Burlington Coat Factory Sec. Litig.*,
    114 F.3d 1410 (3d Cir. 1997) ...........................................................................29

*In re Comshare, Inc. Sec. Litig.*,
    183 F.3d 542 (6th Cir. 1999) ............................................................................10

*In re Deutsche Telekom AG Sec. Litig.*,
    No. 00 Civ. 9475, 2002 WL 244597 (S.D.N.Y. Feb. 20, 2002) .......................23

*In re Global Crossing, Ltd.*,
    No. 02 Civ. 910 (GEL), 2005 WL 2990646 (S.D.N.Y. Nov. 7, 2005)...............23

*In re Gupta Corp. Sec. Litig.*,
    900 F. Supp. 1217 (N.D. Cal. 1994) .................................................................26

*In re Lernout & Hauspie Sec. Litig.*,
    286 B.R. 33 (D. Mass. 2002) ............................................................................26

*In re Livent, Inc. Sec. Litig.*,
    148 F. Supp. 2d 331 (S.D.N.Y. 2001) ..............................................................26

*In re NAHC, Inc. Sec. Litig.*,
    No. Civ. A. 00-402, 2001 WL 1241007 (E.D. Pa. Oct. 17, 2001) ...................12

*In re Newbridge Networks Sec. Litig.*,
    926 F. Supp. 1163 (D.D.C. 1996) ....................................................................11

*In re Oxford Health Plans, Inc. Sec. Litig.*,
    187 F.R.D. 133 (S.D.N.Y. 1999) ......................................................................19

*In re Silicon Graphics Inc., Sec. Litig.*,
    183 F.3d 970 (9th Cir. 1999) ............................................................................10

*In re Stratosphere Corp. Sec. Litig.*,
    1 F. Supp. 2d 1096 (D. Nev. 1998)...................................................................19

*In re Tyson Foods, Inc.*,
    No. Civ. A. 01-425-SLR, 2004 WL 1396269 (D. Del. June 17, 2004) .............23

*In re U.S. Office Products Sec. Litig.*,
    326 F. Supp. 2d 68 (D.D.C. 2004) ...................................................................17

## TABLE OF AUTHORITIES

**Page**

*In re Yukos Oil Sec. Litig.*,
    No. 04 Civ. 5243(WHP), 2006 WL 800736 (S.D.N.Y. Mar. 30, 2006)..............................23

*Kennilworth Partners L.P. v. Cendant Corp.*,
    59 F. Supp. 2d 417 (D.N.J. 1999) ...................................................................................18

*Kimmel v. Labenski*,
    No. 85 Civ. 0804, 1988 WL 19229 (S.D.N.Y. Feb. 10, 1988) ...........................................26

*King v. E.F. Hutton & Co.*,
    Civ. A. No. 86-0211, 1987 WL 8733 (D.D.C. Mar. 13, 1987) ...........................................22

*Kowal v. MCI Commc'ns Corp.*,
    16 F.3d 1271 (D.C. Cir. 1994) ...........................................................................................9

*Lanza v. Drexel & Co.*,
    479 F.2d 1277 (2d Cir. 1973) ...........................................................................................22

*Lindner Dividend Fund, Inc. v. Ernst & Young*,
    880 F. Supp. 49 (D. Mass. 1995) .................................................................................27, 29

*Lirette v. Shiva Corp.*,
    27 F. Supp. 2d 268 (D. Mass. 1998) .................................................................................12

*Makor Issues & Rights, Ltd. v. Tellabs, Inc.*,
    437 F.3d 588 (7th Cir. 2006) .......................................................................................10, 11

*Maldonado v. Dominguez*,
    137 F.3d 1 (1st Cir. 1998)..................................................................................................12

*Marra v. Tel-Save Holdings, Inc.*,
    No. 98-3145, 1999 WL 317103 (E.D. Pa. May 18, 1999)..................................................19

*Metge v. Baehler*,
    762 F.2d 621 (8th Cir. 1985) ............................................................................................24

*Mishkin v. Ageloff*,
    No. 97 Civ. 2690, 1998 WL 651065 (S.D.N.Y. Sept. 23, 1998) .........................................24

*Nathenson v. Zonagen, Inc.*,
    267 F.3d 400 (5th Cir. 2001) ............................................................................................10

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000) ........................................................................................10, 17

*Ottmann v. Hanger Orthopedic Group, Inc.*,
    353 F.3d 338 (4th Cir. 2003)............................................................................................10

*Phillips v. Scientific-Atlanta, Inc.*,
    374 F.3d 1015 (11th Cir. 2004) ........................................................................................11

*Rochez Bros., Inc. v. Rhoades*,
    527 F.2d 880, 890 (3d Cir. 1975) ..............................................................................21, 23, 27

*Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.*,
    973 F.2d 474 (6th Cir. 1992)............................................................................................25

*Santa Fe Indus., Inc. v. Green*,
    430 U.S. 462 (1977)..........................................................................................................18

## TABLE OF AUTHORITIES

**Page**

*SEC v. First Jersey Sec., Inc.*,
    101 F.3d 1450 (2d Cir. 1996) ...................................................................21, 22, 27

*SEC v. Savoy Indus., Inc.*,
    587 F.2d 1149 (D.C. Cir. 1978) ......................................................................22, 27

*Shaw v. Digital Equip. Corp.*,
    82 F.3d 1194 (1st Cir. 1996).................................................................................30

*Smith-Haynie v. District of Columbia*,
    155 F.3d 575 (D.C. Cir. 1998)..............................................................................31

*Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*,
    365 F.3d 353 (5th Cir. 2004) ........................................................10, 11, 19, 21

*Steed Fin. LDC v. Nomura Sec. Int'l, Inc.*,
    No. 00 Civ. 8058, 2001 WL 1111508 (S.D.N.Y. Sept. 20, 2001) .......................24

*Stevelman v. Alias Research, Inc.*,
    174 F.3d 79 (2d Cir. 1999) ...................................................................................18

*Wool v. Tandem Computers, Inc.*,
    818 F.2d 1433 (9th Cir. 1987) ..............................................................................11

### STATUTES

15 U.S.C. § 78t(a) ...................................................................................................21, 23

15 U.S.C. § 78u-4 ......................................................................................................9, 10

28 U.S.C. § 1658(b).......................................................................................................15

### REGULATIONS

17 C.F.R. § 230.405.......................................................................................................24

On January 17, 2006, Evergreen Equity Trust, Evergreen Select Equity Trust, Evergreen Variable Annuity Trust and Evergreen International Trust (the "Evergreen Plaintiffs") filed a complaint based on the same factual allegations as the Consolidated Class Action Complaint that Lead Plaintiffs Ohio Public Employees Retirement System ("OPERS") and State Teachers' Retirement Systems ("STRS") filed in the securities class action nearly a year earlier. A week later, twenty-five Franklin Templeton entities[1] (the "Franklin Plaintiffs," and with the Evergreen Plaintiffs, the "E&F Plaintiffs"), represented by the same attorneys, filed a complaint that was virtually identical to the one filed by the Evergreen Plaintiffs. The Evergreen and Franklin cases were consolidated with the securities class action by orders dated January 30, 2006 and February 2, 2006, respectively. Defendants Thomas P. Gerrity, Anne M. Mulcahy, Frederick V. Malek, Taylor C. Segue, III, William R. Harvey, Joe Pickett (the "Audit Committee Directors"), Stephen B. Ashley, Kenneth M. Duberstein, Jamie S. Gorelick, Manuel J. Justiz, Ann Korologos, Donald B. Marron, Daniel H. Mudd, H. Patrick Swygert, and Leslie Rahl (the "Non-Audit Committee Directors," and with the Audit Committee Directors, the "Outside Directors") file this memorandum in support of their motion to dismiss the Evergreen Plaintiffs' and Franklin Plaintiffs' Complaints.[2] Fannie Mae is also filing a Memorandum of Law to Dismiss Evergreen

---

[1] Franklin Managed Trust, Institutional Fiduciary Trust, Franklin Investors Securities Trust, Franklin Value Investors Trust, Franklin Strategic Series, Franklin Capital Growth Fund, Franklin Templeton Investment Funds, Franklin Templeton Variable Insurance Products Trust, Franklin Custodian Funds, Inc., Franklin Templeton International Trust, Templeton MPF Investment Funds, Franklin Flex Cap Growth Corporate Class, Franklin Templeton Funds, Franklin Templeton Global Fund, Bissett Canadian Equity Fund, Bissett Institutional Balanced Trust, Franklin Templeton U.S. Rising Dividends Fund, Franklin World Growth Corporate Class, Franklin Global Trust, Franklin MPF U.S. Equity Fund, Lyxor/Templeton Global Long Short Fund Limited, Templeton Global Long-Short Fund PLC, Templeton Global Long-Short Fund Ltd., University of Hong Kong General Endowment Fund, and University of Hong Kong Staff Provident Fund.

[2] Although the E&F Plaintiffs have designated Ms. Gorelick and Mr. Mudd as "Director Defendants," we note that both Ms. Gorelick and Mr. Mudd were officers of Fannie Mae, as well as directors. Ms. Gorelick was Vice Chair of Fannie Mae from 1997 through 2003. (Evergreen Compl. ¶ 35; Franklin Compl. ¶ 56.) Mr. Mudd was Vice Chair and Chief Operating Officer of Fannie Mae from February 2000 until December 21, 2004. (Evergreen Compl. ¶ 39; Franklin Compl. ¶ 60.)

and Franklin Complaints (hereinafter "Fannie Mae Memorandum") that addresses several bases for dismissing the E&F Plaintiffs' claims under Section 18 of the Exchange Act, Section 11 of the Securities Act, Massachusetts General Laws Chapter 93A Section 11 and California Corporations Code Section 25400. Defendants join in that filing and incorporate it by reference as if it were set forth in full herein.

