# EXHIBIT C

64Kbwaiga (2).txt

1

```
64Kbwaig                    Oral Argument
1   UNITED STATES DISTRICT COURT
1   SOUTHERN DISTRICT OF NEW YORK
2   ----------------------------x
2
3   IN RE:  AIG, Inc., Securities
3   Litigation                          04 CV 8141 (JES)
4
4   ----------------------------x
5                                       New York, N.Y.
5                                       April 20, 2006
6                                       2:15 p.m.
6
7   Before:
7
8                    HON. JOHN E. SPRIZZO,
8
9                                       District Judge
9
10                          APPEARANCES
10
11  LABATON SUCHAROW & RUDOFF, LLP
11       Attorneys for Lead Plaintiff AIG Securities Litigation
12  EDWARD LABATON
12  THOMAS A. DUBBS
13  LOUIS GOTTLIEB
13  ZACHARY M. RATZMAN
14
14  LERACH, COUGHLIN, STOIA, GELLER, RUDMAN & ROBBINS, LLP
15       Attorneys for AIG Derivative Plaintiffs
15  ROBERT M. ROTHMAN
16  TOR GRONBORG
16
17  HAHN, LOESER + PARKS, LLP
17       Attorneys for Plaintiff State of Ohio Funds, AIG
18       Securities
18  ALAN S. KOPIT
19
19  BERMAN, DeVALERIO, PEASE, TABACCO, BURT & PUCILLO
20       Attorneys for Plaintiff Florida State Board
20  MICHAEL PUCILLO
21  WENDY H. ZOBERMAN
21
22  WOLF, HALDENSTEIN, ADLER, FREEMAN & HERZ, LLP
22       Attorneys  for Delaware Derivative Plaintiffs
23  JEFFREY G. SMITH
23
24  PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP
24       Attorneys for Defendants AIG and Maurice Greenberg
25  DANIEL JONATHAN KRAMER
25  STACEY A. SHORTALL
              SOUTHERN DISTRICT REPORTERS, P.C.
                       (212) 805-0300
```

2

```
64Kbwaig                    Oral Argument
1   BOIES, SCHILLER & FLEXNER, LLP
1       Attorneys for Defendant Maurice Greenberg
2       AIG Securities, Florida State Board and AIG Derivative
2   STEVEN I. FROOT
3
3   KOBRE & KIM, LLP
4       Attorneys for Defendants Tom Tizzio, AIG
              Page 1
```

64Kbwaiga (2).txt

```
 4         Derivative, and Karen Rodke, Florida State Board
 5    MICHAEL S. KIM
 5    STEVEN W. PERLSTEIN
 6
 6    SKADDEN, ARPS, SLATE, MEACHER & FLOM, LLP
 7         Attorneys for Defendant Starr International Co, Inc.
 7         and C.V. Starr Co, AIG Securities
 8    STEVEN J. KOLLEENY
 8
 9    DECHERT, LLP
 9         Attorneys for Defendant Michael J. Castelli, AIG
10         Securities
10    CHARLES I. PORET
11
11    SCHINDLER COHEN & HOCHMAN, LLP
12         Attorneys for Evan Greenberg, AIG Securities and AIG
12         Derivative
13    HOWARD A. FISCHER
13
14    SIMPSON, THACHER & BARTLETT, LLP
14         Attorneys for Defendant Frank Hoenemeyer, AIG
15         Securities and all outside directors, AIG Derivative
15    JAMES GAMBLE
16
16    CADWALADER, WICKERSHAM & TAFT, LLP
17         Attorneys for Defendant Ronald Ferguson, AIG
17         Securities and AIG Derivative
18    DOUGLAS IRA KOFF
18
19    ARNOLD & PORTER, LLP
19         Attorneys for Defendant General Reinsurance Corporation,
20         AIG Securities and AIG Derivative
20    RICHARD P. SWANSON
21
21    MUNGER, TOLLES & OLSON, LLP
22         Attorneys for Defendant General Reinsurance Corporation,
22         AIG Securities
23    GEORGE M. GARVEY
23
24    SIDLEY AUSTIN, LLP
24         Attorneys for Defendants Merrill Lynch & Co. and
25         Wachovia Securities, Inc., AIG Securities
25    NICHOLAS P. CROWELL
                   SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300
```

3

```
      64Kbwaig           Oral Argument
 1    MAYER, BROWN, ROWE & MAW, LLP
 1         Attorneys for Defendants John A. Graf and Eli Broad,
 2         AIG Securities and AIG Derivative
 2    RICHARD A. SPEHR
 3
 3    CRAVATH, SWAINE & MOORE, LLP
 4         Attorneys for Defendant PriceWaterhouseCoopers, LLP
 4         AIG Securities and AIG Derivative
 5    THOMAS G. RAFFERTY
 5
 6    JONES DAY
 6         Attorneys for Defendant Union Excess Reinsurance Co.,
 7         AIG Securities
 7    JAYANT W. TAMBE
 8
 8    LEVETT ROCKWOOD, P.C.
```

Page 2

64Kbwaiga (2).txt

```
 9              Attorneys for Defendant Richard Napier, AIG Securities
 9        BRIAN E. SPEARS
10
10        HAFETZ & NECHELES
11              Attorneys for Defendant Christian Milton, AIG Securities
11              and Florida State Board
12        MICHAEL S. CHERNIS
12
13        WACHTELL, LIPTON, ROSEN & KATZ
13              Attorneys for Defendant Martin Sullivan, AIG Securities,
14              Florida State Board and AIG Derivative
14        DAVID M. MURPHY
15
15        FARUQI & FARUQI, LLP
16              Attorneys for Defendant, AIG Derivative
16        ANTONIO VOZZOLO
17
17        SERCARZ & RIOPELLE, LLP
18              Attorneys for Defendant (Florida State Board matter)
18        ROLAND RIOPELLE
19
19        ALSTON & BIRD, LLP
20              Attorneys for Defendant David Fields
20        NELSON A. BOXER
21
22
23
24
25

                      SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```

```
          64Kbwaig              Oral Argument
 1              (In open court)
 2              (Case called)
 3              THE COURT:  We will take the derivative first.
 4              THE DEPUTY CLERK:  I thought we were taking Florida
 5        first.
 6              THE COURT:  No.  The derivative first.
 7              THE DEPUTY CLERK:  In Re:  AIG, the derivative cases.
 8              UNIDENTIFIED SPEAKER:  Good afternoon, your Honor.
 9              THE COURT:  What are you here for, an adjournment?
10              UNIDENTIFIED SPEAKER:  Excuse me?
11              THE COURT:  What are you here, for an adjournment?
12              MR. KRAMER:  We're not seeking an adjournment, your
13        Honor.
14              UNIDENTIFIED SPEAKER:  No, no.  It's updating the
15        Court on the status of the derivative litigation.
16              THE COURT:  Go ahead.
17              UNIDENTIFIED SPEAKER:  And currently, as you know, the
18        case is stayed through May 1.  We've recently received a letter
19        from Mr. Kramer.  We understand the special litigation
20        committee is seeking an extension of that stay, currently
21        discussing that matter with them.  So I anticipate that, very
22        shortly, we will either file a stipulation with the Court or
23        there will be motion practice before the Court on that step.
24              THE COURT:  So what do you want me to do with it?
25              UNIDENTIFIED SPEAKER:  Currently we're still in
                      SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```

```
          64Kbwaig              Oral Argument
 1        negotiation.  We're not sure.
                              Page 3
```

64Kbwaiga (2).txt

```
2        THE COURT:  Do you want a control conference?
3        UNIDENTIFIED SPEAKER:  I don't know if that's
4   necessary.  At this point, we've just started discussing with
5   them what the basis is for extending the stay.  So I'm not
6   positive as we sit here today.  I think within the next week,
7   we will have a better understanding of whether that's
8   necessary.
9        THE COURT:  I just don't want to leave the case
10  hanging open ended.
11       UNIDENTIFIED SPEAKER:  It's not open ended right now.
12  I'll not speak for the others.  I don't believe they're
13  actually seeking anything that would be open ended.  They've
14  requested an extension of stay until August 26.
15       THE COURT:  Then what happens?
16       UNIDENTIFIED SPEAKER:  And the question is whether or
17  not we extend it that long.
18       THE COURT:  I'd like to have a calendar control.  I'll
19  put you down for a calendar conference in September.
20       UNIDENTIFIED SPEAKER:  Okay.
21       THE COURT:  The end of September?
22       THE DEPUTY CLERK:  Yes.
23       THE COURT:  You've already got your motion practice so
24  if you work it out in some other way, let me know.  By that
25  time, the committee should have reported I guess, I would
```
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