## SUMMARY OF ARGUMENT

Although the factual allegations contained in the E&F Complaints are virtually identical to the allegations in the Consolidated Class Action Complaint filed by the Lead Plaintiffs in the securities class action last year, the E&F Plaintiffs seek to distinguish their claims by adding unsupportable claims against Fannie Mae's Outside Directors. These include various federal and state securities claims, state statutory claims and common law claims, all founded on essentially the same allegations as those set forth in the Consolidated Class Action Complaint. Fannie Mae, the Company, has filed a separate memorandum moving to dismiss the majority of those claims. The Outside Directors adopt and join in that filing, but submit this supplemental memorandum to address separately the E&F Plaintiffs' federal securities and common law fraud claims against the Audit Committee Directors, claims for "control person liability" and other status-based claims under the federal securities laws asserted solely against the Outside Directors, and a common law negligent misrepresentation claim asserted against all Defendants.

Importantly, none of the Outside Directors were named as defendants in the securities class action. Nor were any of them[3] named as defendants in any of the original securities complaints filed with this Court in late 2004. In fact, when Lead Plaintiffs filed their Amended Consolidated Class Action Complaint on April 17, 2006—months after the E&F Complaints

---

[3] Other than Mr. Mudd who was only named in two putative securities class action complaints—*Flynn and Garber*, et al., Case No. 1:04-cv-01843 (D.D.C.), which was consolidated into the Lead Plaintiffs' class action and *Friends of Ariel Center for Policy Research*, Case No. 1:04-cv-01645 (D.D.C.), which was dismissed on December 3, 2004.

were filed—they did not name a single one of these Outside Directors as defendants.  There is

good reason for the Lead Plaintiffs' decision.  Notwithstanding the extraordinary level of

scrutiny to which Fannie Mae has been subject, including investigations by OFHEO, Congress

and Paul Weiss, who was retained to conduct an independent investigation of many of the

matters at issue in these actions, there is no factual or legal basis to pursue these new claims

against the Outside Directors.

  Not only do the E&F Complaints assert baseless claims against the Outside Directors,

they even go so far as to allege fraud-based claims against the Audit Committee Directors.  The

616-page report that Paul Weiss issued on February 23, 2006, detailing its findings, is similarly

bereft of any specific facts that would support a strong inference of fraud against any of Fannie

Mae's Outside Directors.  That report was the product of an eighteen month investigation that

collected over two million pages of hardcopy documents and approximately two million

electronic documents and conducted 241 interviews of 148 witnesses.[4]  In sum, the E&F

Plaintiffs appear to be the only ones who believe that securities fraud and common law fraud

claims could lie against the Audit Committee Directors.

  In light of the foregoing, it is not surprising that the E&F Complaints lack any facts that

would support an inference of fraud sufficient to support either a securities fraud claim or a

common law fraud claim against any of the Audit Committee Directors.  Rather, the E&F

Complaints merely allege that Fannie Mae's financial statements were erroneous and will be

restated, and on that basis alone make the unreasonable leap that every outside director who

served on the Audit Committee somehow committed fraud.  The E&F Complaints utterly fail to

state specific facts that would satisfy their heightened pleading burden for a securities fraud

---

[4] Review of the Rudman Report on Fannie Mae Before House Comm. on Fin. Servs., 109th Cong., Sess. 1 (Mar. 14, 2006) ("Statement of Warren B. Rudman"); Stern Decl. ¶ 5.

under the Private Securities Litigation Reform Act ("PSLRA") or Federal Rule of Civil Procedure 9(b)'s requirements for common law fraud, and should be dismissed.

The E&F Complaints also attempt to state direct claims against the Outside Directors for violations of Section 18 of the Exchange Act, Section 11 of the Securities Act, as well as claims for controlling a violation of the securities laws under Section 20(a) of the Exchange Act and Section 15 of the Securities Act.[5]  The E&F Plaintiffs' direct liability claims against the Outside Directors under Section 18 and Section 11 fail for a variety of reasons that are set forth in Fannie Mae's Memorandum of Law in Support of Motion to Dismiss Evergreen and Franklin Complaints and that are incorporated by reference herein.  The E&F Plaintiffs' "control person liability" (secondary liability imposed on individuals who control a primary violator of the securities laws) fail because they have not alleged that the Outside Directors controlled the technical accounting decisions that gave rise to the alleged fraud.  Nor have the E&F Plaintiffs alleged that Outside Directors "culpably participated" in a primary violation.  Absent such allegations, the E&F Plaintiffs' control person claims also fail.

Finally, in addition to the reasons set forth in the Fannie Mae Memorandum, the E&F Plaintiffs' negligent misrepresentation claims are defective because the E&F Plaintiffs' own allegations demonstrate that the Outside Directors reasonably relied on KPMG, Mr. Howard and Ms. Spencer.

---

[5]  The E&F Plaintiffs did not name all of the Outside Directors as defendants on the Section 15 claim.  Rather, the E&F Plaintiffs only name Messrs. Gerrity, Harvey, Segue, and Malek and Ms. Mulcahy as defendants on that claim.

<u>STATEMENT OF FACTS</u>[6]

I.    <u>Background</u>

After years of oversight and OFHEO's previously glowing reports to Congress
concerning Fannie Mae's accounting and internal controls, on September 17, 2004, OFHEO
issued an interim report concluding that Fannie Mae misapplied two complex GAAP provisions,
specifically FAS 91 and FAS 133.  (OFHEO Interim Report at i; Stern Decl. ¶ 6.)  The OFHEO
Interim Report also questioned the adequacy of Fannie Mae's internal controls.  (*Id.*)

After reviewing the OFHEO Interim Report and consulting with its outside auditors,
Fannie Mae announced that it continued to believe its accounting had been appropriate.  (*See,
e.g.*, Fannie Mae Filing on Form NT-10-Q for the period Sept. 30, 2004, filed Nov. 15, 2004 at
Ex. 99.1; Stern Decl. ¶ 7.)  It further indicated that it would request the Securities and Exchange
Commission ("SEC") to review Fannie Mae's accounting to determine whether it had complied
with GAAP, and announced that it would follow the SEC's recommendations.  (*See id.*)  In
response, SEC Chairman William Donaldson observed that the accounting issues raised by
Fannie Mae were "not a simple matter; it's not black and white."  (David S. Hilzenrath, *Fannie's
Issues: Simple or Not?; 2 Agencies Differ*, Washington Post, Oct. 23, 2004; Stern Decl. ¶ 8.)

Following a two month review of the Company's accounting, the SEC's Chief
Accountant issued a statement in December 2004 concluding that Fannie Mae's application of
FAS 133 and FAS 91 for 2001 through mid-2004 did not comply with GAAP and indicating that
a restatement of financials was appropriate.  (Evergreen Compl. ¶¶ 380-81; Franklin Compl. ¶¶
411-12.)  Fannie Mae has agreed to restate its financials as requested by the SEC.  (Evergreen

---

[6]  Our recitation of any allegations in the E&F Complaints below is not a concession that the Outside Directors
believe those allegations to be true, but rather is simply a recognition that the Court will assume the E&F Plaintiffs'
allegations to be true for purposes of this Motion To Dismiss.  As a result, we have set forth the relevant allegations,
as well as facts that are judicially noticeable, for the Court's convenience.

Compl. ¶ 382; Franklin Compl. ¶ 413.)

Immediately following the release of the OFHEO Interim Report on September 17, 2004, the first in a series of securities class actions were filed. On December 16, 2004, the Court consolidated all of the securities class actions pending before it into this action. On January 13, 2005, the Court appointed Lead Plaintiffs for the securities class, who filed their Consolidated Class Action Complaint on March 4, 2005. That Complaint in that action named Fannie Mae, Messrs. Raines and Howard and Ms. Spencer as defendants. None of the Outside Directors were named as defendants.

On January 17, 2006, the Evergreen Plaintiffs filed a complaint based on essentially the same factual allegations as the Consolidated Class Action Complaint that had been filed in the securities class action nearly a year earlier. A week later, the Franklin Plaintiffs, represented by the same attorneys, filed a complaint that was substantially identical to the one filed by the Evergreen Plaintiffs (although it added KPMG LLP as a defendant).

Unlike the prior complaints filed in this multidistrict litigation proceeding, the E&F Plaintiffs attempt to expand liability for securities fraud under Section 10(b) and Rule 10b-5 of the Exchange Act to those outside directors of Fannie Mae who served on the Audit Committee. The E&F Complaints also assert claims for (1) control person liability under Section 20(a) of the Exchange Act and Section 15 of the Securities Act against the Outside Directors; (2) common law fraud against the Audit Committee Directors; and (3) common law negligent misrepresentation against all Defendants.

II.    The Allegations Of Scienter Against The Audit Committee Directors

Plaintiffs make no specific allegations of fact against any individual member of the Audit Committee. In Paragraph 30 of the Complaint, Plaintiffs define Messrs. Gerrity, Malek, Segue, Harvey, and Pickett and Ms. Mulcahy as the "Audit Committee Defendants." Thereafter,

without ever differentiating among the individual defendants, Plaintiffs group plead the

following allegations against the Audit Committee Directors:

> KPMG allegedly informed the Audit Committee in early 1999 of
> an audit difference regarding the amount of catch-up expenses
> recorded by Fannie Mae in 1998.  The E&F Plaintiffs allege that
> this audit difference should have caused the Audit Committee to
> keep a particularly watchful eye on management, and to question
> KPMG and management closely about the aggressiveness of the
> Company's other accounting practices.