                                                              6
64Kbwaig              Oral Argument
```
1   assume.  It's taking a while, isn't it?
2        MR. KRAMER:  Your Honor, the special committee was
3   formed last summer after Mr. Hammerman and Mr. Meyers joined
4   the board.  They've been going through the claims in the
5   lawsuits, the Johanna claims and our view is that that process
6   should continue.  If, however, there is going to be discovery
7   in the securities case that went forward before that was ready,
8   we would think that the derivative plaintiffs should
9   participate so that they keep it efficient, and if the SLC
10  reports to us before then, we will have a motion for your Honor
11  based on the report from the SLC.  So it's our view that from
12  now and through until August, there really isn't a lot for us
13  to do here except wait for the SLC.
14       THE COURT:  But you said if the discovery goes forward
15  in the other cases, you want to participate.
16       MR. KRAMER:  We would be amenable to having them
17  participate so that we can keep it efficient and not duplicate
18  efforts.
19       THE COURT:  All right.
20       MR. KRAMER:  But when the SLC comes down with its
21  findings, we would make an appropriate motion before the Court
22  based on those findings.
23       THE COURT:  Well, if the company decides to act I
24  guess through other means you're kind of out, I guess.
25       MR. KRAMER:  The SLC can do many things.  The SLC can
```
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

                                                              7
64Kbwaig              Oral Argument
```
1   decide to pursue a claim, which is fine.
2        THE COURT:  If they don't pursue the claim, then you
3   have an open row, so to speak.
4        MR. KRAMER:  Then one of two things.  We either have a
5   motion to terminate the claim based on business judgment, or
6   the SLC may determine to simply let plaintiffs' claims go
```
                              Page 4

64Kbwaiga (2).txt

```
 7    forward.  I just don't know what they're going to decide on
 8    what claim.
 9         THE COURT:  All right.  So we will put it down for
10    control, and let me know where you are.
11         MR. KRAMER:  Correct.
12         THE COURT:  September what?
13         THE DEPUTY CLERK:  Tuesday, September 12 at 3 p.m.  We
14    will be in courtroom 21C of Pearl Street.
15         MR. KRAMER:  Your Honor, the only open issue is that
16    the stay we have by consent runs until May 1.
17         THE COURT:  Well, just give me a stipulation extending
18    it.
19         UNIDENTIFIED SPEAKER:  Your Honor, if I can, because
20    we're trying to avoid this being extended out and open ended or
21    not, as we were discussing, I'm not sure that plaintiffs are
22    amenable at this point to extending it out until August.
23    That's part of the discussions that are ongoing now.  So I
24    anticipate well in advance of September we will either file a
25    stipulation --
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

8

64Kbwaig                 Oral Argument

```
 1         THE COURT:  What do you want?  You come in and tell me
 2    you want a stay until August, then you say you don't agree on
 3    the stay until August.
 4         UNIDENTIFIED SPEAKER:  Well, the SLC and Mr. Kramer
 5    have suggested the stay which currently ends on May 1 which is
 6    what was agreed to, they would like that extended.  We are in
 7    the process of having discussions with them regarding the basis
 8    for extending that stay.
 9         THE COURT:  You could always advance it.
10
11         UNIDENTIFIED SPEAKER:  And that's the open question
12    right now, and I want to give the SLC an opportunity to
13    explain.
14         THE COURT:  The question is if they haven't acted by
15    August, there's nothing for you to tell me.  If they have acted
16    by August, then there is something you can tell me.  Because
17    they acted in July you can come in in July.  The stay won't
18    stop you from coming in in July, but for now I'll stay it until
19    August.  It seems to me it's reasonable.  If the stay has to be
20    shortened because things happen between now and August, that's
21    okay.  I'll hear it then.  I'm always flexible.
22         UNIDENTIFIED SPEAKER:  Then I anticipate --
23         THE COURT:  The stay is not carved in stone.  If it
24    turns out you don't need that much time, you come in any time,
25    right?
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

9

64Kbwaig                 Oral Argument

```
 1         MR. KRAMER:  Just to clarify, your Honor, I represent
 2    AIG, but the stay would be for all defendants in the case.
 3         THE COURT:  I would assume so.
 4         MR. KRAMER:  Yes.
 5         THE COURT:  Okay?  Get a stipulation.  Sound good for
 6    everybody?
 7         MR. KRAMER:  Your Honor, we could do that in the next
 8    day.
 9         THE COURT:  Okay.  Give it to me by Monday.
10         MR. KRAMER:  Correct.
11         THE COURT:  All right?  I'll take the Securities case
```

Page 5

64Kbwaiga (2).txt
12   first.
13            THE DEPUTY CLERK:  Securities?  Okay.  In Re:  AIG,
14   the Securities case, and you can move in George Garvey first,
15   Mr. Swanson.
16            THE COURT:  Who do you represent?
17            THE DEPUTY CLERK:  Mr. Garvey represents defendant,
18   General Reinsurance Corporation.
19            MR. SWANSON:  My task here today, your Honor, is to
20   move for the admission pro hac vice of George Garvey.
21            THE COURT:  Are you a member of the bar of this court?
22            MR. SWANSON:  Yes, your Honor.
23            THE COURT:  He's in good standing of his court?
24            MR. SWANSON:  Yes, he's in very good standing, your
25   Honor.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

                                                              10
     64Kbwaig            Oral Argument
1             THE COURT:  For the moment, I'll let him argue.
2             MR. SWANSON:  Thank you, your Honor.
3             THE COURT:  Go ahead.  Do you want to say something?
4             MR. KRAMER:  Your Honor, would you like to hear the
5    securities case now?
6             THE COURT:  Yes.
7             MR. KRAMER:  May I approach the podium?
8             THE COURT:  I'll tell you how we're going to handle
9    it.  We will take the argument defendant by defendant.  It
10   makes it a little easier.  We will hear from the major
11   defendants first.  I figure that's AIG and Greenberg, right?
12   So you make your motion first, and I'll let them respond to it.
13   Go ahead, each defendant individually.
14            MR. KRAMER:  Thank you very much.  Dan Kramer from
15   Paul Weiss for defendant AIG and its subsidiary Richmond
16   Insurance Company.
17            Your Honor, we're going to address our arguments first
18   to the class complaint.  We're going to address the Florida
19   complaint later.  I understand that's how your Honor wanted --
20            THE COURT:  Well, that's basically the same thing,
21   really.  It's just filed under their own action.  It's out of
22   the classes as I understand it.
23            MR. KRAMER:  The principal difference, your Honor, is
24   that Florida has raised several counts under state common law,
25   which are not in the class complaints so that would be the
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

                                                              11
     64Kbwaig            Oral Argument
1    difference, and that's what I will address.
2             THE COURT:  For all purposes today, the argument is
3    essentially the same.
4             MR. KRAMER:  Correct, your Honor.  Correct.
5             THE COURT:  I'm not concerning myself with the state
6    law.  We will have nothing to do with those.
7             MR. KRAMER:  Okay, your Honor.
8             So let's start with the class action complaint.  There
9    are thirteen counts in it, your Honor.  Ten are asserted
10   against my client, AIG.  Three are the control person claims
11   that are not asserted against AIG.  And what I'd like to do is
12   address the first five counts.
13            THE COURT:  Is this AIG or do you represent Greenberg,
14   too?
15            MR. KRAMER:  I do not represent Mr. Greenberg.  He
16   hasn't been with AIG for over a year.  Mr. Greenberg has
                            Page 6

64Kbwaiga (2).txt
17  separate counsel who will follow me --
18          THE COURT: All right.
19          MR. KRAMER: -- if you'd like.  I represent AIG and
20  Richmond, a subsidiary of AIG, and those are my only clients
21  here today.
22          Ten of the thirteen counts are asserted against AIG.
23  The first five causes of action, your Honor, are causes of
24  action asserted with respect to bonds and non-common stock.  An
25  argument that we made, the principal argument that we made
            SOUTHERN DISTRICT REPORTERS, P.C.
                    (212) 805-0300