(Evergreen Compl. ¶ 415; Franklin Compl. ¶ 492.)[7]

> On August 14, 2003, the Audit Committee was allegedly informed
> about Roger Barnes' "concerns" about the Company's application
> of FAS 91.  The E&F Plaintiffs allege that this presentation to the
> Audit Committee was a "red flag" that should have prompted the
> Audit Committee Directors to act.

(Evergreen Compl. ¶ 416; Franklin Compl. ¶ 493.)  The OFHEO Report, however, which the

E&F Plaintiffs quote extensively and thereby incorporate by reference, notes that Fannie Mae's

internal audit staff investigated Barnes' allegations, and that a meeting was held to discuss

Barnes' allegations.  (OFHEO Interim Report at iii, 73-76; Stern Decl. ¶ 6.)  The results of that

investigation were presented to the Audit Committee, along with the conclusions of internal audit

staff and KPMG that Barnes' concerns did not raise a concern about the accuracy of Fannie

Mae's financial statements or the effectiveness of its internal controls.  (Evergreen Compl. ¶ 165;

Franklin Compl. ¶ 187.)

> Accounting for derivatives was a significant component of Fannie
> Mae's financial results and Fannie Mae's accounting for
> derivatives allegedly changed dramatically in January 2001, when
> Fannie Mae adopted FAS 133.  The E&F Plaintiffs allege that
> these facts made it incumbent upon the Audit Committee to
> scrutinize Fannie Mae's accounting for derivatives beyond the
> scrutiny that the E&F Plaintiffs must concede the Audit Committee

---

[7]  Even the E&F Complaints acknowledge that the only Defendant who was actually on the Audit Committee in
1998, however, was Mr. Gerrity.  (Evergreen Compl. ¶ 413; Franklin Compl. ¶ 490.)  Ms. Mulcahy and Messrs.
Harvey and Segue joined the Audit Committee in 2001, Mr. Malek in 2002, and Mr. Pickett in 2003.  (*Id.*)

gave the issue at the time.

(Evergreen Compl. ¶ 417; Franklin Compl. ¶ 494.)

> The E&F Plaintiffs allege various structural problems that they claim created deficient internal controls and that these lax internal controls were widely known throughout Fannie Mae.

(Evergreen Compl. ¶¶ 418-19; Franklin Compl. ¶¶ 495-96.)

III.    The Allegations of Director Control

The E&F Plaintiffs also make conclusory allegations of control against the Outside Directors over entities and persons alleged to have violated the securities laws. These allegations are solely based on the status of these directors as members of the Board or a Board Committee. (Evergreen Compl. ¶¶ 471-72; Franklin Compl. ¶¶ 549-50.) The E&F Plaintiffs do not advance a single factual allegation to suggest the actual exercise of control by any of the Outside Directors or the culpable participation by any of those individuals in the allegedly false or misleading statements at issue.

## ARGUMENT

I.    The E&F Plaintiffs Have Failed To State a Claim Under Section 10(b) and Rule 10b-5 of the Securities Exchange Act Against the Audit Committee Directors

To assert a viable claim under Section 10(b) and Rule 10b-5, the E&F Plaintiffs are required to allege that each defendant against whom the claim is asserted: (1) made a misstatement or omission of a material fact, (2) with scienter, (3) in connection with the purchase or sale of a security, (4) upon which the E&F Plaintiffs reasonably relied, and (5) proximately caused their injury. *See Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). The E&F Plaintiffs' Section 10(b) claims are governed by the PSLRA, 15 U.S.C. § 78u-4, which imposes rigorous pleading standards. The E&F Plaintiffs' allegations against the "Audit Committee Defendants" fail to satisfy these heightened pleading standards, and the E&F

7

Complaints therefore must be dismissed.

    A.  <u>The Heightened Pleading Requirements Of The PSLRA</u>

The PSLRA mandates that a securities class action be pled with a heightened degree of particularity.  The E&F Plaintiffs must set forth "each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed, including the identity of plaintiffs' source information."  15 U.S.C. § 78u-4(b)(1)(B).

The standard for pleading scienter with particularity in securities cases is even higher than Federal Rule of Civil Procedure 9(b)'s standard for pleading fraud. The PSLRA requires that, for each act or omission alleged, plaintiffs must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2).  Federal Rule of Civil Procedure 9(b), by contrast, permits intent (or scienter) to be averred generally.  Although the District of Columbia Circuit has not yet addressed the precise degree of scienter the PSLRA requires, the majority of Circuit Courts hold that where a plaintiff cannot allege actual knowledge and intent, a plaintiff must at the very minimum plead specific facts that demonstrate a strong inference of extreme recklessness or a conscious disregard of known problems or risks.[8]  Recklessness under these cases is a "stringent formulation of the term 'recklessness' that does not allow for recklessness as a form of negligence."  *In re Comshare,*

---

[8] *Greebel v. FTP Software, Inc.*, 194 F.3d 185, 195-97 (1st Cir. 1999); *Ottmann v. Hanger Orthopedic Group, Inc.*, 353 F.3d 338 (4th Cir. 2003); *Nathenson v. Zonagen, Inc.*, 267 F.3d 400, 411-12 (5th Cir. 2001); *Helwig v. Vencor, Inc.*, 251 F.3d 540, 550-52 (6th Cir. 2001) (*en banc*); *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 437 F.3d 588, 601 (7th Cir. 2006); *Fla. State Bd. of Admin. v. Green Tree Fin. Corp.*, 270 F.3d 645, 659-60 (8th Cir. 2001); *City of Philadelphia v. Fleming Cos.*, 264 F.3d 1245, 1261-63 (10th Cir. 2001); *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1286 (11th Cir. 1999), *rev'd on other grounds*, *Bryant v. Dupree*, 252 F.3d 1161 (11th Cir. 2001).

*Inc. Sec. Litig.*, 183 F.3d 542, 550 (6th Cir. 1999).[9]  Under this standard, allegations of motive and opportunity are relevant, but not sufficient, to create a strong inference of fraud.[10]

> B.  The E&F Plaintiffs' Attempt To "Group Plead" Scienter Against The Audit Committee Directors Is Insufficient As A Matter Of Law

The plain language of the PSLRA provides that a complaint must "state with particularity facts giving rise to a strong inference that *the defendant* acted with the required state of mind," 15 U.S.C. § 78u-4(b)(2) (emphasis added).  On the basis of this plain statutory mandate, both Circuits to have considered the question have held that plaintiffs in securities fraud cases must plead specific facts supporting a strong inference of scienter as to each defendant individually. *See Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 363-65 (5th Cir. 2004); *Makor Issues & Rights, Ltd.*, 437 F.3d at 602-03.  These courts have expressly abolished the so-called "group pleading presumption," a pre-PSLRA doctrine by which courts presumed that annual reports, prospectuses, press releases or other "group published information" were the collective actions of the officers of a corporation.  *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1440 (9th Cir. 1987).  Although the D.C. Circuit has not expressly addressed the issue, the

---

[9]  The D.C. Circuit has confirmed, in line with the "middle ground" approach taken by these Circuits, that "extreme recklessness" is sufficient to satisfy the scienter requirement for aiding and abetting liability in an action for civil damages brought by the SEC.  *Howard v. SEC*, 376 F.3d 1136, 1143 (D.C. Cir. 2004) ("'Extreme recklessness' . . . may be found if the alleged aider and abettor encountered 'red flags,' or 'suspicious events creating reasons for doubt' that should have alerted him to the improper conduct of the primary violator.") (quoting *Graham v. SEC*, 222 F.3d 994, 1006 (D.C. Cir. 2000)).

[10]  The Second and Third Circuits permit plaintiffs to plead scienter based on allegations that the defendant possessed the motive and opportunity to commit securities fraud.  *Novak v. Kasaks*, 216 F.3d 300, 307-08 (2d Cir. 2000); *In re Advanta Corp. Sec. Litig.,* 180 F.3d 525, 531 (3d Cir. 1999).  Motive and opportunity allegations usually take the form of allegations that a particular defendant had the ability or opportunity by virtue of their position to commit fraud and possessed the motive to do so as evidenced by suspicious insider trading in the Company's stock.  The vast majority of circuits hold that although such allegations can be relevant in establishing scienter, they are not sufficient without more. *See Nathenson v. Zonagen, Inc.*, 267 F.3d 400, 409-12 (5th Cir. 2001); *Helwig v. Vencor, Inc.,* 251 F.3d 540, 550-51 (6th Cir. 2001); *Bryant v. Avado Brands, Inc.,* 187 F.3d 1271 (11th Cir. 1999); *In re Silicon Graphics Inc., Sec. Litig.*, 183 F.3d 970, 974 (9th Cir. 1999), *reh'g denied en banc,* 195 F.3d 521 (9th Cir. 1999).

doctrine is at odds with the PSLRA's plain language as set forth above.[11]  As the Fifth Circuit reasoned, "PSLRA references to 'the defendant' may only reasonably be understood to mean 'each defendant' in multiple defendant cases, as it is inconceivable that Congress intended liability of any defendants to depend on whether they were all sued in a single action or were each sued alone in several separate actions."  *Southland*, 365 F.3d at 364-65; *see also Phillips v. Scientific-Atlanta, Inc.*, 374 F.3d 1015, 1018 (11th Cir. 2004) ("[W]e believe that the most plausible reading in light of congressional intent is that a plaintiff, to proceed beyond the pleading stage, must allege facts sufficiently demonstrating each defendant's state of mind regarding his or her alleged violations.").