                                                              12
    64Kbwaig              Oral Argument
1   regarding those counts is that the plaintiff lacks standing
2   because the complaint does not allege that they ever bought any
3   of those securities, and so also in the affidavit that they
4   filed with the complaint, that they have to file in order to be
5   plaintiff here, they only list common stock purchases.  And so
6   in our motion, we pointed out to the Court they don't own
7   anything --
8           THE COURT: I do not think they have to.
9           MR. KRAMER: Well, your Honor, let me address that,
10  then, because it's our view that they do.
11          THE COURT: So long as the underlying fraud, which has
12  affected everybody in this case, is rather than the same course
13  of conduct, it doesn't make any difference whether each person
14  bought that particular class of stock because there are cases,
15  including one of my own, Bear Stern, which says just the
16  opposite.  It's a Second Circuit case.
17          MR. KRAMER: Let me take a run at that, then, your
18  Honor.
19          THE COURT: You've read my opinion?
20          MR. KRAMER: Your Honor, I haven't, and I will go back
21  and read it.  It's not one that I read.  I apologize.
22          THE COURT: There's a whole host of securities law
23  involved in that case which the plaintiff had some of them, not
24  all of them, and I think they're relying upon a Second Circuit
25  case.  It's not necessary which doesn't mean you don't have
            SOUTHERN DISTRICT REPORTERS, P.C.
                    (212) 805-0300

                                                              13
    64Kbwaig              Oral Argument
1   standing.
2           MR. KRAMER: Let me take a shot at that because I
3   believe there are some circumstances where a plaintiff can
4   raise claims with respect to securities he does not own and
5   some circumstances where he can't, and let me take a shot to
6   explain why I think this falls in the latter category.
7           With Section 11 claims and they don't cite any Second
8   Circuit case on this, your Honor.
9           THE COURT: But I did in Bear Stern.
10          MR. KRAMER: Yes, and I have to look at that case.
11          THE COURT: There's also a Second Circuit case
12  referred to which I thought was really Judge Pollack's case.
13  I'm not sure.
14          MR. KRAMER: Your Honor, the case that we have is a
15  2004 case in the Salomon Analyst cases, which essentially cites
16  a long line of cases which say that in Section 11
17  circumstances, the transaction at issue, the transaction that's
18  alleged to be fraudulent is the registration statement that
19  relates to the offering, the security being offered, and so in
20  order to raise a claim of fraud regarding bonds and those types
21  of securities that are offered pursuant to a registration
                        Page 7

64Kbwaiga (2).txt
22  statement, that's the transaction.  It's not everything else
23  that happened.  You actually have to be defrauded in connection
24  with that registration statement.
25          So the cases that we've seen, which divide some cases
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

                                                                14
      64Kbwaig              Oral Argument
1   finding plaintiffs who didn't purchase a security can represent
2   others and some cases finding they can't divide the issue
3   along the issue is it the registration statement that's a
4   transaction or not.
5          Here plaintiffs never claimed to have purchased the
6   securities that were based on those registration statements in
7   our claim of fraudulent, and, as a result, in the Salomon
8   Analyst, 350 F.2d, F. Supp. 2d 477, the Court makes that
9   distinction and cites a long line of cases that go that way.
10         I understand there are other cases which allow
11  plaintiffs to represent folks who bought other securities, but
12  they're not based on the registration statement itself.
13         So it's our view, we did not see
14  cases that held otherwise.  We did not see them.  We did not
15  find a Second Circuit case on point.  But it's our view that
16  having not alleged a purchase pursuant to a fraudulent
17  registration statement, they're not in a position to represent
18  the holders of those securities.
19         And, in fact, may I use one chart, your Honor?
20         THE COURT:  How is that improper standing?
21         MR. KRAMER:  Because under the rules -- give me one
22  second, your Honor.  In Bailey v. Paterson, the Supreme Court
23  said the plaintiff cannot represent a class with whom they're
24  not a party.
25         THE COURT:  I didn't take it that that's not a
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

                                                                15
      64Kbwaig              Oral Argument
1   standing question.  That's a class action representative
2   question.
3          MR. KRAMER:  Well, your Honor, in the case I just
4   cited to you which is Salomon Analyst, the court analyzes it as
5   a standing issue.
6          THE COURT:  If he has standing as to those, he has
7   standing, period.
8          MR. KRAMER:  Your Honor, I do not think he does.  Let
9   me explain why.  Let me give it a shot because I understand.
10         Here's the chronology, and I've given plaintiffs a
11  copy of this.  They've seen it already.  Here's a chronology of
12  what happened in this case.
13         We have shareholders alleging fraud here in December
14  2004.  In February 7, the Ohio funds are appointed lead
15  plaintiff, and on February 15, they announce that there's a
16  fraud here and they're going to pursue the fraud, so on and so
17  forth, and the Labaton firm is appointed lead counsel on
18  February 18.  After that, six months after the fraud being
19  alleged for the first time, they go out and they buy a bond.
20  That's the first time they buy a bond here, six months after
21  first alleging that this company was filled with fraud and that
22  they're going to go after it.
23         Under the PSLRA, there's a specific provision which
24  says that you may not go out and try to get standing to bring a
25  claim under the PSLRA by buying a security.  You can't do it.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           Page 8

64Kbwaiga (2).txt
(212) 805-0300

16

64Kbwaig                    Oral Argument
 1          THE COURT:  When did they buy it?
 2          MR. KRAMER:  They bought it March 15, your Honor.
 3          THE COURT:  During the class period?
 4          MR. KRAMER:  They bought it during the class period
 5  they allege but after alleging fraud.  In other words, they
 6  bought it for the purpose of trying to manufacture standing in
 7  this case.
 8          THE COURT:  I can't decide judicial notice.
 9          MR. KRAMER:  Your Honor, I think you can based on the
10  following facts that are undisputed and in the record that you
11  can take judicial notice of, that the first fraud case here was
12  filed December 2004, that they get appointed lead plaintiff and
13  lead counsel in February and alleging that there's an enormous
14  fraud here and that their certificate that they file on their
15  opposition brief because they didn't file it before, doesn't
16  have the language in it that the initial certificate had, which
17  was saying that they didn't buy it for the purpose of having
18  standing in this case.
19          I would submit to the Court that based on those facts,
20  one could find on a motion to dismiss.
21          THE COURT:  Please understand the argument is nothing
22  more than an argument that they should not have representative
23  of the class but it unquestionably has standing.
24          MR. KRAMER:  All right.
25          THE COURT:  You should argue that at a different
                    SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

17

64Kbwaig                    Oral Argument
 1  stage.
 2          MR. KRAMER:  We will certainly raise these arguments
 3  again at the class stage.
 4          THE COURT:  I don't find that argument particularly
 5  persuasive.
 6          MR. KRAMER:  Then I'll move on.  The second argument
 7  we have here, your Honor, and again we're talking about the
 8  first five causes of action here, we've spoken about our
 9  standing argument.  The first five are the three Section 11
10  claims.  This is control person claims so we're not involved
11  and then they have one 10b claim based on something other than
12  equity securities.
13          The other thing we point out, your Honor, is there's
14  no allegation in the complaint that any of these securities
15  were impaired at any point.  No allegation of any kind.
16          THE COURT:  In what way?
17          MR. KRAMER:  In other words, their allegations in the
18  complaint of damage are all based on the common stock, the
19  price of the common stock dropping.  There's no allegation here
20  that the bonds were not paid off either in principal or in full
21  amount or were impaired in any way.
22          In fact, your Honor, the 2.85 percent notes that
23  they're suing on for Count 1 by their own terms were paid off
24  in full, principal and interest, by their own terms, in
25  December.  We point that out in our moving papers, and they
                    SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

18

64Kbwaig                    Oral Argument
 1  don't respond.
 2          So there's no allegation in their complaint, and this
                              Page 9

64Kbwaiga (2).txt

3  is not a case, your Honor, like Enron or Worldcom where the
4  company goes out of business and all of the securities are
5  impaired. It's not one of those cases. AIG is not only still
6  in business, but it's thriving. The stock price is back up to
7  where it was before. So there's no allegation of damage.
8      Not only did they not own the securities, but there's
9  no allegation of damage. There's no response to the fact that
10  on the face of it, these bonds were paid off in full, and
11  there's no claim that these other bonds were impaired in any
12  way. And so we think that that's a second independent basis on
13  which to find that they shouldn't go forward with these claims.
14      And your Honor, what we're trying to do, obviously,
15  obviously I would like your Honor to dismiss this complaint,
16  but what we're also trying to do is bring this down to a
17  workable size so that if, for some reason, the entire complaint
18  isn't dismissed, we can have some efficient, reasonable
19  litigation here, and right now, we have claims in this
20  complaint that simply don't belong in here. And we believe
21  that the Section 11 claims, because of the lack of any
22  allegation of impairment, simply don't belong in this
23  complaint.
24      So we have that with respect to all of them, they have
25  no response to the fact that the interest and principal were