Here, the E&F Complaints define Messrs. Gerrity, Malek, Segue, Harvey and Pickett and Ms. Mulcahy as the "Audit Committee Defendants," (Evergreen Compl. ¶ 30; Franklin Compl. ¶ 51), and then never distinguish between them ever again.  The Court, however, may properly consider only those allegations pled against each defendant individually, in determining whether the allegations create a strong inference of scienter as to each defendant.   Yet, the E&F Complaints contain *no* specific allegations of knowledge or recklessness on the part of any particular Audit Committee Defendant.  The E&F Plaintiffs do not explain which, if any, of the Audit Committee Directors were made aware of the alleged "red flags" cited as support for a strong inference of scienter.  Such blatant "group pleading" is insufficient to support a strong inference of scienter as a matter of law.

---

[11]  Although two D.C. District Courts have addressed "group pleading" in the context of attribution for allegedly false and misleading statement or omissions, *see In re Baan Co. Sec. Litig.*, 103 F. Supp. 2d 1, 17-18 (D.D.C. 2000) (defendants' liability was premised on defendants' involvement in the day-to-day business of the company); *In re Newbridge Networks Sec. Litig.*, 926 F. Supp. 1163, 1174-75 (D.D.C. 1996) (analyzing group published information in context of Section 20(a) claim), neither addressed whether scienter can be group pled.  In fact, the *Baan* court expressly analyzed scienter as to each defendant individually and did not permit the sort of indiscriminate group allegations that Plaintiffs proffer here.  *See Baan*, 103 F. Supp. 2d at 21-23.

C.  Membership On Fannie Mae's Audit Committee, Without More, Is Insufficient To Support A Strong Inference Of Scienter

Courts have repeatedly rejected attempts, just like those of the E&F Plaintiffs, to infer scienter from an individual's position and access to non-public information.  *See*, *e.g.*, *In re Advanta Corp.*, 180 F.3d at 539 (3d Cir. 1999) ("[A]llegations that a securities-fraud defendant, because of his position within the company, 'must have known' a statement was false or misleading are 'precisely the types of inferences which [courts], on numerous occasions, have determined to be inadequate to withstand Rule 9(b) scrutiny.'") (alterations in original) (quoting *Maldonado v. Dominguez*, 137 F.3d 1, 10 (1st Cir. 1998)).[12]  Yet the E&F Plaintiffs' allegations of scienter against the Audit Committee Directors rest solely on their status as members of Fannie Mae's Audit Committee.  As set forth above, the E&F Complaints contain no particularized allegations against any individual Audit Committee Defendant, but rather make four generalized allegations against the group of them: (1) that they were allegedly made aware of an audit difference for the 1998 audit reported by KPMG in early 1999; (2) that issues raised by Roger Barnes allegedly were reported to the Audit Committee in August 2003; (3) that the

---

[12]  *See also Branca v. Paymentech, Inc.*, No. Civ. A. 3:97-CV-2507-L, 2000 WL 145083, at *11 (N.D. Tex. Feb. 8, 2000) (conclusory allegations of scienter based upon executive positions, involvement in day-to-day management, access to internal corporate documents, conversations with corporate officers and employees, and their attendance at management and board meetings is not sufficient to plead scienter); *Lirette v. Shiva Corp.*, 27 F. Supp. 2d 268, 283 (D. Mass. 1998) (finding that "inferences that the defendants, by virtue of their position within the company, 'must have known about the company's problems when they undertook the allegedly fraudulent actions' . . . are precisely the types of inferences which this court, on numerous occasions, has determined to be inadequate to withstand the special pleading requirements in securities fraud cases." (quoting *Maldonado*, 137 F.3d at 9)); *In re NAHC, Inc. Sec. Litig.*, No. Civ. A. 00-402, 2001 WL 1241007, at *19 (E.D. Pa. Oct. 17, 2001) ("Blanket statements that the defendant must have been aware of impending losses or that a statement was false or misleading by virtue of his position within the company are inadequate to withstand Rule 9(b) or PSLRA scrutiny. . . .  Where plaintiffs contend that the defendants had access to contrary facts, they must specifically identify the reports or statements containing this information. . . .  In the absence of any allegations regarding the factual content of any single report received by the Individual Defendants that would have provided a basis for advance knowledge of the falsity of their statements, . . . the plaintiffs' allegations that the NovaCare Defendants must have known that the statements were misleading through virtue of their positions within the Company are insufficient to adequately plead conscious or reckless behavior."  (internal citations omitted)); *Coates v. Heartland Wireless Commc'ns, Inc.*, 26 F. Supp. 2d 910, 916 (N.D. Tex. 1998) ("Plaintiffs must properly plead wrongdoing and scienter as to each individual defendant and cannot merely rely on the individuals' positions or committee memberships within the . . . organization.").

Audit Committee should have known the significance of derivative instruments to Fannie Mae's financial results but failed to adequately scrutinize the accounting for those instruments; and (4) that knowledge of allegedly lax internal controls was allegedly widespread. (Evergreen Compl. ¶¶ 415-19; Franklin Compl. ¶¶ 492-96.) Taken as a whole, these allegations do not give rise to a "strong inference" that any individual Audit Committee Defendant acted recklessly or with conscious disregard of known facts.

> 1.    <u>The Alleged 1998 Audit Difference Does Not Support a Strong Inference that the Audit Committee Fraudulently Approved Financial Statements Years Later</u>

The E&F Plaintiffs allege that when KPMG allegedly informed the Audit Committee in early 1999 of an audit difference regarding the amount of catch-up expenses recorded in 1998, this "should have caused the Audit Committee to keep a particularly watchful eye on management. . . ." (Evergreen Compl. ¶ 415; Franklin Compl. ¶ 492.) This allegation does not create a strong inference of scienter against the Audit Committee Directors for several reasons.

Five of the six Audit Committee Directors were not even members of the Audit Committee at the time KPMG noted this audit difference. (Evergreen Compl. ¶ 413; Franklin Compl. ¶ 490.) These five Audit Committee Directors did not join Fannie Mae's Board of Directors for another two years, at least. (*Id.*) Even the E&F Complaints acknowledge that Ms. Mulcahy and Messrs. Harvey and Segue joined the Audit Committee in 2001, Mr. Malek in 2002, and Mr. Pickett in 2003. (*Id.*) It is obviously impossible for this audit difference to be a "red flag" for individuals who were not even on Fannie Mae's Audit Committee at the time.

As to the sole Audit Committee Director who was a member of the Committee in 1998, the E&F Plaintiffs' allegations still are insufficient to support a strong inference of scienter. The E&F Complaints contend that the audit difference "*should have* caused the Audit Committee to keep a particularly watchful eye on management. . . ." (Evergreen Compl. ¶ 415; Franklin

Compl. ¶ 492.)  However, a claim for securities *fraud* cannot be premised on allegations of *negligence* concerning what a particular individual "might have" or "should have" done.  Rather, a Section 10(b) claim requires a stronger inference of scienter—a mental state equal to extreme recklessness, knowledge or intent.  *MCI Commc'ns,* 16 F.3d at 1276.  Negligence is simply insufficient.

Moreover, the KPMG audit difference came *years* before any of the financial statements at issue in the E&F Complaints were disseminated.  As to the year of that audit difference, 1998, even the E&F Plaintiffs are forced to admit that KPMG provided a clean audit opinion to Fannie Mae and its directors, notwithstanding any audit difference.  (*See* Statement of Warren B. Rudman at 6; Stern Decl. ¶ 5 ("[I]t is important to note that [KPMG] was aware of [Fannie Mae's decision to record $240 million in amortization expense in 1998].").)  This belies any inference, much less the requisite "strong inference," that an outside director—who was not involved in the day-to-day operations of the Company and who did not make the accounting judgment at issue—knew or should have known that any of Fannie Mae's financial statements were wrong, much less fraudulent.  These allegations cannot even create a reasonable inference of negligence, let along a strong inference of fraudulent intent.[13]

2.     The Alleged Reporting of Barnes' Concerns to the Audit Committee Does Not Support A "Strong Inference" of Scienter

The E&F Plaintiffs next allege that when the Audit Committee was informed, during an August 2003 meeting, that Mr. Barnes had raised concerns about certain aspects of the Company's accounting that should have raised a "red flag" for the Audit Committee Directors. (Evergreen Compl. ¶ 416; Franklin Compl. ¶ 493.)  The E&F Plaintiffs do not, however, allege

_____

[13]  To the extent that the E&F Plaintiffs' Section 10(b) claim is based on 1998 statements, the claim is time barred.  The statute of limitations requires a Section 10(b) claim to be brought within two years after the discovery of the facts constituting the violation, and not later than five years after the violation.  28 U.S.C. § 1658(b).

which, if any, of the Audit Committee Directors were present at that meeting or what precisely those in attendance were told about Mr. Barnes' concerns. All that is alleged is that internal audit made a presentation at the meeting concerning Mr. Barnes' allegations and informed the Audit Committee of the steps that they took to investigate his allegations. (Evergreen Compl. ¶¶ 165, 416; Franklin Compl. ¶¶ 187, 493.) Those allegations are insufficient to create a strong inference of scienter, particularly in the absence of specific well-pled facts demonstrating which Audit Committee Directors attended and what those in attendance were told.