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

19

64Kbwaig          Oral Argument
1  paid off in full.
2      THE COURT: There's no claim here that they paid more
3  for the bonds than they should have?
4      MR. KRAMER: No, claim, no.
5      THE COURT: I seriously doubt that. If I go through
6  that, I'm sure I'll find it, unless Mr. Labaton has lost his
7  marbles.
8      MR. KRAMER: Mr. Labaton will have his chance to prove
9  me wrong. It's not in there. And there's a reason, your
10  Honor. This is a thriving company. This is not a company
11  where the bonds were impaired with the date they allege. So we
12  think the first five counts should be out of this complaint.
13      I want to raise, your Honor, if I may, one more
14  argument, sort of highlight one more argument from our brief
15  with respect to the Section 11 claims in addition to standing
16  and the failure to allege damages and the fact that they can't
17  deny that these were paid off in section number one, in claim
18  number one.
19      The zero coupon debentures that you see as a basis for
20  Count 2 and 5 are barred absolutely by the statute of
21  limitations, the three-year statute of limitations. Plaintiffs
22  agree that there's a three-year statute of limitations in this
23  case.
24      THE COURT: Well, isn't it five now?
25      MR. KRAMER: Your Honor, it's five years. Boxley

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

20

64Kbwaig          Oral Argument
1  provides that it's two and five years for fraud based claims,
2  and they've attempted to allege the Section 11 claims is not
3  fraud based. So they agree with us. The statute is one and
4  three. And so for this motion, we accept that.
5      THE COURT: On the 10b5 claims, too?
6      MR. KRAMER: On the 10b5 claims, it's a different
7  statute of limitations. We will have the two and five for

Page 10

64Kbwaiga (2).txt
8  those, but for the Section 11 claim and for Count 2, which
9  deals with the zero coupon debentures, in particular, it's our
10  position it's a one- and a three-year.
11      THE COURT:  When did they buy them?
12      MR. KRAMER:  They don't claim to have ever bought
13  them.  That's part of my issue with them.  They never claimed
14  to have bought them, even today.
15      THE COURT:  When does the statute run?
16      MR. KRAMER:  The statute runs from when the
17  registration statement becomes effective, and they plead in
18  their complaint when it becomes effective.
19      THE COURT:  Well, they must have claims grounded under
20  the registration; otherwise, you wouldn't be making the
21  argument that it's wrong.
22      MR. KRAMER:  Your Honor, I'm trying to raise every
23  claim I can.
24      THE COURT:  I know you are, but you can't be arguing
25  that they don't claim that they bought on the basis of the
            SOUTHERN DISTRICT REPORTERS, P.C.
                  (212) 805-0300

                                                          21
64Kbwaig            Oral Argument
1  registration statement.  Otherwise, you would be arguing that
2  it's barred.  If they haven't bought it at all, the claim just
3  wouldn't be here.
4      MR. KRAMER:  My argument is, number one, they never
5  bought the security, and I think that's a proper motion --
6      THE COURT:  That's a question of fact.
7      MR. KRAMER:  They don't allege in their complaint that
8  they bought it.  They never allege in their complaint and they
9  don't allege in the affidavit that they have to file with the
10  complaint, they have to allege every security purchase.  They
11  don't allege any zero coupon securities to have been purchased.
12  They just don't.  I do not think it's an issue of fact at all.
13  It's a failure --
14      THE COURT:  Why are you arguing statute of
15  limitations?
16      MR. KRAMER:  Excuse me?
17      THE COURT:  If there's no claim to be barred?
18      MR. KRAMER:  Well, your Honor, that was my first
19  argument.
20      THE COURT:  If I understand your argument, if you're
21  arguing that it's barred, it has to be on the subject of the
22  claim is asserted.  If you're saying there's no claim asserted,
23  then it's barred, but how can it be barred if it's not
24  asserted?
25      MR. KRAMER:  Let me try again because I haven't been
            SOUTHERN DISTRICT REPORTERS, P.C.
                  (212) 805-0300

                                                          22
64Kbwaig            Oral Argument
1  clear.
2      THE COURT:  No, you haven't been.
3      MR. KRAMER:  That's clear to me, but I'm going to try
4  again.
5      They purport to allege a Section 11 claim for the zero
6  coupon debentures in Count 2 of the complaint.  They never
7  allege that they bought those securities but they purport to
8  allege a claim based on those securities.
9      I think because they don't allege that they ever
10  bought those securities, the claim should be dismissed.  We can
11  argue that here.  We can argue that on the class motion.
12  That's all right.  They also don't argue it was ever damaged,
                        Page 11

64Kbwaiga (2).txt

13  but if those are not impediments for any reason, there's a
14  third reason why this claim can't go forward. There's a third
15  reason, and the third reason is nobody can bring it because
16  it's barred by the statute of limitations. They can't bring
17  it. Nobody can bring it. And the reason it's barred by the
18  statute of limitations is because there's a three-year statute
19  here, which they agree with -- correct, or three year,
20  absolutely, absolute three-year bar, it runs from when the
21  registration statement becomes effective, they allege in their
22  complaint in paragraph 206 that the registration statement
23  became effective on November 7, 2001, and the first time they
24  purport to bring a claim based on the zero coupon debentures is
25  April 19, 2005.

23

64Kbwaig                Oral Argument
1           THE COURT: Was there an earlier complaint?
2           MR. KRAMER: There was an earlier complaint. It's a
3  complaint that did not raise any claims with respect to
4  anything other than common stock. It's a complaint that does
5  not allege that the registration statement was fraudulent, and
6  again, in our briefs, we cite cases, the Adelphia case, the
7  Worldcom case, and others, for the proposition that the amended
8  complaint under Section 11 claim does not relate back to the
9  earlier filing if the earlier filing does not attack the
10  registration statement, and there's no case that plaintiff has
11  cited that's to the contrary. There's no case where a court
12  ever, for statute of limitations purposes, permitted relation
13  back of a Section 11 claim to the earlier claim.
14          And, your Honor, that's consistent with our view of
15  the world, obviously, that when you're dealing with these
16  securities, the issue, the transaction at issue, the relevant
17  transaction is the registration statement, and you have to be
18  able to allege that there's fraud in connection with that
19  registration statement. They can't do it here. They didn't do
20  it until April 2005, and so we believe Count 2 is barred for
21  that reason.
22          I'm going to move on, unless your Honor has questions.
23  These are the principal arguments that we've made with respect
24  to the claims.
25          THE COURT: I'll have plaintiffs respond.

24

64Kbwaig                Oral Argument
1           MR. KRAMER: Terrific.
2           THE COURT: Go ahead.
3           MR. LABATON: Mr. Dubbs will respond on the Section 11
4  claims, your Honor. Sorry?
5           THE COURT: You know what the arguments are.
6           MR. DUBBS: I think I do.
7           THE COURT: You state you haven't stated any loss.
8  That's the first issue.
9           MR. DUBBS: We allege damage at paragraphs 1101 and
10  1113.
11          THE COURT: You say it starts to redeem the full
12  value. How did you lose any money?
13          MR. DUBBS: The answer, let's deal with the standing
14  question. It will come as no surprise that we think the
15  Walecki decision is decided and we rely on it.
16          THE COURT: What is your understanding that's it's not
17  a standing question?