It is not surprising that the E&F Plaintiffs fail to allege what information was presented to the Audit Committee at the meeting. According to the OFHEO Interim Report, which the E&F Plaintiffs rely on extensively as the basis for their allegations, Fannie Mae's Internal Audit Division conducted a full review of Mr. Barnes' allegations and presented those findings to the Audit Committee. (OFHEO Interim Report at 73; Stern Decl. ¶ 6.) Mr. Barnes' allegations were also discussed thoroughly during an "all hands" meeting on August 8, 2003, which was attended by representatives of the Controller's Department, Financial Standards, Office of Auditing, Office of Corporate Compliance, Fannie Mae's independent auditor, KPMG, and by Mr. Barnes himself. (*Id.* at 73, 75 n.199.) Even without these additional facts, which are properly before the Court by judicial notice, the Audit Committee approval of the Company's financial status in light of the allegations of a single disgruntled employee does not give rise to a strong inference that these directors acted with severe recklessness or conscious disregard of known facts.

       3.     <u>The Significance of Derivatives Coupled with the Change in Accounting Treatment Does Not Support a Strong Inference of Scienter</u>

The E&F Plaintiffs attempt to make much significance of derivative instruments to Fannie Mae's overall portfolio, coupled with the change in accounting when Fannie Mae adopted FAS 133 and knowledge that other entities suffered undefined problems resulting from the use

of, or accounting for, derivative instruments. (Evergreen Compl. ¶ 417; Franklin Compl. ¶ 494.)

But the E&F Plaintiffs' allegations of scienter are completely lacking in particularity. The E&F

Plaintiffs offer as examples Orange County, California and Gibson Greetings, which suffered

investment losses from the use of derivative instruments, without explaining what such losses

have to do with appropriateness of accounting for derivatives. (*Id.*) Further, the E&F Plaintiffs

fail to allege any specific facts concerning what any particular outside director knew or

recklessly disregarded *in this case*.

At the same time, the E&F Plaintiffs completely ignore the fact that KPMG was

intimately involved in the development of Fannie Mae's accounting for derivatives and

repeatedly assured the Company, and presumably the Audit Committee, that its implementation

complied with FAS 133. (*See, e.g.,* Statement of Warren B. Rudman at 5; Stern Decl. ¶ 5

(finding that the Company's "hedge accounting practices were known to, and accepted by,"

KPMG).) In fact, KPMG actually maintained their support of the Company's accounting for

derivatives through December 17, 2004, when the SEC determined the Company's

implementation of FAS 133, did not comply with GAAP. Vague group pled allegations about

the importance of derivatives to Fannie Mae and other instances of companies suffering losses

from derivatives do nothing to undermine any individual Defendant's reasonable reliance on

Fannie Mae's internal accountants or outside auditor with respect to the Company's

implementation of FAS 133.

      4.    The Alleged Inadequacy of Internal Controls Does Not Support a Strong
            Inference of Scienter

Based on the OFHEO Interim Report, the E&F Plaintiffs allege a laundry list of structural

problems that they claim should have been readily obvious to the Audit Committee Directors as

indicative of deficient internal controls. (Evergreen Compl. ¶¶ 418-19; Franklin Compl. ¶¶ 495-

96.)  The E&F Plaintiffs, however, do not specify what facts, if any, were brought to the

attention of the Audit Committee as problematic, or when, or what, if anything, the Audit

Committee did in response, let alone provide the requisite specificity against any individual

Audit Committee Director.  Even if the E&F Plaintiffs could provide specific facts that show the

Audit Committee Directors were made aware that Fannie Mae's internal controls were deficient

(which they cannot), this pleading strategy is characteristic of the type of "fraud by hindsight"

allegations that are dismissed regularly by federal courts applying the PSLRA.  *See, e.g., In re*

*U.S. Office Products Sec. Litig*., 326 F. Supp. 2d 68, 79 (D.D.C. 2004) ("Courts have uniformly

rejected . . . pleading of "fraud by hindsight.") (citing *In re Rockefeller Ctr. Props., Inc. Sec.*

*Litig.*, 311 F.3d 198, 225 (3d Cir. 2002); *Novak*, 216 F.3d at 309.  Such allegations of "fraud by

hindsight" are insufficient to support the required strong inference of extreme recklessness on the

part of any Audit Committee Director as a matter of law.  Thus, even straining to read these

allegations in the light most favorable to the E&F Plaintiffs, they amount to no more than a claim

that the Audit Committee *might* have been *negligent*, a type of claim that is not actionable under

the securities laws.  *Santa Fe Indus., Inc. v. Green,* 430 U.S. 462, 479 (1977) (Section 10(b) does

not apply to claims based on negligence or lack of diligence).

D.  Alleged GAAP Violations by Fannie Mae Do Not Create the Required "Strong
    Inference" of Scienter for Outside Directors

Allegations based on GAAP violations and subsequent restatements are not sufficient,

without more, to plead the requisite "strong inference" of scienter.  *Stevelman v. Alias Research,*

*Inc.*, 174 F.3d 79, 84 (2d Cir. 1999) (allegation of scienter based on restatement of three quarters

of earnings due to improper revenue recognition insufficient to state a securities fraud claim).

Accordingly,"[t]o state a valid securities fraud claim, allegations of violations of GAAP must be

accompanied by factual allegations of corresponding fraudulent intent."  *Kennilworth Partners*

16

*L.P. v. Cendant Corp.,* 59 F. Supp. 2d 417, 429 (D.N.J. 1999).

This means that the E&F Plaintiffs are required to allege specific facts demonstrating that particular members of the Audit Committee acted fraudulently at the time Fannie Mae posted the financial results that were ultimately restated, by alleging specific contemporaneous conditions known to these individual directors when the original financial statements were prepared. *Fleming,* 264 F.3d at 1261 ("Only where [allegations of GAAP violations or accounting irregularities] are coupled with evidence that the violations or irregularities were the result of the defendant's fraudulent intent to mislead investors may they be sufficient to state a claim."). The E&F Plaintiffs do not (and cannot) meet this stringent statutory standard here.

E.  The E&F Plaintiffs Cannot Plead Group Liability for the Allegedly False or Misleading 2002 and 2003 Financial Statements

As set forth in detail above, courts have routinely held that "group pleading" scienter has not survived the PSLRA. *See* cases cited *supra*. With respect to a plaintiff's ability to group plead responsibility for alleged misstatements or omissions, there is a split of authority concerning the continuing viability of the doctrine. *Compare In re Oxford Health Plans, Inc. Sec. Litig.*, 187 F.R.D. 133, 142 (S.D.N.Y. 1999) *and In re Stratosphere Corp. Sec. Litig.*, 1 F. Supp. 2d 1096, 1108 (D. Nev. 1998) *with* Southland, 365 F.3d at 365 *and Coates*, 26 F. Supp. 2d at 910. Although some courts permit plaintiffs to group plead where a discrete number of defendants were directly involved in the preparation and publication of the alleged misstatements, the emerging majority of courts reject such an approach. *See, e.g., Southland*, 365 F.3d at 365 ("[T]he PSLRA requires the plaintiffs to distinguish among those they sue and enlighten *each defendant* as to his or her particular part in the alleged fraud.") (emphasis in original) (citation omitted); *Marra v. Tel-Save Holdings, Inc.*, No. 98-3145, 1999 WL 317103, at *5 (E.D. Pa. May 18, 1999) ("[T]he presumption inherent in group pleading is inconsistent with

17

the PSLRA's purpose."); *Coates*, 26 F. Supp. 2d at 915-16 ("The PSLRA codifies a ban against group pleading."); *Allison v. Brooktree Corp.*, 999 F. Supp. 1342, 1350 (S.D. Cal. 1998) (noting that the continued viability of the group-published doctrine following the enactment of the PSLRA is "suspect").  As the court in *Allison* explained:

> To permit a judicial presumption as to particularity simply cannot be reconciled with the statutory mandate that plaintiffs must plead specific facts as to each act or omission by the defendant.  The group published doctrine permits an inference of wrongdoing not based on defendant's conduct, but based solely on defendant's status as an officer or director of a corporation.

*Allison*, 999 F. Supp. at 1350; *see also Coates*, 26 F. Supp. 2d at 916 ("It is nonsensical to require that a plaintiff specifically allege facts regarding scienter as to each defendant, but to allow him to rely on group pleading in asserting that the defendant made the statement or omission.").

Even those courts that do permit some form of group pleading often reject the doctrine's application to outside directors, such as the Audit Committee Directors.  For example, the one D.C. District Court decision that addressed group pleading in the context of a claim under Section 10(b) and Rule 10b-5, *In re Baan Co. Sec. Litig.*, 103 F. Supp. 2d 1, 17-18 (D.D.C. 2000), refused to permit inclusion of outside directors in the group responsible for authoring the alleged misstatement.  Rather, the court premised responsibility for any of the alleged misstatements or omissions on the individual defendants' involvement in the day-to-day business of the company.  *See id.*  As the outside directors were not involved in the day-to-day operations of the company, the court found that plaintiffs failed to allege any facts demonstrating that the directors were involved in the "drafting, reviewing, or dissemination of . . . [the] group published statements."  *Id.* at 17-18.

Here, the E&F Plaintiffs similarly assert, without any basis, that the Audit Committee

Directors are responsible for the allegedly false and misleading statements in Fannie Mae's Form 10-Ks for 2002 and 2003. (Evergreen Compl. ¶¶ 24-29; Franklin Compl. ¶¶ 45-50.) The E&F Plaintiffs simply are not entitled to group plead a 10b-5 claim by generally alleging that statements made in Fannie Mae's 2002 and 2003 10-Ks are the collective work of the Audit Committee Directors. Rather, the E&F Plaintiffs must allege, at a minimum, specific facts demonstrating that each of the Audit Committee Directors, individually, was involved in the preparation of a particular 10-K, as required by the PSLRA. *See, e.g., Southland*, 365 F.3d at 365. In the absence of such facts, the E&F Plaintiffs' vague and generalized allegations against the Audit Committee Directors—all of whom are outside directors who were removed from the day-to-day operations of the Company—are defective as a matter of law.