Page 12

64Kbwaiga (2).txt

18          MR. DUBBS:  It's for down the road.
19          THE COURT:  It's for down the road.  It's not for me.
20          MR. DUBBS:  They do not dispute that we bought one
21    bond.
22          THE COURT:  You have standing for the bonds you
23    bought?
24          MR. DUBBS:  Correct.
25          THE COURT:  Whether you have standing as to others is
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

                                                                    25
64Kbwaig              Oral Argument
1     another question.
2           MR. DUBBS:  We believe we have standing with respect
3     to the other Section 11 claims for the other bonds.
4           THE COURT:  Why?  Why do you have standing as to the
5     others?
6           MR. DUBBS:  Because if you have one Section 11 claim,
7     we believe since it's one course of conduct that we have
8     standing to represent other class members.
9           THE COURT:  You have representation but not to assert
10    the claims.
11          MR. DUBBS:  Well, the classes asserted the claim.
12          THE COURT:  To assert the claim on behalf of the
13    class.
14          MR. DUBBS:  To assert the claim on behalf of the class
15    is better put.  So we believe for representation purposes, we
16    have standing.
17          THE COURT:  He says you didn't lose any money on your
18    bonds.
19          MR. DUBBS:  We claim we lost money.
20          THE COURT:  How?  First of all, he says that you don't
21    allege that you lost any money.
22          MR. DUBBS:  We allege damage, number one, and if you
23    wants us to --
24          THE COURT:  You have to set it forth how you lost
25    money.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

                                                                    26
64Kbwaig              Oral Argument
1           MR. DUBBS:  We allege that the stock went down.
2           THE COURT:  You have to quote the loss position.
3           MR. DUBBS:  I understand that, your Honor, and the
4     Court can take judicial notice that the four and quarter bonds
5     declined from 99.75 to 94.625 on September 20, the zero coupons
6     declined from 70.55 to 65.28 on February 7, 2005, the .5
7     percent bonds declined from 95.5 to 91.78 on March 31; the
8     2.875 bonds declined from 99.25 to 99.71 on 10/25/04 and
9     declined two more times on March 4 and May 12 and the 2.85
10    bonds declined from 99.63 to 98.3.
11          THE COURT:  When you trade a bond in the market.
12          MR. DUBBS:  Yes.
13          THE COURT:  What you're really doing is trading on
14    what it's worth in effect to buy the company's promise to pay
15    back at sometime in the future with a face value of the bond.
16          MR. DUBBS:  Fair enough.
17          THE COURT:  The value of those bonds will vary from
18    time to time depending upon interest rates, whether or not
19    there's other investments out there, who knows what.  So what
20    you're saying is that you don't measure your loss by whether
21    the bonds are ultimately redeemed, but by whether or not the
22    stock, the bonds, were worth what you paid for them as opposed
                              Page 13

64Kbwaiga (2).txt

23  to what they were worth later.  The loss is not based upon the
24  fact that the bonds were not paid.  The loss is based upon the
25  impairment of the negotiability of the bonds in your possession
              SOUTHERN DISTRICT REPORTERS, P.C.
                    (212) 805-0300

                                                        27

    64Kbwaig            Oral Argument
1   when they became worthless than what you paid for them.  Is
2   that your theory?
3            MR. DUBBS:  That's essentially correct, and we have
4   two footnote points, number one, for people who sold their
5   bonds, they locked in their loss.
6            THE COURT:  The bonds are negotiable instruments like
7   anything else, right?
8            MR. DUBBS:  That's right.
9            THE COURT:  So they're being traded just like stocks
10  on the open market.
11           MR. DUBBS:  That's correct.
12           THE COURT:  And the value depends on interest rates
13  and the whole which really is not based upon whether the
14  company ultimately redeems it, but people don't wait around for
15  30 years for bonds to be redeemed.  You've figured it out.
16           MR. DUBBS:  The point is we allege damage, the market
17  did go down, lots of our class members sold and the fact that
18  they ultimately were redeemed is irrelevant because that goes
19  to the measure of damages.
20           THE COURT:  That goes to whether or not some of you
21  had losses, your losses were recouped.
22           MR. DUBBS:  That is correct, and that's a damages
23  question.
24           THE COURT:  Right.
25           MR. DUBBS:  That's not for today.
              SOUTHERN DISTRICT REPORTERS, P.C.
                    (212) 805-0300

                                                        28

    64Kbwaig            Oral Argument
1            THE COURT:  I think on a motion to dismiss, you've
2   done more than you have to.
3            MR. DUBBS:  Let's get back to the Section 11 issue
4   that he raised on the statute of limitations.  There's no
5   question that the complaint alleges --
6            THE COURT:  If you go back, if your case is going to
7   be stayed, it's going to be stayed on the basis of the pleading
8   in 2004, right?  2005 is clearly barred, right?
9            MR. DUBBS:  We say they were laid back.
10           THE COURT:  That's the only inequity, because I don't
11  see it.
12           MR. DUBBS:  First all, let's start with 15c2.  The
13  claim the defense asserted in the amended pleading arose out of
14  conduct, transaction or occurrence set forth or attempted to be
15  set forth in the original pleading.  And that's what we did.
16  And there are any number of cases that we cite in the brief
17  that stand for the proposition that when you have a Section 11
18  or Section 10b claim, it is timely, you can subsequently amend,
19  assuming there's no surprise, assuming there's no prejudice, to
20  add a Section 11 claim, and that's what we are trying to do
21  here.
22           THE COURT:  You say you had a Section 10b claim?
23           MR. DUBBS:  Based upon the underlying conduct, and the
24  underlying conduct is the same conduct which runs throughout
25  this entire case at that time which was the extensive bid
              SOUTHERN DISTRICT REPORTERS, P.C.
                    (212) 805-0300
                        Page 14

64Kbwaiga (2).txt

29

64Kbwaig                    Oral Argument
1   rigging, top side adjustments, and so on and so forth.  So the
2   conduct is the same.  The conduct was pled.
3              THE COURT:  The Section 11 claim, if anything, has a
4   lesser standing of proof.  So they were put on notice of the
5   higher fraud claim and therefore you say how they pled to the
6   claim, you amended to the lesser proof claim.
7              MR. DUBBS:  That's correct.  We think we fall squarely
8   within the conduct language of Rule 15.
9              THE COURT:  All right.  Anything else you want to tell
10  me?
11             MR. DUBBS:  I think that deals with all the ones that
12  he's raised so far.
13             THE COURT:  I'll listen to Mr. Greenberg's lawyer.
14             MR. KRAMER:  Your Honor, we are not raising arguments
15  that overlap with each other, Greenberg and AIG, and so I'm
16  presenting --
17             THE COURT:  Are they the same arguments?
18             MR. KRAMER:  He has additional arguments.
19             THE COURT:  I'll hear whatever this is today.
20             MR. KRAMER:  On Section 11?
21             THE COURT:  On whatever you want us to hear.  I just
22  think this is more orderly than it seems.
23             MR. KRAMER:  Okay.  I have more on the complaint, on
24  this complaint.
25             THE COURT:  You have more on this complaint?
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

30

64Kbwaig                    Oral Argument
1              MR. KRAMER:  Yes.  We just did the first five counts.
2   There are thirteen counts in the complaint, your Honor.
3              THE COURT:  Oh, I thought you were finished.
4              MR. KRAMER:  No, your Honor.  I may be and not know
5   it, but no, your Honor.  May I proceed?
6              THE COURT:  I guess you gave me your best arguments
7   first.
8              MR. KRAMER:  Your Honor, I give you the arguments that
9   are related to the first five claims, and I'll now go through
10  the rest of the things in the complaint, if I may.
11             THE COURT:  They don't get stronger as you go on?
12             MR. KRAMER:  I would hope so.  The only thing I point
13  out very briefly is that the numbers that he gave just now for
14  alleging there was a decline in the bonds, not in the
15  complaint, not in his memo of law.  The first time we're
16  hearing it is in open court.  We don't think that's sufficient.
17             THE COURT:  So you want to send it back to amend
18  again?
19             MR. KRAMER:  I don't know if that's correct or not
20  correct, your Honor.  I've had no opportunity to look at it.
21  What I do know is they should have pled it.  They didn't plead
22  it.
23             THE COURT:  They should have the opportunity to look
24  at it.
25             MR. KRAMER:  To address it.  I'll order the
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

31

64Kbwaig                    Oral Argument
1   transcript.
2              THE COURT:  I'm not one of those judges that follows
3   this business of pleading to the ultimate degree, you know.
                        Page 15

64Kbwaiga (2).txt

4   The claim puts you on fair notice of what the fraud is. That's
5   all I care about. I don't worry about anything else. It's
6   just a waste of time. It bogs you down. Well.
7                  MR. KRAMER: Well, I think the Court has heard our
8   arguments on these so I'm going to move to the other counts.
9                  THE COURT: This fraud has several aspects, right?
10  There's a manipulation claim.
11                 MR. KRAMER: I'm sorry? I didn't hear.
12                 THE COURT: There's a market manipulation claim.
13                 MR. KRAMER: I'm going to get to that one right now.
14                 THE COURT: There's a reinsurance claim.
15                 MR. KRAMER: Your Honor, I'm going to get to the
16  manipulation claim. I'll go to the end of the complaint and
17  then I'll go back to the middle at the end.
18                 The last five counts of the complaint, your Honor, the
19  last two are controlled persons, so they don't relate to my
20  clients. So we have Count 9, which is the market manipulation
21  claim that your Honor just mentioned, and then two conspiracy
22  counts, 10 and 11. So let me try and address those three right
23  now, and then I'll go to the middle part of the complaint.
24                 Our principal argument with respect to Count 9, Count
25  9 is the argument that Mr. Greenberg manipulated the price of
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