II.    The E&F Plaintiffs Have Failed To State Claims For "Control Person" Liability Against Any Of The Outside Directors

Counts IV of the E&F Complaints seek to impose liability under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), against Fannie Mae's Outside Directors for liability as "control persons," *i.e.*, for "directly or indirectly control[ling]" Fannie Mae in its alleged violation of Section 10(b), Rule 10b-5, and Section 18(a).[14] In addition to failing to allege a primary violation of the Exchange Act, which is itself fatal, the E&F Plaintiffs' Section 20(a) claims fail because they have not adequately alleged the actual (rather than potential) control of Fannie Mae or the "culpable participation" in the allegedly wrongful conduct by any of the Outside Directors.

To allege control person liability under Section 20(a), a plaintiff must allege: (1) that the defendant had the power to control the general affairs of the primary violator, (2) that the defendant had (or, in some circuits, exercised) the power to control the specific corporate policy

---

[14] As discussed below, the E&F Plaintiffs' claims under Section 18(a) of the Exchange Act are time-barred.

that led to the primary violation, and (3) a primary violation of some Exchange Act provision by a controlled entity.[15]  Several Circuit Courts of Appeals have held that Section 20(a) also requires plaintiffs to allege that the defendants "culpably participated" in the primary violation. *See, e.g., SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472 (2d Cir. 1996); *Rochez Bros., Inc. v. Rhoades*, 527 F.2d 880 (3d Cir. 1975); *Carpenter v. Harris, Upham & Co.*, 594 F.2d 388, 394 (4th Cir. 1979).[16]  Although the D.C. Circuit has not ruled on this issue, it has observed that "the extent and nature of the burden that the plaintiff must bear have also been subject to a wide variety of interpretations."  *SEC v. Savoy Indus., Inc.*, 587 F.2d 1149, 1170 & n.49 (D.C. Cir. 1978).[17]

As courts that have closely examined the competing standards for liability under Section 20(a) have explained, the rationale for requiring culpable participation is far more consistent with the legislative intent behind the Exchange Act and PSLRA to impose liability upon culpable defendants.  Imposing liability on individuals simply by virtue of the position they held, without any culpability on the part of that officer or executive, is at odds with the purpose of the Exchange Act.  *See Lanza v. Drexel & Co.*, 479 F.2d 1277, 1299 (2d Cir. 1973).

This statutory intent is also reflected in Section 20(a)'s legislative history and plain language.  When Congress was considering Section 20(a), the Senate proffered one version; the House of Representatives another.  The Senate's version would have imposed control person liability on what some courts called an "insurer's standard," (*i.e.*, that the Section 20(a) defendant need have done nothing wrong himself).  The House's version was based upon a

---

[15]  *Brown v. Enstar Group, Inc.*, 84 F.3d 393, 396 (11th Cir. 1996) (collecting authorities).

[16]  *But see Metge v. Baehler*, 762 F.2d 621, 631 (8th Cir. 1985); *Hollinger v. Titan Capital Corp.,* 914 F.2d 1564, 1575 (9th Cir. 1990); *Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1109 (10th Cir. 2003) (all holding that culpable participation is not an element of Section 20(a)).

[17]  Two courts in this district have ruled that allegations of "culpable participation" are not required.  *In re Baan*, 103 F. Supp. 2d at 23; *King v. E.F. Hutton & Co.*, Civ. A. No. 86-0211, 1987 WL 8733, at *4 (D.D.C. Mar. 13, 1987).

fiduciary standard that required at least some culpable breach of the control person's duty to the company before liability could be imposed.  Congress adopted the House version of the bill, indicating that to be liable, control persons must have culpably participated in a meaningful sense in the fraud.  *See*, *e.g., First Jersey Sec., Inc.*, 101 F.3d at 1472 (requiring culpable participation); *Rochez Bros.*, 527 F.2d at 889-90 (collecting authorities and explaining rationale for culpable participation requirement); *In re Tyson Foods, Inc.*, No. Civ. A. 01-425-SLR, 2004 WL 1396269, at *13 (D. Del. June 17, 2004) (dismissing securities fraud claim against individuals for failure to allege culpable participation).

In the same vein, Section 20(a)'s plain language provides for a good faith defense, (*i.e.*, no liability will be imposed on a defendant that acted in good faith).  *See* 15 U.S.C. § 78t(a). Courts view this defense as indicating that Congress indeed intended some measure of culpable participation before Section 20(a) liability can attach.  *See*, *e.g.*, *G.A. Thompson & Co. v. Partridge*, 636 F.2d 945, 960 (5th Cir. 1981) ("We hold therefore that the burden on the controlling person is to establish that he did not act recklessly in inducing, either by his action or his inaction, the 'act or acts constituting the violation' of 10b-5."); *In re Bell Atlantic Corp. Sec. Litig.*, Civ. A. No. 91-0514, 1997 WL 205709, at *35 (E.D. Pa. Apr. 17, 1997).

Since Congress enacted the PSLRA, a number of courts have imposed an even higher pleading burden on plaintiffs than just pleading culpable participation.  For instance, a growing number of courts hold that culpable participation must be pled with particularity.  *See e.g.*, *In re Yukos Oil Sec. Litig.*, No. 04 Civ. 5243(WHP), 2006 WL 800736, at * 24 (S.D.N.Y. Mar. 30, 2006); *In re Global Crossing, Ltd.*, No. 02 Civ. 910 (GEL), 2005 WL 2990646, at *8 (S.D.N.Y. Nov. 7, 2005); *In re Bayer AG Sec. Litig.*, No. 03 Civ. 1546 WHP, 2004 WL 2190357, at *16 (S.D.N.Y. Sept. 30, 2004).  Other courts have held that culpable participation requires proof of

the same level of scienter as an underlying securities fraud claim. *See*, *e.g.*, *In re Deutsche Telekom AG Sec. Litig.*, No. 00 Civ. 9475, 2002 WL 244597, at *7 (S.D.N.Y. Feb. 20, 2002) (requiring that plaintiffs plead with particularity facts that demonstrate the "control person knew or should have known that the controlled person was engaging in fraudulent conduct"); *Mishkin v. Ageloff*, No. 97 Civ. 2690, 1998 WL 651065, at *25 (S.D.N.Y. Sept. 23, 1998) (requiring that plaintiffs plead "particularized facts of the controlling person's conscious misbehavior as a culpable participant in the fraud."); *Steed Fin. LDC v. Nomura Sec. Int'l, Inc.*, No. 00 Civ. 8058, 2001 WL 1111508, at *10 (S.D.N.Y. Sept. 20, 2001), *aff'd*, 148 Fed. Appx. 66 (2d Cir. 2005) (requiring that plaintiffs plead facts establishing either "conscious misbehavior or recklessness"). These emerging trends are further support for the notion that control liability should only be imposed on individuals who are culpable. Premising control person liability simply on an individual's position within a corporation is inconsistent with the purpose of both the Exchange Act and the PSLRA. This Court should require more. When the E&F Plaintiffs' thin allegations are held to an appropriate standard, it becomes clear that their Section 20(a) claims are insufficient to withstand this motion to dismiss.

A. The E&F Plaintiffs Do Not Allege That The Outside Directors Controlled The Technical Accounting Determinations That Gave Rise To The Alleged Securities Violation

Exchange Act Rule 12b-2 defines control as "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." 17 C.F.R. § 230.405. Numerous circuits have held that control for purposes of imposing liability requires more than a mere showing that the individual controlled the affairs of the company generally. A plaintiff must establish that the "defendant possessed the power to control the *specific transaction or activity* upon which the primary violation is predicated. . . ." *Metge v. Baehler*, 762 F.2d 621,

631 (8th Cir. 1985) (emphasis added); *accord Harrison v. Dean Witter Reynolds, Inc.*, 974 F.2d

873, 887, 881 (7th Cir. 1992); *Abbott v. Equity Group, Inc.*, 2 F.3d 613, 619-20 (5th Cir. 1993);

*Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 486 (6th Cir. 1992); *First*

*Interstate Bank v. Pring*, 969 F.2d 891, 898 (10th Cir. 1992), *rev'd on other grounds sub nom.*

*Central Bank v. First Interstate Bank*, 511 U.S. 164 (1994).[18]   The E&F Plaintiffs' allegations

here fail that test.

        1.    <u>The E&F Plaintiffs Do Not Allege that the Audit Committee Directors</u>
              <u>Controlled The Technical Accounting Judgments At Issue</u>

       The Complaints allege that the Audit Committee Directors had the power to exercise

control based on their responsibility for overseeing Fannie Mae's financial reporting, accounting,

internal controls, and activities of KPMG; their responsibility for meeting with and making

recommendations to Messrs. Raines and Howard, Ms. Spencer, and Non-Audit Committee

Directors; and their signatures on the financial statements.  (Evergreen Compl. ¶ 471; Franklin

Compl. ¶ 549.)  But these allegations do not establish that the Audit Committee Directors

actually controlled the accounting decisions alleged in the Complaint.  The mere fact that the

Audit Committee Directors signed the challenged financial statements is insufficient, by itself, to

establish control because these directors were required by their status to sign the financial

statements, annual reports and registration statements.[19]  *Kimmel v. Labenski*, No. 85 Civ. 0804,

---

[18]  *But see Baan*, 103 F. Supp. 2d at 24, ruling that plaintiffs must show that defendants had the ability to control the allegedly fraudulent transactions, not that the defendants actually exercised this power.  *Baan* is distinguishable from this case.  In *Baan*, defendant Jan Baan "was the CEO for most of the relevant period, and his active role in the management of Baan can also be inferred from his statements to the press regarding Baan's sales figures, market share, and prospects for growth," a second defendant Paul Baan "had previously served as Baan's COO, and was vice chairman, managing director, and president of Baan," and the third defendant was "controlled by Paul and Jan Baan, and owns a large percentage of Baan's stock."  *Id.*  The court found these allegations, taken together with the fact that Jan and Paul Baan, through the third defendant, owned 39% of Baan, sufficiently particularized to allege control.  Plaintiffs' allegations here against the Outside Directors fall far short of this level of control.