                                                                        32

64Kbwaig                      Oral Argument
1   AIG stock in connection with his communications with the New
2   York Stock Exchange floor specialist. And our principal
3   argument on that count is that plaintiffs have not pled the
4   element of loss causation with respect to that count.
5                  They don't allege that there is a disclosure of this
6   conduct that resulted in a drop in AIG stock price to prove
7   their loss, and that's precisely the type of proof required by
8   the Supreme Court in Dura, which came down last April.
9                  And, your Honor, the reason that they don't make that
10  allegation is because on October 3 when the manipulation
11  articles came out for the first time and those are in the
12  Shorrer affidavit at Exhibit Z and BB, on October 3 when those
13  articles came out, the price of AIG stock increased. So
14  they're not able to make a loss causation argument on Count 9.
15                 Instead, the argument that they make, your Honor, is
16  that they don't need to allege this element of a 10b claim for
17  market manipulation. We think that that is incorrect. If you
18  look at the Dura case, at 125 S. Court at 1633, the Court says
19  that "Plaintiff must prove that defendant's misrepresentation
20  or other fraudulent conduct proximately caused plaintiff's
21  economic loss."
22                 This is not one of those cases, your Honor, where
23  they're alleging conduct where it's impossible to try to allege
24  loss causation. There is an event, there is a date, a point in
25  time, when the news, the news reports about Greenberg's alleged
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

                                                                        33

64Kbwaig                      Oral Argument
1   conduct came out. There is an efficient market here for AIG
2   stock as they allege, and there is a stock price reaction. So
3   this is not one of those cases where it would be impossible to
4   look at how the stock reacts.
5                  THE COURT: I'll just follow the argument. Are you
6   saying no member of these classes bought the stock at an
7   inflated value?
8                  MR. KRAMER: What I'm saying is --
                              Page 16

64Kbwaiga (2).txt

```
 9                THE COURT:  Wait, wait, wait.  When did the
10   manipulation go on?
11                MR. KRAMER:  The argument is that the manipulation
12   occurred in advance of October 3, 2005, when the article came
13   out.
14                THE COURT:  But it's still in the class action period.
15                MR. KRAMER:  Correct.
16                THE COURT:  So it seems likely people that bought in
17   that period bought at prices that were artificially inflated.
18                MR. KRAMER:  They argue that.  However, Dura says you
19   have to do more.  It's not enough under Dura to simply allege
20   that the stock was artificially inflated.  That's exactly the
21   claim that Dura reversed.  You have to allege something else.
22                THE COURT:  If it's artificially inflated, it seems
23   logical to assume that you paid more for it than it was worth.
24   That is loss as far as I understand.
25                MR. KRAMER:  What Dura says is that that claim that's
                      SOUTHERN DISTRICT REPORTERS, P.C.
                               (212) 805-0300
```

34

64Kbwaig                Oral Argument

```
 1   artificially inflated, that allegation isn't enough to state a
 2   claim under 10b.  What Dura says is you must do more.
 3                THE COURT:  What more could you do?
 4                MR. KRAMER:  What you must do is allege that the
 5   disclosure of the alleged fraud caused the stock to drop.
 6   That's what you have to allege under Dura.  That's precisely
 7   what Dura holds.
 8                THE COURT:  You're talking about an honest profit, if
 9   you're talking about that.  What you're talking about is a
10   situation where if the market does not drop after the
11   disclosure, it's because the default in the value of the stock
12   is caused by some misrepresentation which has caused the stock
13   to be inflated, and, therefore, because of the disclosure, the
14   worth comes out of the stock, but if you have a market
15   manipulation scheme, it's somewhat different because the
16   inflation doesn't result from misrepresentation.  It results
17   from an artificial inflation of the prices of the stock, and,
18   therefore, the fact that it doesn't go down after they told you
19   that doesn't seem to make a lot of difference.
20                MR. KRAMER:  Your Honor, it's our position that Dura
21   holds the Supreme Court's --
22                THE COURT:  I do not think the Supreme Court was
23   focusing on this aspect of the manipulation case.  It's not a
24   misrepresentation case?
25                MR. KRAMER:  Yes, your Honor.
                      SOUTHERN DISTRICT REPORTERS, P.C.
                               (212) 805-0300
```

35

64Kbwaig                Oral Argument

```
 1                THE COURT:  Or a manipulation case?
 2                MR. KRAMER:  It was a misrepresentation.
 3                THE COURT:  I think Dura was about other fraudulent
 4   schemes in particular.
 5                MR. KRAMER:  Okay.
 6                THE COURT:  Because when you apply logic to that
 7   argument, it makes no sense.
 8                MR. KRAMER:  Here's why I think it's logical.  Because
 9   you do have a moment when the alleged fraud, whether it be
10   misrepresentation or manipulation, is disclosed, and if you
11   don't have an efficient market, if you don't have a market that
12   reacts to that, you can't have a presumption of reliance.  So
13   the whole notion of 10b is based on the notion that you have an
```

Page 17

                        64Kbwaiga (2).txt
14   efficient market, and AIG --
15           THE COURT:  Reliance is not a factor in a market
16   manipulation case.
17           MR. KRAMER:  Your Honor?  I'm sorry, I didn't hear
18   you.
19           THE COURT:  Reliance is not really a factor in a
20   market manipulation case.
21           MR. KRAMER:  Reliance is an element and loss causation
22   is an element.
23           THE COURT:  I think you people are so used to dealing
24   with false statements that you keep thinking in that box.  The
25   bottom line is if you artificially inflate the price of the
                     SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

                                                                    36
     64Kbwaig              Oral Argument
1    stock through manipulation, when you stop manipulating the
2    stock, it will go down, with or without a disclosure, but as of
3    the time you bought, the price is artificially increased over
4    its true value by the fact that somebody was pumping it up,
5    that's how you prove loss causation.  So that argument is not
6    persuasive.
7            MR. KRAMER:  I have nothing further on that argument.
8    We believe that Dura requires it.
9            THE COURT:  I don't think Dura was dealing with that.
10   That was a misrepresentation case, and I think the statement of
11   the language makes perfect sense in the context fact of the
12   misrepresentation case where it makes no sense in the context
13   of a manipulation case where disclosure is irrelevant.
14           MR. KRAMER:  Well, your Honor, the only reason I press
15   it besides believing Dura covers it, in this case, you do have
16   a moment when the alleged manipulation is disclosed to the
17   market.  It's unlike some other cases, perhaps, where you don't
18   have that moment.  In this case, you actually have it on
19   October 3.
20           THE COURT:  How long after it ceased?  You see,
21   because with manipulation, once you stop pumping it up, it's
22   like water, it's going to sink back to its natural level.  You
23   don't need disclosure.  All you need is to stop manipulating.
24   So it doesn't need mean much in terms of getting water out of
25   the stock.  You get the water out of the stock once you stop
                     SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

                                                                    37
     64Kbwaig              Oral Argument
1    manipulating it.
2            MR. KRAMER:  That's certainly plaintiff's argument.
3            THE COURT:  I got the argument.  I don't agree with
4    it.
5            MR. KRAMER:  I understand.  I'm going to move on to
6    Counts 10 and 11.
7            THE COURT:  I don't read Dura in that context.
8            MR. KRAMER:  Well, all right.  Let me move on to 10
9    and 11.  I see that I'm making no progress with the Court today
10   on this complaint, but I'll press on.
11           THE COURT:  That argument anyway.  I do not think you
12   have the easiest case to make here.  This is one of the most
13   massive frauds I've ever seen.
14           MR. KRAMER:  Well, your Honor.
15           THE COURT:  It's not quite the level of flooding, but
16   close.
17           MR. KRAMER:  I hope that that's not a view that the
18   Court continues to hold.
                              Page 18

64Kbwaiga (2).txt

```
19          THE COURT:  I'm not the finder of fact.  I worry about
20    the allegations in the complaint.
21          MR. KRAMER:  There are many allegations in this
22    complaint, but the fact is that AIG is a strong company.  The
23    stock price is at the levels --
24          THE COURT:  They may be a strong company.  Strong
25    companies commit fraud all the time.
```
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