[19]  Defendants recognize that other courts have found allegations of audit committee membership coupled with signatures on financial statements sufficient to plead the element of control, but this rule only makes sense in circuits (like the Second) where culpable participation is also required.  *In re Livent, Inc. Sec. Litig.*, 148 F. Supp. 2d 331,

1988 WL 19229 (S.D.N.Y. Feb. 10, 1988) (dismissing Section 20(a) claim against outside directors who were members of the audit committee and signed the challenged financial statements).

2.    The E&F Plaintiffs Do Not Allege that the Non-Audit Committee Directors Controlled The Technical Accounting Judgments At Issue

The E&F Plaintiffs' allegations of control against the Non-Audit Committee Directors are based almost exclusively on their status as directors.  The E&F Plaintiffs allege only that the Non-Audit Committee Directors had the power to exercise control based on their positions as directors of Fannie Mae; their authority to oversee all business and affairs of the Company; and their signatures on the financial statements.  (Evergreen Compl. ¶ 472; Franklin Compl. ¶ 550.) These allegations of outside director status, without more, cannot suffice to plead control for purposes of Section 20(a) liability.  *In re Gupta Corp. Sec. Litig.*, 900 F. Supp. 1217, 1243 (N.D. Cal. 1994) ("Directors are not automatically liable as controlling persons."); *Hemming v. Alfin Fragrances, Inc.*, 690 F. Supp. 239, 245 (S.D.N.Y. 1988) ("Status as an officer, director or shareholder, absent more, is not enough to trigger liability under § 20.").

Nor does the addition of the allegation that these Directors signed the challenged financial statements suffice to state a Section 20(a) claim without other indicia of control.  *In re Lernout & Hauspie Sec. Litig.,* 286 B.R. 33, 44 (D. Mass. 2002), *aff'd*, *Quaak v. Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren*, 361 F.3d 11 (1st Cir. 2001) (dismissing claim against outside director:  "Where the defendant's status is merely that of outside director, however, the defendant's signature on the SEC filing does not necessarily constitute an exercise of any power or control over its contents.")  The E&F Plaintiffs make no allegation that any of the Non-Audit

---

373 (S.D.N.Y. 2001) (finding allegations sufficient to allege element of control, but dismissing Section 20(a) claim for failure to allege culpable participation.)  Otherwise, any director who serves on the audit committee of a publicly traded company may be required to defend himself or herself against securities fraud charges based solely on his or her status, without any allegation of wrongdoing against the director personally.

Committee Directors had any involvement with the Company's accounting policies. The fact that these defendants, by definition, did not serve on the Audit Committee belies any possible notion that they controlled the Company's application of these extremely complex and technical accounting judgments. In the absence of specific facts demonstrating that the Non-Audit Committee Defendants controlled those determinations, the E&F Plaintiffs cannot state a claim for control person liability against the Non-Audit Committee Directors.

B. **The E&F Plaintiffs Fail to Allege That Any of the Outside Directors Culpably Participated in the Alleged Fraud**

As discussed above, the D.C. Circuit has not ruled on the issue of whether a plaintiff must allege "culpable participation" in the underlying fraud to plead Section 20(a) liability.[20] The better reasoned view requires individualized factual allegations of the actual participation by the Directors in the allegedly false or misleading statements.[21] Where, as is the case here, the allegations of control are premised almost entirely on inaction by the Outside Directors, it is particularly important that the plaintiffs be required to allege that the inaction intentionally furthered the alleged fraud or prevented its discovery. *Rochez Bros.*, 527 F.2d at 890. Again, for all the reasons stated above, the E&F Plaintiffs have failed to allege sufficient facts to infer culpable participation by the Outside Directors in the alleged fraud.

III. **The E&F Plaintiffs Cannot State A Claim For Control Person Liability Under Section 15 Of The Securities Act**

Counts VI of the E&F Complaints assert claims against Messrs. Raines, Howard, Gerrity, Harvey, Segue, and Malek and Mses. Spencer and Mulcahy for control person liability under Section 15 of the Securities Act. As with control person liability under Section 20(a) of the Exchange Act, liability under Section 15 requires first that a plaintiff allege an underlying

---

[20] *Savoy Indus.*, 587 F.2d at 1170.

[21] *First Jersey Sec.*, 101 F.3d at 1472; *Rochez Bros*, 527 F.2d at 890; *Carpenter*, 594 F.2d at 394.

primary violation of the Securities Act, such as a viable claim under Section 11(a).  Here, as set forth in detail in Fannie Mae's Memorandum of Law, the E&F Plaintiffs cannot establish a primary violation of Section 11 because Fannie Mae's common stock is exempt under the Securities Act of 1933.  Without a primary violation of Section 11, the E&F Plaintiffs' Section 15 claims must be dismissed.[22]

In addition, the arguments regarding control person liability under Section 20(a) of the Securities Exchange Act apply with equal force to the E&F Plaintiffs' Section 15 claims. *Demaria v. Andersen*, 153 F. Supp. 2d 300, 314 (S.D.N.Y. 2001) ("In order to survive a motion to dismiss a claim under Section 15, plaintiffs must allege: (i) an underlying primary violation of the securities laws by the controlled person; (ii) control over the controlled person; and (iii) particularized facts as to the controlling person's culpable participation in the violation of the controlled person.").  Thus, the E&F Plaintiffs' failure to establish that Messrs. Gerrity, Harvey, Segue, and Malek and Ms. Mulcahy culpably participated in any primary violation warrants dismissal of the Section 15 claims.

IV.    The E&F Plaintiffs' Exchange Act Section 18 Claims And Securities Act Sections 11 And 15 Claims Are Time Barred

As demonstrated in detail in Fannie Mae's Memorandum of Law, which is incorporated by reference, the E&F Plaintiffs' Sections 11, 15 and 18 claims are fail as a matter of law for several reasons applicable to all the Defendants.  (*See* Fannie Mae Memo. at 8-15.)  With respect to the Outside Directors, however, an additional basis for holding these claims time barred exists. Fannie Mae's Outside Directors were not named in any of the originally filed class action complaints.  Nor were they named as defendants in the Consolidated Class Action Complaint

---

[22] *See Cooperman v. Individual, Inc.*, 171 F.3d 43, 52 (1st Cir. 1999) ("A necessary element of a Section 15 claim is a primary violation of [Section 11]. . . . Because plaintiffs have failed to state a claim for such a primary violation, they have also failed to state a claim under Section 15.").

filed by Lead Plaintiffs on March 4, 2005. As a result, there can be no argument that the filing of

the class action tolls the statute of limitations as to these newly added defendants. *Arneil v.

Ramsey*, 550 F.2d 774, 782 n.10 (2d Cir. 1977) (limitations period tolled only as to defendants

named in the class action); *Lindner Dividend Fund, Inc. v. Ernst & Young*, 880 F. Supp. 49, 54

(D. Mass. 1995) (same).

V.      The E&F Plaintiffs Fail To Plead A Common Law Fraud Claim With Particularity
        Against The Audit Committee Directors

        As set forth in the Fannie Mae Memorandum, the E&F Plaintiffs' common law fraud

claims are preempted by SLUSA. (Fannie Mae Memo. at 25-28.) Indeed, state common law

fraud claims are precisely the type of claim that Congress sought to preempt in federal securities

actions when it enacted SLUSA in 1998 and this case provides no exception. The E&F

Plaintiffs' common law fraud claims also fail as to the Audit Committee Defendants for the

additional reason that the E&F Plaintiffs' allegations fail to satisfy the heightened pleading

requirements of Federal Rule of Civil Procedure 9(b). Thus, even if the claims were not part of a

covered class action and not preempted by SLUSA, the common law fraud claims should be

dismissed as against the Audit Committee Directors. While Federal Rule of Civil Procedure 9(b)

permits a plaintiff to aver state of mind generally, plaintiffs must still allege specific facts that

support an inference that the defendants acted with the requisite intent to deceive. *In re

Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1417-18 (3d Cir. 1997); *Acito v. IMCERA

Group, Inc.*, 47 F.3d 47, 53 (2d Cir. 1995); *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1209

(1st Cir. 1996) (all applying Rule 9(b) to securities fraud complaints in pre-PSLRA cases).

Factual allegations that support only an inference of negligence or that defendants should have

known of the alleged fraud do not suffice. Here, as discussed in the Section 10(b) argument

above, the E&F Plaintiffs' factual allegations cannot support an inference that any of the Audit

Committee Directors acted with the intent to defraud or in reckless disregard of known facts.

Thus, the fraud claim against the Audit Committee Directors must be dismissed under Rule 9(b).

VI.     <u>The E&F Complaints Cannot Establish A Claim For Negligent Misrepresentation</u>

Counts IX of the E&F Complaints purport to assert a claim for negligent

misrepresentation against all Defendants.  In addition to the fact that the E&F Plaintiffs'

negligent misrepresentation claims are preempted under SLUSA, (*see* Fannie Mae Memo. at 25-

29), these claims must be dismissed because the E&F Plaintiffs' own allegations establish that

the Outside Directors had no reasonable grounds to believe that Fannie Mae's financial

statements were materially false and misleading.