                                                                    38
      64Kbwaig               Oral Argument
```
1          MR. KRAMER:  Well, it's our view that the allegations
2    in here are not in the same category.
3          THE COURT:  The reinsurance, if you want to get to it,
4    which is really the heart of this fraud.  It's awfully hard to
5    get around.
6          MR. KRAMER:  Well, your Honor, we're certainly going
7    to try.  Let me go to --
8          THE COURT:  You have people pleading the Fifth
9    amendment here.  You have people going to jail, pleading
10   guilty.  There's a lot here.
11         MR. KRAMER:  Your Honor, we do believe that each of
12   the elements of these causes of actions are important, and we
13   do think, seriously, though, we think that there are defects
14   in the pleading of many of these elements and that this case,
15   whatever it is, really ought to be restricted to what's
16   properly pled.  We don't think it's been properly pled.
17         THE COURT:  All 450 pages of it.
18         MR. KRAMER:  Word processing, your Honor.  Yeah, and
19   we think there's a lot in there that ought not to be in there.
20         THE COURT:  Mr. Labaton's getting tired in his old
21   age.
22         MR. KRAMER:  In any event --
23         THE COURT:  How old are you, by the way?  How old are
24   you now?
25         MR. LABATON:  Seventy-four, your Honor.
```
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

                                                                    39
      64Kbwaig               Oral Argument
```
1          THE COURT:  You're older than I am, which makes you
2    pretty old.  Go ahead.
3          MR. KRAMER:  Let me go to Counts 10 and 11 and see if
4    I can do a little better with the Court here.  These are pled
5    conspiracy claims and if you look at the complaints and we
6    think the words matter.  Paragraph 1167, these counts are only
7    six or seven paragraph counts.  The principal paragraph in 1167
8    is that Gen Re conspired with AIG to commit conspiracy fraud,
9    and in Count 11, the key paragraphs are 1174 and 1176, where
10   the complaint twice alleges that Union Excess and Richmond
11   engaged in a conspiracy, and, your Honor, under Central Bank,
12   under Dinsmore, under your Honor's holdings --
13         THE COURT:  Nobody's arguing that conspiracy and
14   aiding and abetting, you have to have a primary allegation.  I
15   do not think anybody's arguing that.
16         MR. KRAMER:  Right.  Your Honor, these counts are
17   conspiracy counts.  Now, they're not --
18         THE COURT:  The central argument is these people like
19   reassurance are properly violated.  They are active
20   participants in the scheme.
21         MR. KRAMER:  I think they're attempting to allege that
22   in other counts in the complaint and this is piling on by
23   including conspiracy counts.  It's my view that if the Court
```
                              Page 19

64Kbwaiga (2).txt
24  were to get rid of Counts 10 and 11 which allege conspiracy,
25  because every one of the counts reallege everything that comes
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

40

64Kbwaig                    Oral Argument
1   before it.  There other 10b counts in the middle of the
2   complaint that I'll get to that address just that.  We have a
3   case from Judge Pollock where he essentially says redundant
4   pleading shouldn't be permitted.  Here, it's worse than
5   redundant pleading.  It's pleading that attempts to allege a
6   conspiracy for whatever reason.  It's not appropriate.  We will
7   get to the middle counts of the complaint, the 10b counts, it's
8   based on exactly the same conduct, 10 and 11.
9           THE COURT:  What are you saying should be done?
10          MR. KRAMER:  In other words, your Honor, there are two
11  ways to view these counts.  If you take seriously the words
12  that they use, which I do, these are conspiracy counts, and
13  they're not appropriate.  In Dinsmore, the Second Circuit said
14  there is no cause of action under the federal securities laws
15  for conspiracy, and your Honor's cases --
16          THE COURT:  You can have two people agree to rob a
17  bank, that would be conspiracy, but they're also principal
18  violators, clearly.
19          MR. KRAMER:  But they've attempted to allege in
20  Counts --
21          THE COURT:  The two are not mutually exclusive.  The
22  only difference between conspiracy and, say, joint
23  participation is with a conspiracy you could be liable even if
24  you just agreed.  You don't have to be a joint -- in other
25  words, your culpability level need not be the same.
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

41

64Kbwaig                    Oral Argument
1           MR. KRAMER:  Right.
2           THE COURT:  But when you have aiding and abetting in a
3   criminal case, if you had two people equally culpable, then
4   neither one is an aider and abettor.  They're both principals.
5   So aiding and abetting presupposes a lesser degree of
6   culpability and so does conspiracy than being a joint violator.
7           So when you talk about the meaning of liability for
8   aiding and abetting in the criminal context, which is where
9   these concepts arise, the government has to elect in the
10  criminal case whether that is going to presume the theory of
11  aiding and abetting or not, and they're going to have to tell
12  who they claim to be the principal and which they claim to be
13  the aider and abettor.  If they claim to be both principals,
14  neither one is an aider and abettor.
15          So they are not mutually exclusive.  You can't be a
16  principal and an aider and abettor at the same time.  It's
17  either one or the other, and then the conspiracy, you don't
18  even have to just agree and do something in furtherance of the
19  conspiracy.
20          What they're alleging here is a degree of culpability
21  that's equal.  You have double insurance and -- both are
22  coequal in this scheme to create this illusion of reinsurance
23  which really does not exist, a sham insurance.  That's not
24  aiding and abetting.  That's a primary violation.
25          MR. KRAMER:  But, your Honor, they tried to plead it
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

42

64Kbwaiga (2).txt
64Kbwaig          Oral Argument
1    two times.  They tried to plead it the way your Honor suggests
2    earlier in the complaint.  We will get there in Count 8, but
3    they try to plead it a second time with a conspiracy.
4         THE COURT:  They plead it as a conspiracy.  This is
5    not going to go to a jury.  Is it going to go to a jury?
6         MR. KRAMER:  I certainly hope not.  We're certainly
7    going -- we think it's appropriate, your Honor --
8         THE COURT:  If I deny your motion, in theory, General
9    insurance and these other people in this case, including
10   Pricewaterhouse, when we get to them, is a primary violator.
11   That's the only thing that they can be guilty of is their own
12   violation.
13        MR. KRAMER:  Correct, your Honor, and there are
14   counsel in this courtroom who are prepared to argue that the
15   complaint does not adequately plead primary liability as to
16   their clients, and that's fine.  My only point for AIG is that
17   10 and 11 are defective.  They're conspiracy counts.  They're
18   redundant of other counts.  They should not be in this
19   complaint, and we would ask the Court to dismiss them on that
20   ground.
21        THE COURT:  All right.
22        MR. KRAMER:  So let me go to the --
23        THE COURT:  I'm not going to bother with the
24   conspiracy allegations because whether it's redundant or not is
25   kind of silly.  It doesn't make any difference to the structure
             SOUTHERN DISTRICT REPORTERS, P.C.
                    (212) 805-0300
                                                            43
64Kbwaig          Oral Argument
1    of the case.
2         MR. KRAMER:  The conspiracy count is not appropriate.
3    In Dinsmore, your case, is simply not a viable, appropriate
4    count.
5         THE COURT:  So what the point of your argument?
6         MR. KRAMER:  It should be dismissed.
7         THE COURT:  I do not think we will dismiss it.
8    There's no practical value in dismissing it.
9         MR. KRAMER:  We are about to engage --
10        THE COURT:  It's appropriate instructions to the jury
11   at the time of trial.
12        MR. KRAMER:  I guess part of what I'm trying to do
13   here is make sure that to the extent any of this goes further
14   beyond here, we can at least have it happen appropriately
15   because there's going to be a lot of inefficiency.
16        THE COURT:  There's not going to be any inefficiency.
17   You keep talking about inefficiency.  You're going to depose
18   Greenberg and other people and they're going to tell you what
19   they did.  And what they did is going to establish or not
20   establish what they allege in the complaint.  If they don't
21   establish that they properly violated, I'll throw them out, but
22   we're not at that stage yet, you know.  I don't have a factual
23   nature in which to resolve the arguments.  When they do, some
24   of them may be part of summary judgment.  I do not think
25   Greenberg is going to be in that category.
             SOUTHERN DISTRICT REPORTERS, P.C.
                    (212) 805-0300
                                                            44
64Kbwaig          Oral Argument
1         MR. KRAMER:  Well, that may be, and Greenberg's lawyer
2    is here to address that.  The only point I'm trying to make is
3    that we don't believe it's even been properly pled, and that's
4    why we're trying to get this out.
                      Page 21