As the E&F Complaints both conclusively demonstrate, the Outside Directors relied on

the information and assurances provided to them by KPMG and the Company's internal

accountants concerning the Company's financial condition.  (*See, e.g.,* Evergreen Compl. ¶ ¶

187, 280; Franklin Compl. ¶¶ 212, 309, 363; *see also* Statement of Warren B. Rudman at 7;

Stern Decl. ¶ 5 ("The Board relied heavily on senior management, as well as the views [of

KPMG].").)  Where, as here, the face of a complaint establishes a defense, dismissal of the claim

is appropriate.  *See Smith-Haynie v. District of Columbia*, 155 F.3d 575, 578 (D.C. Cir. 1998)

(holding that "an affirmative defense may be raised by pre-answer motion under Rule 12(b)

when the facts that give rise to the defense are clear from the face of the complaint").

The alleged false and misleading information, which the E&F Plaintiffs contend was

included in Fannie Mae's financial statements, consists entirely of information regarding Fannie

Mae's "financial statements, accounting policies and practices, and internal financial controls."

(Evergreen Compl. ¶ 505; Franklin Compl. ¶ 584.)  Yet, the E&F Plaintiffs assert that prior to

the Company's registration with the SEC, Fannie Mae had the "benefit of having third parties

look at our accounting policies and ask . . . detailed questions about them.  [Fannie Mae's]

external auditor, KPMG, . . . always treated [the Company] as . . . an SEC registrant, and . . . applied those standards throughout history."  (Evergreen Compl. ¶ 280; Franklin Compl. ¶ 309; *see also* Statement of Warren B. Rudman at 8; Stern Decl. ¶ 5 ("The Audit Committee received regular assurances that the company's accounting complied with relevant accounting standards.").)  Indeed, throughout the Franklin Complaint, the Franklin Plaintiffs allege that Fannie Mae's financial results were reviewed and approved by KPMG before they were released (*see, e.g.,* Franklin Compl. ¶¶ 214, 363), and further allege that KPMG issued clean audit opinions throughout the Loss Period.  (Franklin Compl. ¶ 460.)  Not only do the E&F Plaintiffs fail to allege that the Outside Directors' reliance on KPMG was unreasonable or that Defendants concealed any information from KPMG, but the Franklin Plaintiffs even admit that:

> By virtue of its position as outside auditor to Fannie Mae, KPMG had access to the Company's files and key employees at all relevant times.  As a result of the auditing and other services KPMG provided to Fannie Mae, KPMG personnel were frequently present at Fannie Mae's corporate headquarters throughout each year.  Moreover, KPMG personnel had continual access to and knowledge of Fannie Mae's confidential internal corporate, financial, operating, and business information, including internal monthly financial records, Board minutes and other internal memoranda.

(Franklin Compl. ¶ 460.)

Similarly, the E&F Complaints provide ample support for the Outside Directors' reasonable reliance on Mr. Howard and Ms. Spencer with respect to the disclosures in Fannie Mae's financial statements.  Both the E&F Complaints are replete with allegations that Mr. Howard and Ms. Spencer, after reviewing the Company's financial results, represented that:

> [t]he management of Fannie Mae is responsible for the preparation, integrity, and fair presentation of the accompanying financial statements . . . In our opinion, the financial statements have been prepared in conformity with accounting principles generally accepted in the United States of America appropriate in the circumstances, and the other financial information in [the annual

> reports] is consistent with such statements. . . . [M]anagement
> believes that . . . Fannie Mae's internal control environment . . .
> provided reasonable assurance as to the integrity and reliability of
> the financial statements and related financial information.

(*See, e.g.,* Evergreen Compl. ¶ 187; Franklin Compl. ¶ 212.)  The E&F Plaintiffs simply have not

alleged (because they cannot) a single fact demonstrating that the Audit Committee Directors'

and other Outside Directors' reliance on Mr. Howard and Ms. Spencer was unreasonable.  (*See,*

*e.g.*, Statement of Warren B. Rudman at 7; Stern Decl. ¶ 5 ("[W]e noted many instances in which

the management assured the Board, often in the presence of its outside auditor, that the

company's critical accounting policies were consistent with GAAP.").)  Indeed, as described

above, none of the alleged "red flags" cited by the E&F Plaintiffs could have placed the Outside

Directors on notice that, contrary to Mr. Howard's and Ms. Spencer's representations, Fannie

Mae's accounting did not comply with GAAP.

In the absence of any factual allegations suggesting that the Outside Directors lacked a

reasonable basis for relying on KPMG and/or Mr. Howard and Ms. Spencer, the E&F Plaintiffs

have effectively established through their own allegations an affirmative defense of reasonable

reliance.  Accordingly, the E&F Plaintiffs' negligent misrepresentation claims should be

dismissed.

## CONCLUSION

For all of the reasons set forth above, and for the reasons set forth in the accompanying

memorandum of law in support of Fannie Mae's motion to dismiss (as incorporated herein by

reference), all of the claims asserted against the Outside Directors in the E&F Complaints should

be dismissed for failure to state a claim upon which relief can be granted.

Dated:  May 15, 2006

Respectfully submitted,


_____/s/ Jeffrey W. Kilduff_____

John Beisner (D.C. Bar No. 320747)
Jeffrey W. Kilduff (D.C. Bar No. 426632)
Kimberly A. Newman (D.C. Bar. No. 430326)
Robert M. Stern (D.C. Bar No. 478742)
Natasha Colton (DC Bar No. 479647)
Michael J. Walsh, Jr. (D.C. Bar No. 483296)
O'Melveny & Myers LLP
1625 Eye Street, N.W.
Washington, DC  20006
T:  202/383-5300
F:  202/383-5414
-and-
Seth Aronson
O'Melveny & Myers LLP
400 South Hope Street, 15th Floor
Los Angeles, CA  90071-2899
T:  213/430-6000
F:  213/430-6407

*Counsel for Defendants Kenneth Duberstein, William R. Harvey, Taylor C. Segue III, H. Patrick Swygert, and Manuel Justiz*


_____/s/ Earl J. Silbert_____

Earl J. Silbert (D.C. Bar No. 053132)
Erica Salmon Byrne (D.C. Bar No. 480477)
DLA Piper Rudnick Gray Cary US LLP
1200 19th Street, NW
Washington, DC  20036
T:  202/861-3900
F:  202/223-2085
-and-
John J. Clarke, Jr.
DLA Piper Rudnick Gray Cary US LLP
1251 Avenue of the Americas
New York, NY  10020-1104
T:  212/835-6000
F:  212/884-8520

*Counsel for Defendants Stephen B. Ashley, Ann Korologos, and Donald B. Marron*

_____/s/ Christian J. Mixter_____
Christian J. Mixter (D.C. Bar No. 352238)
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Ave., NW
Washington, DC  20004
T:  202/739-3000
F:  202/739-3001
-and-
Robert Romano
Rachelle Barstow
Bonnie Altro
Morgan, Lewis & Bockius
101 Park Avenue
New York, NY  10178-0060
T:  212/309-6000
F:  212/309-6001

***Counsel for Defendant Tom Gerrity in the Franklin Action***


_____/s/ James D. Wareham_____
James D. Wareham (D.C. Bar No. 411799)
James Anklam (D.C. Bar No. 414122)
Carolyn W. Morris (D.C. Bar No. 463865)
Paul, Hastings, Janofsky & Walker LLP
875 15th Street, NW
Washington, DC 20005
T:  202/551-1700
F:  202/551-1705

***Counsel for Defendant Daniel H. Mudd***


_____/s/ Julia E. Guttman_____
Julia E. Guttman (D.C. Bar No. 412912)
Baker Botts LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
T:  202/639-7700
F:  202/639-7890

***Counsel for Defendant Jamie S. Gorelick***

_____/s/ Fred F. Fielding_____
Fred F. Fielding (D.C. Bar No. 099296)
Barbara Van Gelder (D.C. Bar No. 265603)
Wiley Rein & Fielding LLP
1776 K Street, N.W.
Washington, D.C.  20006
T:  202/719-7000
F:  202/719-7207

***Counsel for Defendants Frederic V. Malek and Anne Mulcahy and for Defendant Tom Gerrity in the Evergreen Action***


_____/s/ James Hamilton_____
James Hamilton (D.C. Bar No. 108928)
David I. Ackerman (D.C. Bar No. 482075)
Bingham McCutcheon LLP
2020 K Street, NW
Washington, DC  20006
T:  202/373-6000
F:  202/373-6001

***Counsel for Defendant Joe K. Pickett***

| | |
|---|---|
| _____/s/ Rhonda D. Orin_____ | ***Of-Counsel for Defendant Manuel J. Justiz:*** |
| Rhonda D. Orin (D.C. Bar No. 439216) | Shannon H. Ratliff |
| Daniel J. Healy (D.C. Bar No. 476233) | Texas Bar No. 16573000 |
| Anderson Kill & Olick, P.C. | Michael L. Navarre |
| 2100 M Street, NW | Texas Bar No. 00792711 |
| Suite 650 | Ratliff Law Firm, P.L.L.C. |
| Washington, DC  20037 | 600 Congress Avenue, Suite 3100 |
| T:  202/218-0049 | Austin, Texas  78701 |
| F:  202/218-0055 | T:  512/493-9600 |
| -and- | F:  512/493-9625 |
| John H. Doyle, III | |
| Anderson Kill & Olick, P.C. | |
| 1251 Avenue of the Americas | |
| New York, NY  10020 | |
| T:  212/278-1000 | |
| F:  212/272-1733 | |

***Counsel for Defendant Leslie Rahl***