64Kbwaiga (2).txt

```
 5          THE COURT:  I think sometimes lawyers approach the
 6    statute a little too hard.
 7          MR. KRAMER:  Well, then let me go to the last three
 8    counts of the complaint.
 9          THE COURT:  Some judges pay more attention to that
10    than I do.  You can count on the fingers of your hands the
11    number of complaints I dismissed for being inadequately
12    pleaded.
13          MR. KRAMER:  The other point about the complaint is
14    it's so overbroad and so rambling that what I was hoping is
15    that I could get it reduced sufficiently so we're not
16    constantly fighting over things that really ought not to be
17    there to begin with.
18          THE COURT:  Like what?
19          MR. KRAMER:  Well, to go back, I do not think the
20    Section 11 claims are properly in there because of standing and
21    damages.
22          THE COURT:  The same proof is going to sustain both.
23          MR. KRAMER:  It makes a big difference if the Section
24    11 claims aren't there.  I do not think the Section 11 claims
25    are properly pled.  So it's our view that they shouldn't be in
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

45

64Kbwaig            Oral Argument
```
 1    the complaint and the conspiracy claims we think are wrong.
 2    I've made my pitch to your Honor on the market manipulation.
 3          THE COURT:  The trouble with Congress is they keep --
 4    first of all, Congress is in violation of separation of powers
 5    anyway.  Who is the Congress to tell us whether we should or
 6    should not dismiss complaints.  I think that's a gross
 7    violation, but probably at the same level as the Sentencing
 8    Guidelines but the bottom line is, we don't want to be back to
 9    the time of the law where we get back to, what is it, Bleak
10    House, where if you leave a comma off, you have to start all
11    over again, you get another complaint and another.
12          But what I'm saying to you is that it doesn't get the
13    case resolved as it has to be under the rules in the most cost
14    efficient way.  My job is to see to it that they have a
15    pleading of sufficient fraud to get to discovery and to get to
16    a motion for summary judgment and to a trial, and I think there
17    is no question they've done that.  Even if a few of them could
18    be argued or cut out, if I cut them out it can't be appealed
19    anyway, so what's the point of cutting them out?  I'll cut them
20    out at the end of the case
21          MR. KRAMER:  I guess this is sort of where I'm coming
22    at it from a different point of view.
23          THE COURT:  I know all lawyers have a different point
24    of view.  It's a great opportunity to try their case at the
25    pleading stage and I don't let you do that.
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

46

64Kbwaig            Oral Argument
```
 1          MR. KRAMER:  I just don't think they've actually pled
 2    the elements, but let me --
 3          THE COURT:  Oh, they have pleaded a fraud.
 4          MR. KRAMER:  But what they've done, your Honor, is
 5    they've taken that pleading and multiplied it by 20, and the
 6    point I'm trying to get at is to cabin it back in because they
 7    shouldn't put in a 500-page complaint that's
 8    loaded it up with all sorts of irrelevancies because I think it
 9    would make it inefficient going forward.
```

Page 22

64Kbwaiga (2).txt

```
10          THE COURT:  By their own admission, some of it is
11   there as a factual basis for which they can infer scienter or
12   some of the other elements.  They're not violations as such.
13          MR. KRAMER:  Correct.  I'm going to get to that now
14   with these arguments to try to limit it down.
15          THE COURT:  The problem, I'll tell you what the real
16   problem is.  It was it was designed to see to it that lawyers
17   do not bring frivolous lawsuits and put defendants in the
18   course of discovery based upon the filing of a complaint that
19   could force some of these tactics, but once a fraud is pleaded,
20   once there is a complaint which adequately pleads a fraud, then
21   I think the purposes has been served.
22          My job as a gatekeeper is to be sure that the
23   complaint is of such a nature as to why go further with
24   discovery and that it is not a frivolous case.  That's what
25   this is all about.  It wasn't designed to make us sit here and
```

47

64Kbwaig                      Oral Argument
```
1   make us go through every complaint with a fine toothed comb to
2   see whether or not it complies with the technical rules.  It's
3   wasteful.
4          MR. KRAMER:  Well, I understand the Court's view on
5   this.
6          THE COURT:  That's what this is about.  That's all I'm
7   saying.  And that's all I'm saying.
8          MR. KRAMER:  I think they tried to plead three or four
9   cases.
10         THE COURT:  We have a 450-page complaint here.  If it
11   was shorter, you'd come in and say you didn't plead enough
12   detail.
13         MR. KRAMER:  Your Honor, I have not made an IB
14   argument, but I have tried to point out because 450 pages, I
15   haven't done that, but I have tried to point out where I think
16   it is deficient.
17         THE COURT:  This is not only complaint.  I think
18   what's happening with the statute, people are now so worried
19   about the defense counsel coming in and saying they pleaded
20   inconclusory and there are enough decisions to say you should
21   have pleaded with more specificity.  Now they try to put in the
22   kitchen sink.  They're not required to do.  But you say they
23   have to, and I just think in a way it's an unfortunate
24   development because the courts always have the power to leave
25   those.
```

48

64Kbwaig                      Oral Argument
```
1          MR. KRAMER:  That's right, but the length, I think,
2   doesn't make up for the fact that there is no conspiracy as a
3   matter of law.
4          THE COURT:  I know that.
5          MR. KRAMER:  And the standing.
6          THE COURT:  They're alleging a conspiracy.  Don't
7   worry about it.  Whether I stuck with the allegations or not,
8   when this case goes to the jury, it does not go to the jury on
9   conspiracy issues.
10         MR. KRAMER:  I do worry about it.
11         THE COURT:  There's no filing an appeal until the case
12   is tried.  And my reversal record will be what it is as
13   everybody knows what it is.  You don't have to fear when it
14   comes to the reviewable stage of this case.  This is all not
```
                              Page 23

64Kbwaiga (2).txt

15  reviewable at this stage, and if I cut out claims now that the
16  Court of Appeals thinks I should have left in, then I'm back
17  trying the case again.  I don't want to do that.
18          MR. KRAMER:  Your Honor, I think these arguments are
19  ones that we can be comfortable with, that are not going to get
20  reversed, but I've made them.  Let me address, if I may --
21          THE COURT:  Unfortunately, your confidence is not
22  shared with me.  I am convinced if I dismiss this complaint,
23  even a material portion thereof, the Second Circuit would send
24  it back to me.  Maybe by fax.
25          MR. KRAMER:  I don't know, your Honor, but okay.  Let
                 SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

                                                              49
64Kbwaig              Oral Argument
1   me address the last three counts.
2           THE COURT:  I've been reversed five times in 25 years.
3   That tells you something.  There's a reason for that.
4           MR. KRAMER:  Well, I'm hoping we can make a little bit
5   of headway here.  We have three claims left.
6           Count 8 is their sort of overall 10b claim.  It's the
7   claim that I think your Honor is thinking of when, based on
8   your comments, this claim could have been frankly, this one
9   claim, it could have been 25 pages.
10          THE COURT:  Then you would have said it was too
11  inconclusive.
12          MR. KRAMER:  I would never do that.
13          THE COURT:  Of course you would.
14          MR. KRAMER:  Let me focus on this last one.
15          THE COURT:  You're a lawyer, too.  Ask Mr. Labaton.
16          MR. KRAMER:  There are three arguments that I want to
17  make with respect to these three claims.
18          The first is loss causation, and here we're not
19  dealing with manipulation claims.  These are misstatement and
20  omissions claims, covered by Dura, where, in fact, merely
21  alleging an inflation in the stock is not enough.  You have to
22  allege a disclosure of the alleged fraud, which results in a
23  decline in the --
24          THE COURT:  There was a whole series of disclosures.
25          MR. KRAMER:  That's exactly what I want to move to
                 SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

                                                              50
64Kbwaig              Oral Argument
1   now.  And paragraph 757 lists out the ten disclosures that they
2   say this case is based on, and in our view, in fact, they have
3   not pled loss causation as to these two.
4           As your Honor mentioned before, you noted that the
5   plaintiffs had made the admission, page 29 of their brief, that
6   the Brightpoint and PNC transactions are not ones in which
7   they're seeking to move forward on a claim.  They do that for a
8   number of reasons.  Since they conceded it, I won't get into
9   why I agree with it, but because it's not a basis for their
10  claim, the disclosures relating to PNC and Brightpoint, which
11  are the first two here, can't be a basis for their loss.
12          THE COURT:  They claim they are.
13          MR. KRAMER:  In 757 they are, your Honor, in paragraph
14  757 they are, and it's inconsistent with their admission, but I
15  hope now based on their admission, they will go back and agree
16  that these first two events simply are not lost causation
17  events as to which they can seek recovery.
18          THE COURT:  It's a claim that can't be based on
19  damages.
                         Page 24