64Kbwaiga (2).txt
24      signatories to the Hague Convention, the Burta opinion from the
25      Second Circuit and indeed some Supreme Court cases say when
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

103

        64Kbwaig                Oral Argument
1       both nations are signatory to the convention, the convention
2       must be followed.  That's a treaty, the preeminent law of the
3       land trumps other provisions of Rule 4.  So because Bermuda and
4       the United States are signatories, the requirements of the
5       Convention as ratified by Bermuda must be followed.
6               THE COURT:  If the Hague Convention is ineffective to
7       retain jurisdiction because your client is evading service, I
8       would imagine I could provide an alternative for service.
9               MR. ANDREWS:  That might be true, your Honor, but
10      there's no allegation he's evading service.  He lives in
11      Bermuda.  He works in Bermuda.  He has for 30 years.  The
12      Florida Board plaintiffs found him through a private processor.
13      All they're required to do, your Honor, is to make the request
14      to the central authority in Bermuda and have the central
15      authority serve Mr. Murphy personally.
16              what happened is the central authority in the
17      securities plaintiffs' case sent out either a bailiff or a
18      process service, it's difficult to tell.  Her name is Donna
19      Millington.  She went to Mr. Murphy's home when he was at work
20      and handed it to his wife and deemed that sufficient.  That's
21      not sufficient under Bermuda law.
22              THE COURT:  That's not in accordance with the Hague
23      Convention at all.
24              MR. ANDREWS:  Correct, it was not.
25              THE COURT:  what do you have to say about that?
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

104

        64Kbwaig                Oral Argument
1               MR. BOTTLIEB:  Your Honor, We served three times in
2       Bermuda, and each time, Mrs. Murphy received the service and
3       each time, the central authority has written to us and said
4       that the foreign service on Mr.~Murphy -- Mr.~Murphy -- was
5       completed "in the usual manner."
6               In addition to that, we have --
7               THE COURT:  I don't know what that means, in the usual
8       manner.
9               MR. BOTTLIEB:  Well, the court system in Bermuda,
10      unlike counsel for Mr.~Murphy, thinks that they served
11      Mr. Murphy in a proper way pursuant to Bermuda law, but we've
12      gone further than that.  We've also sent a copy of the
13      complaint to Mr.~Murphy by registered mail, and we don't want
14      there to be any problems down the line.  Some day we may have
15      to collect a judgment against Mr.~Murphy in Bermuda.  We intend
16      to go forward and serve him personally, and we will do that.
17      We have already completed what we have to do, but --
18              THE COURT:  The motion's immature at this point.
19              MR. BOTTLIEB:  Well, I believe that we have complied
20      with Hague.  So I think the motion should be denied, but, in
21      any case, we are going to go further.
22              THE COURT:  All right, but that's at least being done.
23      What do you want me to do?
24              MR. BOTTLIEB:  I would like you to deny the motion
25      because we have --
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

105

Page 49

64Kbwaiga (2).txt
64Kbwaig                    Oral Argument
1        THE COURT:  If I deny the motion, then you're going to
2   serve him again.  It's just academic, isn't it?  We can't deny
3   the motion without a hearing.  We have to have a hearing.
4        MR. BOTTLIEB:  And a question of keeping it more
5   efficient, rather than having a full hearing on that, we will
6   proceed to serve him further.
7        THE COURT:  Why don't I reserve on the motion.
8        MR. BOTTLIEB:  That would be fine.  Your Honor, I
9   wanted to add one more thing that Mr.~Murphy is also involved
10  in another suit in federal courts in New York.
11       THE COURT:  But that doesn't help me.
12       MR. BOTTLIEB:  It does because Mr. Murphy is going to
13  be deposed here in New York.
14       THE COURT:  You can't serve him if he comes here for a
15  deposition.
16       MR. BOTTLIEB:  He tried to evade coming to New York so
17  he couldn't be served when he comes to New York.
18       THE COURT:  He can't be served under New York law.
19  He's here to attend court.  I imagine a deposition is the same
20  thing.
21       MR. BOTTLIEB:  It states over here that Mr.~Murphy
22  sought reconsideration of the court's ruling saying you have to
23  come to New York on the grounds that "in light of on-going
24  investigations and proceedings relating to a variety of
25  activities at AIG, he was reluctant to come to New York" and
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
                                                                106

64Kbwaig                    Oral Argument
1   Judge Hollinger replied that he had to come to New York and
2   says it appears that Mr.~Murphy prefers not come here in
3   order to avoid service of process in connection with
4   investigation of possible wrongdoing.
5        THE COURT:  Doesn't New York law forbid service while
6   you're attending court?
7        MR. BOTTLIEB:  I don't know of any law that says we
8   can't serve him when he comes to New York to be deposed.
9        THE COURT:  I think the New York law forbids that.
10       MR. BOTTLIEB:  We will be happy to look into that,
11  your Honor.
12       MR. ANDREWS:  Your Honor, I believe that's a
13  misleading statement.  In any event, he's not party to that
14  lawsuit in New York, and the point is he's a resident of
15  Bermuda.
16       THE COURT:  If he's here to be served.
17       MR. ANDREWS:  I'm speaking only of whether counsel is
18  suggesting that Mr. Murphy's attempting to evade service.
19       THE COURT:  I'm not sure you can if he's here pursuant
20  to court direction for taking a deposition.
21       MR. ANDREWS:  I believe you're right about that, your
22  Honor.  I'm suggesting that Mr.~Murphy is not trying to evade
23  service merely because he would rather not appear in a case in
24  which he's not a party.  He's a resident in Bermuda and the Doe
25  and the Rhodes cases cited in our papers discuss the fact a
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
                                                                107

64Kbwaig                    Oral Argument
1   resident of Bermuda or any other country is entitled to insist
2   on service in the country in which he resides.  That's all Mr.
3   Murphy is doing.  The Florida Board plaintiffs found him at his
4   office and served him by hand.  The problem with their service
                            Page 50

64Kbwaiga (2).txt

5   was it was a private process server instead of utilizing the
6   Hague Convention.  There can't be any serious suggestion that
7   Mr. Murphy is evading service in Bermuda, and I would submit,
8   if they're making a representation, they will attempt to serve
9   him properly.
10          THE COURT:  I'm going to reserve on your motion until
11  such time and I give you 120 days to effect service again.  All
12  right.
13          MR. ANDREWS:  Thank you, your Honor.
14          THE COURT:  Yes.  Wendy Zoberman on behalf of the
15  Florida Board.
16          MS. ZOBERMAN:  Can I respond to Mr.~Murphy's counsel's
17  statement as to the Florida Board service on Mr. Murphy?
18          THE COURT:  I'll let you respond.  You served through
19  the Hague?
20          MS. ZOBERMAN:  They said we didn't.  We say we did,
21  your Honor.
22          THE COURT:  You didn't serve him personally?
23          MS. ZOBERMAN:  No, no, no.  We actually did serve him
24  personally.
25          MR. ANDREWS:  Your Honor, I don't know if the
                     SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

108

64Kbwaig                Oral Argument
1   securities plaintiffs attempted to go through the Hague
2   Convention, but did not achieve personal service.  The Florida
3   Board plaintiffs are the mirror image.  We are also moving
4   there, your Honor, because they ignored the Hague convention
5   and instead hired a private processor.
6           THE COURT:  They did not go through the Hague
7   Convention?
8           MR. ANDREWS:  Correct.
9           MS. ZOBERMAN:  Actually, your Honor, we did go through
10  the Hague Convention.  Under Article 10 of the Hague
11  Convention, we can serve process an interested party.
12          THE COURT:  They objected.
13          MS. ZOBERMAN:  The only problem with their objection,
14  the very argument that the United Kingdom has rejected by
15  reservation has been rejected by every court in the United
16  States.
17          THE COURT:  This no longer applies to the United
18  Kingdom.
19          MS. ZOBERMAN:  The United Kingdom reservation applies
20  to all British territories, including Bermuda.
21          THE COURT:  Bermuda is their territory.
22          MS. ZOBERMAN:  Yes, your Honor, but their
23  interpretation of the reservation saying it's an absolute
24  rejection of Article 10 which would provide for personal
25  service has been rejected by every court in the United States,
                     SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

109

64Kbwaig                Oral Argument
1   state and federal, for the last 20 years, and we've cited
2   numerous cases including the IM Partners case in the District
3   of Connecticut which is at 394 F Supp 2d 503, which states
4   American courts have consistently interpreted this declaration
5   not as a categorically objection to Article 10 but only as an
6   objection regarding documents sent for service through official
7   channels.
8           So there are a number of ways to serve a defendant,
9   and one is through the central authority.  Another way is an
                              Page 51

64Kbwaiga (2).txt

10  alternative means through a private processor. We also cite in
11  a report from the Hague Convention committee that in turn cites
12  a letter from the United Kingdom dated September 11, 1980, that
13  makes it clear, United Kingdom wanted to make it clear that in
14  no way was there a reservation to prevent you from serving
15  personally from a solicitor in the United Kingdom. We cite not
16  only IM Partners which in turn cites other cases. I could name
17  them for your Honor, but there are cases dating back to 1985
18  that say you can serve by personal process server or a
19  solicitor and we cite the Kohler case in the Fourth Circuit,
20  1983
21           THE COURT: I have to look at these cases. What do
22  you have to say about that?
23           MR. ANDREWS: The only point I'd like to make, your
24  Honor, is I don't mean to suggest that Bermuda has
25  categorically objected to Article 10, 10b and 10c. The cases
                    SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

110

64Kbwaig                Oral Argument
1   that counsel cites are instructive. The IM Partners case, the
2   service was through a coroner on the Isle of Man. The Super
3   Medical Corp. and the Tax Leeds Underwriter cases were
4   solicitors from the United Kingdom, and the objection that's
5   lodged to Article 10b and 10c, is that with reference to the
6   provisions of paragraph B and C of Article 10 of the
7   convention, documents sent for service through official
8   channels will be accepted in a territory listed in the annex,
9   which includes Bermuda, by a designated authority and only
10  through judicial counselors or diplomatic officers of other
11  contracting states.
12           So the fact that those states have talked of service
13  by solicitors or by coroners, they are deemed part of that
14  official process that a private process server is not --
15           THE COURT: This is all very interesting. I'll look
16  at it.
17           MR. ANDREWS: The only point I'd like to make because
18  they cited Kohler in opposition and we did not address in our
19  opening papers is in the Kohler case, the Fourth Circuit
20  misreads that reservation. I think you'll see this when you
21  read the opinion.
22           The problem with the Fourth Circuit's opinion is if it
23  were proper to serve by a private process server in Bermuda,
24  the Fourth Circuit's reading of Kohler says that 10b and C, the
25  objections is only related to service through an official
                    SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

111

64Kbwaig                Oral Argument
1   process. So any other process is fine, but when you look at
2   the objection, the objection is to B and C, and C only relates
3   to the freedom of any person interested in a judicial
4   proceeding to allow service.
5           So the Fourth Circuit's reading makes it impossible to
6   reconcile the objection that Bermuda made with 10c itself. In
7   other words, Bermuda objected and said if you're going to use
8   10b or 10c you must go through official channels, not a private
9   process server. The Fourth Circuit's opinion ignores the fact
10  that the objection that Bermuda made applies to 10c as well as
11  10b, and 10c contemplates a private processor. It has to be an
12  objection to a private processor under 10c or the objection
13  doesn't make any sense. You'll see this when we brief the
14  case, your Honor.
                          Page 52

64Kbwaiga (2).txt

```
15        MS. ZOBERMAN:  I can just quote their own expert?
16   They put in an affidavit from the Bermuda lawyer, by the way,
17   the Kohler case says the private process in Bermuda, that it
18   dealt with a private processor in Bermuda under the Hague
19   Convention. Their expert, Mr. Martin, says, Service under the
20   Hague Convention is valid in Bermuda if the foreign party
21   complies with the requirements of Bermuda law.  This is true
22   whether a foreign party attempts service through the central
23   authority in Bermuda, through the registrar of the Supreme
24   Court or simply service through a private service processor
25   pursuant to Bermuda law.
```

112

64Kbwaig                Oral Argument

```
1        THE COURT:  Private process, or it has to be private
2   counsel.
3        MS. ZOBERMAN:  Right.
4        MR. ANDREWS:  If I could say, it will be the last
5   thing on this.  I actually worked with Mr. Martin, the Bermuda
6   lawyer, on this.  The point of his affidavit was to show that
7   service in the Hague, service in Bermuda --
8        THE COURT:  We spent much more time on this motion
9   than it's actually worth.
10        MS. ZOBERMAN:  Since we have the motion pending, can
11   we have the 120 days to serve Mr. Murphy?
12        THE COURT:  I'll give you another 120 days, but I'll
13   suggest to you the practical solution which is if I ruled in
14   your favor on jurisdiction and the Second Circuit disagrees,
15   you'll have wasted a lot of time.
16        MS. ZOBERMAN:  The Second Circuit already agreed with
17   your Honor.
18        THE COURT:  I don't know that they have, not in this
19   case.  The Second Circuit case, was that service by a private
20   person?
21        MS. ZOBERMAN:  It said defects of service under the
22   Hague Convention is not a fatally defective service.
23        THE COURT:  That doesn't help me.  That's not a clear
24   holding one way or the other.  I'm saying if you try this case
25   under a jurisdictional cloud, you'll be trying it under a
```

113

64Kbwaig                Oral Argument

```
1   jurisdictional cloud, and if you get a verdict, it may be
2   reversed on the ground that I didn't have jurisdiction.
3        So it seems to me that you should not make too fine an
4   argument about whether the service is good, bad or indifferent.
5   If you continue in a way you both agree it's effective, that
6   way you don't have a problem later on in the case or try to
7   enforce the service in Bermuda.  That's all I'm trying to say.
8   It's impractical.  I could rule on it.  However I rule on it, I
9   could be wrong.  All right?
10        MR. ANDREWS:  Thank you, your Honor.
11        THE COURT:  Who's next?
12        MR. RAFFERTY:  Tom Rafferty again on behalf of
13   PriceWaterhouseCooper.
14        THE COURT:  Are you the last one?
15        MR. RAFFERTY:  I think I am.  There may be one other.
16        MR. KOLLEENY:  Your Honor, I'll be speaking briefly
17   for CV Starr and Starr International.
18        THE COURT:  All right.
19        MR. RAFFERTY:  I'm not going to go over a lot of the
```

64Kbwaiga (2).txt
```
20   ground that's been covered, but several times during other
21   people's presentations, your Honor stated you didn't believe in
22·  the Bleak House methodology of pleading.
23           THE COURT:  I don't.
24           MR. RAFFERTY:  And I take that point, your Honor, but
25   I do think what the plaintiffs have tried to do here with
```
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

                                                              114

64Kbwaig                  Oral Argument
```
 1   respect to Pricewaterhouse --
 2           THE COURT:  You don't raise any argument based on
 3   aiding and abetting and coconspiracy.
 4           MR. RAFFERTY:  No.  They have alleged that --
 5           THE COURT:  You probably could have, but you didn't.
 6           MR. RAFFERTY:  They allege that we're a primary
 7   violator, that we made statements, that the statements were
 8   false, that we acted with scienter.
 9           Our principal argument, your Honor, is that
10   notwithstanding the fact that Your Honor mentioned before this
11   complaint is an enormous piece of work and they did a lot of
12   struggling to get it all in one package, throwing the kitchen
13   sink in.
14           There is no allegation in that complaint of direct
15   evidence of scienter.  What they're asking you to do is infer
16   from a series of red flags that the auditors here out to be
17   taken from a situation where maybe they got a negligence claim,
18   maybe, and that's what I was about to say about Bleak House,
19   your Honor, is the other side of the Bleak House spectrum is
20   where you so disregard the notions of pleading that you simple
21   say just throw it out there and it will suffice.
22           THE COURT:  No, I'm not suggesting that.  But they say
23   you have a long history with this company, you're really
24   familiar with the company's financial records, and, therefore,
25   your auditor has the context of·that history.
```
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

                                                              115

64Kbwaig                  Oral Argument
```
 1           MR. RAFFERTY:  And, your Honor, I think they're right
 2   about that.  I think they're right about several things.  When
 3   they're asking you to draw inferences based on red flags,
 4   they're entitled to have you look at the totality of the
 5   circumstances they lay out in the complaint.  I'm not going to
 6   fight that.
 7           What I am going to tell you, though, this is a
 8   remarkable complaint to bring a securities complaint against
 9   Pricewaterhouse because sprinkled throughout the complaint they
10   quote liberally from the 2005 10K of the company.  It's
11   throughout the complaint and throughout those quotations they
12   say that this was a scheme by top management who hid it·not
13   only from their own internal auditors and from, in some
14   instances, their lawyers but also hid it from the outside
15   certified accountants.  It's throughout the complaint, your
16   Honor. ·I can point you to a half a dozen or a dozen
17   paragraphs.
18           Mr. Dubbs last night sent us some charts that he said·
19   he was going to use and one of them was labeled AIG restatement
20   admits scienter.  The chart that Mr. Dubbs sent over is in here
21   somewhere, but the chart provided a piece from the 10K and it
22   says AIG's former chief executive officer and former chief
23   financial officer effected transactions that appear to have
24   been largely motivated to achieve desired accounting results
```
                                Page 54

64Kbwaiga (2).txt

```
25        and were not properly accounted for in accordance with GAAP.
                      SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```

```
          64Kbwaig          Oral Argument
1              If you read the next sentence in the paragraph from
2         their complaint, this isn't from my motion, it's from their
3         compliant, the next sentence says, In certain of these
4         instances such transactions and accounting entries appear to
5         have been largely motivated -- that's the part I just read.
6         Further in certain of these instances information critical to
7         an effective review of transactions, accounting entries and
8         certain entities used in these transactions were not disclosed
9         to the appropriate financial and accounting personnel,
10        regulators and AIG's independent registered public accounting
11        firm.
12             What's the consequence of that as alleged in paragraph
13        600 of the complaint? The consequence was as a result,
14        discussion and thorough legal, accounting, actuarial or other
15        professional analysis did not occur. This control deficiency
16        is based primarily on the overrides, and the overrides they're
17        talking about was part of the restatement said looking back, in
18        hindsight, in 2005, it appears that certain people at the top
19        of this company had the ability to override the accounting
20        controls and to record transactions in a way that was not in
21        accordance with GAAP, and I wanted to take just a second, your
22        Honor, a couple of weeks ago I was talking to --
23             THE COURT: Do they use the overrides?
24             MR. RAFFERTY: They did. The overrides are -- exactly
25        what happened here, they would go in and they would record the
                      SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```

```
          64Kbwaig          Oral Argument
1         transactions. They would not disclose the actual nature. Your
2         Honor spent some time talking about the sham nature of the
3         transactions. One of the red flags that the plaintiffs point
4         to is a red flag involving investigations of a company called
5         Brightpoint, and, again, you don't have to take my word for it.
6         This is from the complaint.
7              When they talk about the Brightpoint transaction in
8         their complaint, what they say is that the AIG personnel
9         designed these deals so as to eliminate or to minimize the
10        accounting red flags that these transactions might otherwise
11        have waved to an auditor.
12             There was a conscious decision, if you believe the
13        complaint, and at this stage, I take your Honor's point, we're
14        in the four corners of their complaint. If you believe the
15        complaint, the complaint on its face --
16             THE COURT: What red flags do you say will not allege
17        conflict?
18             MR. RAFFERTY: They don't, your Honor. What they say
19        is there is not a single specific that on such and such a date,
20        so and so from PwC attended a meeting at which the following
21        was discussed. There's none of that. What they do is they
22        generically point to a group of red flags, a half a dozen in
23        their brief, and a few more in their charts that they added in
24        advance of the argument, and they say on the basis of that, you
25        should have known.
                      SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```

```
          64Kbwaig                    Oral Argument
                                      Page 55
```

64Kbwaiga (2).txt

1    Let me take one of the red flags because you've
2    already discussed it.  One of the red flags that they say
3    should have put PwC on notice that there was a problem was the
4    fact that the audit committee made the statements that they
5    made in connection with the 10K, that the audit committee
6    wasn't professional accountants, and, therefore, they weren't
7    independent.  That was disclosed to the public, your Honor.  A
8    red flag that should have made the accountant stop in their
9    tracks that's in the 10K, your Honor?  That's a remarkable kind
10   of red flag, your Honor.
11       The Brightpoint and PNC transactions that they also
12   call red flags, they don't have anything to do with the
13   accounting for these transactions on AIG's books.  There is no
14   allegation that they had any impact at all on that.  These are
15   the SEC and Department of Justice and other regulators went to
16   PNC and Brightpoint and said you're misrepresenting your
17   financial condition on the basis of your transactions with AIG,
18   and AIG got itself on trouble on that, but there's no
19   allegation in the complaint that had anything whatsoever to do
20   with PwC's audit of AIG's financials.
21       PwC was not the outside auditor for PNC or for
22   Brightpoint, and that's not a claim that's probably in this
23   complaint.  That's another type of red flag that they're
24   looking at.
25       The other red flag, and I'm going to try to focus on
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

119

64Kbwaig                Oral Argument
1    the stuff that your Honor has already heard today.  The other
2    red flag is Mr. Grasso's call to the New York Stock Exchange,
3    that when that got reported in the newspapers, oh, my God, PwC
4    should have known that there was accounting fraud going on
5    because Mr. Grasso was being called by Mr. Greenberg and
6    Mr. Greenberg was allegedly saying to him I'm not happy because
7    I think these specialist firms should be buying more of the
8    company stock and my stock price is suffering because of it.
9    What does that have to do in any way with the role of an
10   outside certified public accountant to review somebody's
11   financial statements?
12       THE COURT:  What do they allege in their complaint
13   that would indicate that they did not perform an audit?
14       MR. RAFFERTY:  They allege an entire variety -- they,
15   in fact, allege that in 2004/2005, we spent 50,000 hours on
16   this audit.
17       THE COURT:  With 50,000 hours, they didn't find
18   anything.
19       MR. RAFFERTY:  Your Honor, if that's the case, that's
20   a negligence claim.  It's not a securities fraud claim.  This
21   isn't Bleak House, but it's also --
22       THE COURT:  It might be an argument if you closed your
23   eyes.
24       MR. RAFFERTY:  They have to plead that, your Honor.
25   They can't plead it.  They know they can't plead it.  The red
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

120

64Kbwaig                Oral Argument
1    flags are their effort at a substitute for a hard, direct
2    pleading.
3        THE COURT:  What flags would be an indication that you
4    were aware of the likelihood that the statements were false and
5    deliberately chose not to look?  That's why I said, deliberate
Page 56

64Kbwaiga (2).txt

6   avoidance, refusing to look at transactions that should have
7   been looked at, and that's fraud.
8       MR. RAFFERTY:  In a complaint in which they allege
9   that top management was intentionally withholding this
10  information from, among others, the outside auditors, how can
11  they have it both ways?  The fact is maybe they do have a claim
12  for negligence that they can plead, but that's not this case.
13  And if you let them go and throw the kitchen sink in, what
14  they've done is --
15      THE COURT:  Looks like it was so many things that were
16  reported improperly.
17      MR. RAFFERTY:  You can consider, I do not dispute, you
18  can consider the totality of the circumstances in the
19  pleadings, but when you do that, when you go through their
20  brief, the half a dozen red flags that they raise, by
21  themselves or taken together, they don't say that PwC knew or
22  was reckless with respect to any particular -- now this is a
23  big company.  We've heard a lot of numbers running around here
24  today, the $3.9 billion misstatement.  This a multibillion
25  dollar company, and what the auditors do -- by the way, the

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

121

64Kbwaig          Oral Argument
1   financial statements were prepared by this company.  It has as
2   many auditors, if not more, than PwC working on this
3   engagement.  PwC had a lot of people, no doubt, but they
4   prepared the auditing financial statements purportedly in
5   accordance with GAAP.  As your Honor knows much better than do
6   I do from your experience, the auditors come in and they test
7   it.  They've picked a dozen, a half dozen, depends on how you
8   put them together, purported red flags, and most of the red
9   flags, if not all of them, come directly out of the restatement
10  that AIG issued in 2004/2005.  So the circumstances you have
11  here, your Honor, is any time you have a big accounting problem
12  at a company and the company restates and it's a big
13  restatement, nobody is going to dispute that it's a big
14  restatement, after the fact, in hindsight, class plaintiffs can
15  come in and say here are all the things you restated.  You say
16  now that we've looked at this again, this is what we're going
17  to do.  Those are all red flags that you should have seen
18  earlier on, and the fact that you didn't see them now subjects
19  you to a finding by the court on a motion to dismiss.
20      THE COURT:  It ought to be subject to a fraud, if
21  these are things that you should have known beforehand.
22      MR. RAFFERTY:  Some of these things, for example, the
23  report that Mr. Grasso was contacted by Mr. Greenberg, what is
24  it about that information -- that's one of their red flags.  I
25  didn't pick it, your Honor.  What is it about that that would

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

122

64Kbwaig          Oral Argument
1   lead an outside auditor to question a company of this size?
2   What would we have done, I ask rhetorically, in response to
3   that?
4       THE COURT:  That one is a little hard to see.  I fail
5   to see how that reflected itself on the company in any way.
6       MR. RAFFERTY:  Let me take a minute.
7       THE COURT:  What about the General Reinsurance deal?
8       MR. RAFFERTY:  The General Reinsurance deal, there's
9   not a shred of allegation in this that anyone at PwC understood
10  the true nature of that deal, that they understood that it was,

Page 57

64Kbwaiga (2).txt

11  in fact, a sham. And in fact, as a red flag what they focus
12  on, your Honor, is not Gen Re, per se, but they focus on this
13  other company you heard about before, Coral.
14          THE COURT: Coral, yes.
15          MR. RAFFERTY: And what they say about Coral -- Coral,
16  by the way, was way, way outside of this class period. They
17  are challenging here the audits that PwC did in 1999, 2000,
18  2001, 2002, 2003. They're not challenging earlier audits.
19          THE COURT: If you knew what they were doing with
20  Coral, you might have referred they were doing the same thing
21  with General Re.
22          MR. RAFFERTY: If you knew what they were doing with
23  Coral and you knew that they stopped and you knew that they got
24  their wrists slapped and that they promised that they weren't
25  going to do it again, what would you do with that information

64Kbwaig                    Oral Argument
1   as the outside auditor? What would you do?
2           THE COURT: We decide the timing of that transaction
3   caused it to become suspicious enough to expand the scope of
4   the audit or test it further.
5           MR. RAFFERTY: There's no allegation. In fact, they
6   pleaded at some detail about the size of the fees that were
7   paid to PwC.
8           THE COURT: It's not fair to --
9           MR. RAFFERTY: But the work was done, your Honor,
10  whether or not anyone caught this. Again, this is in the
11  context of a complaint that says that management was trying to
12  hide this.
13          THE COURT: I got the point. I'll let them respond to
14  it. Go ahead.
15          MR. DUBBS: First of all, it's a distortion of the
16  complaint to say that we pled that everything was hidden from
17  PwC. Certain things may have been hidden from PwC. Putting
18  all of those aside, there's a strong inference of recklessness
19  based upon what was pled.
20          THE COURT: What was pled?
21          MR. DUBBS: The first thing that was pled was the
22  magnitude of the fraud which was $3.9 billion and $2.26
23  restructuring of equity.
24          THE COURT: That's not going to do it.
25          MR. DUBBS: Number two, the persuasiveness of the

64Kbwaig                    Oral Argument
1   fraud, there were at least two dozen transactions of violation
2   of GAAP in seven major areas of the company over five years.
3           THE COURT: That doesn't do it, either.
4           MR. DUBBS: All right. Let's keep going. There were
5   fraudulent top sided adjustments in the $500 million Gen Re
6   transaction, all of which occurred at the end of the reporting
7   period, and your Honor knows as well as I do that one of the
8   things that auditors are specifically tasked to do is when
9   there are complex and unusual transactions at the end of a
10  reporting period, they're supposed to do additional testing and
11  dig in, and that's precisely what Gen Re was. They rendered an
12  opinion at a time when the Gen Re transaction was effected and
13  there was no underwriting file. There was no evidential matter
14  on the Gen Re transaction until six months later. It was a
15  complex transaction.

Page 58

64Kbwaiga (2).txt

```
16          THE COURT:  What do you mean by that?
17          MR. DUBBS:  There was no paper document.
18          THE COURT:  There were no papers?
19          MR. DUBBS:  Correct.  Well, I don't know if there were
20   papers, but there was no file within AIG that documented this,
21   and it was a huge transaction at the end of a reporting period.
22          THE COURT:  The company had no record of the
23   reporting?
24          MR. DUBBS:  That's our allegation.  Beyond that, which
25   there's been less talk of today, we have the contingent
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

125

64Kbwaig          Oral Argument

```
 1   commission scheme and auditors are specifically tasked --
 2          THE COURT:  This is, what, the life.
 3          MR. DUBBS:  This is the bid rigging, market division,
 4   phony bid scheme that had the effect of distorting the
 5   earnings.  Marsh was at the center of it, and we have several
 6   guilty pleas on that.
 7          The AICPA ordered an accounting guide that
 8   specifically says they're supposed to look at receivables that
 9   should be tested consist of for example "contingent commissions
10   or unusual commissions which may encourage agent fraud, and we
11   allege that they never looked at contingent commissions.
12          THE COURT:  That's an argument that you say they
13   performed no audit.
14          MR. DUBBS:  That's no audit.  Now as to the Gen Re,
15   they're under an obligation, as I said, to look at significant,
16   unusual or complex transactions especially those that occur at
17   or near the end of the reporting period.  That's at paragraph
18   1063A.  Beyond that, they had knowledge of the Coral Re
19   settlement, and when you have knowledge of the settlement, then
20   it's your obligation under AU 31709 to learn about possible
21   illegal acts, find out what happened, and we submit that that
22   was the model for the Union Excess/Richmond transactions that
23   occurred later.
24          So they knew about Coral Re and, indeed, to repeat
25   what I've said before, Union Excess is old wine in a new
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

126

64Kbwaig          Oral Argument

```
 1   bottle.  Indeed it's so exact that when Coral Re was shut down
 2   by the Department of Insurance, all the insurance, virtually
 3   all of the reinsurance treaties that had been in Coral Re were
 4   just moved over to Union Excess and they never said well, maybe
 5   the game is continuing on, maybe Union Excess isn't totally
 6   independent, which is what they say they were.
 7          THE COURT:  What did they do to test the independence
 8   of Union Excess?
 9          MR. DUBBS:  They did nothing, as far as we know.
10          THE COURT:  Is it a subsidiary?
11          MR. DUBBS:  No.  It pretended to be totally separate
12   and that was one of the -- it was essentially AIG was secretly
13   reinsuring itself and creating the false impression that this
14   was legitimate business activity.  AU 31662, I touched on this
15   before, auditors testing ordinarily should focus on the journal
16   entries and other adjustments made at the end of the reporting
17   period.  Top side adjustments to claims reserves were made
18   without appropriate support at the end of quarters and with PwC
19   approval.  That comes from the restatement.
20          Now, why did PwC approve those?  They approved
```

Page 59

64Kbwaiga (2).txt
21  fraudulent transactions that were later restated and are a big
22  part of the restatement.
23          THE COURT: Let's get it where it belongs.  You say
24  they approved it without auditing it.
25          MR. DUBBS: That's correct.
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                        127

64Kbwaig                 Oral Argument
1           THE COURT: That's the basis of your claim?
2           MR. DUBBS: That's one of them.
3           THE COURT: Well, that is it.  The fact that you
4   approved a fraudulent transaction does nothing.
5           MR. DUBBS: Well, if you don't look.
6           THE COURT: Well, that's --
7           MR. DUBBS: Some of these they didn't look and some of
8   them they looked and turned their eye the other way.
9           THE COURT: Some of them, no accountant is going to
10  look at every transaction.
11          MR. DUBBS: No doubt about that.
12          THE COURT: So you say these guys did not.  That's the
13  basis for your claim against Gen Re?
14          MR. DUBBS: That's correct.
15          THE COURT: All right.  Get it where it belongs.
16          MR. DUBBS: Fair enough.
17          THE COURT: All right.  I got it.  One minute.  It's
18  already five.
19          MR. RAFFERTY: What you were just told, Mr. Dubbs,
20  whom I love dearly, told you at the beginning that I had
21  distorted the complaint.  In fact, what they're trying to do is
22  distort the accounting standards to term what might be
23  negligence into an allegation of fraud.  This is what they
24  prepared.  It says receivables that should be tested including
25  commissions.
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                        128

64Kbwaig                 Oral Argument
1           These contingent commissions weren't receivables, your
2   Honor.  That's not what the complaint says.  There were things
3   that AIG was paying to agents for referring them business.
4   That's not a receivable.  That's a payable.  This provision has
5   nothing whatsoever to do with contingent commissions, and it's
6   that kind of boot strapping desperation, trying to pull
7   together disparate accounting principals and say you might have
8   violated this accounting principal.  You know what, your Honor,
9   maybe we did, but that's not enough to get you into court on a
10  fraud claim.  It might get you into court on a negligence claim
11  or breach of contract claim.
12          THE COURT: The auditors, payable or receivable, if
13  it's phony, it's phony.
14          MR. RAFFERTY: Your Honor, accountants do not --
15          THE COURT: Payables will overstate expenses and
16  reduce earnings if that's what they're trying to do.
17          MR. RAFFERTY: There's no allegation in this
18  complaint, in this red flag, or in any of the others that these
19  receivables -- they weren't receivables.  They were to be paid
20  to the agents.  There's no allegations that the payments
21  weren't made.
22          THE COURT: Why would you have any more reason to test
23  one than the other?
24          MR. RAFFERTY: Why would you have reason to test
25  receivables if they were contingent?  Because if you were
                        Page 60

64Kbwaiga (2).txt
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

129

64Kbwaig                    Oral Argument
1    representing them on your books, you better know what portion
2    of them you're ultimately going to collect on.  There's a whole
3    different world of accounting, as your Honor knows, for when
4    you got a contingent receivable.
5             THE COURT:  If you have a receivable on the books or a
6    payable on the books that doesn't belong there, you're
7    overstating your liabilities.
8             MR. RAFFERTY:  There's no allegation that they don't
9    belong, your Honor.
10            THE COURT:  I'm saying there's a difference between a
11   receivable and payable.  It doesn't really matter in terms of
12   the liabilities to look into it.  It ought to be a payable or
13   receivable to test to see whether or not it's real.
14            MR. RAFFERTY:  After a lot of the arguments today
15   which are pretty much above my level, let me go down to the
16   common sense, which is something I think I sometimes know.
17            When a company like AIG hires an agent and the agent
18   provides it with business and AIG pays that agent $1,000, a
19   million dollars, whatever it is that the agents earned in a
20   commission, whether it's a contingent commission or whether
21   it's a commission, the outside auditor is not in a position to
22   get into that level of detail to say, well, was this really a
23   deal?  How do I know that?  I know that the payment was made,
24   the money went out the door and I know that the receivable came
25   in.
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

130

64Kbwaig                    Oral Argument
1             THE COURT:  You say prior to auditing, that's all.
2    They didn't audit it at all.
3             MR. RAFFERTY:  No, the complaint doesn't say that,
4    your Honor.  It couldn't say that.  The complaint says this was
5    a red flag that should have put you on notice.  The argument
6    that was made today, I urge your Honor, I'm sure it will fall
7    on your clerks who are going to hate me for it, look in the
8    complaint to see.  There isn't a specific complaint --
9             THE COURT:  My clerks will hate me first.
10            MR. RAFFERTY:  Well, they can hate us both jointly.
11   There isn't a single factual allegation about who, what, when,
12   where and how PwC did anything.  There is simply a laundry list
13   of red flags.
14            THE COURT:  What about for the reinsurance
15   transaction?
16            MR. RAFFERTY:  And there's no evidence and there's no
17   allegation that PwC sat there and looked at that.
18            THE COURT:  Don't you think the fact that it's not
19   there is a certain defect in an audit?
20            MR. RAFFERTY:  In a company that is a billion dollar
21   company, your Honor, I don't know.  We could at some point, if
22   I don't get dismissed out of this, we will have an expert talk
23   about just how much auditors can look at in terms of every
24   transaction that a company of this size do.
25            THE COURT:  Not every transaction.  A relatively
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

131

64Kbwaig                    Oral Argument
1    sizeable transaction.
                        Page 61

64Kbwaiga (2).txt

2         MR. RAFFERTY:  And you can characterize it that way,
3  your Honor.  I won't fight with you.
4         THE COURT:  That's the way they characterize it.
5         MR. RAFFERTY:  I bet you there were tens of thousands
6  of large transactions ever year at this company at a minimum,
7  and hundreds, if not thousands, of them occurred towards the
8  end of the quarter.  I've been representing businesses long
9  enough to know that a lot of deals are closed under the
10  pressure of a time clock.  So you get to 12:27 and your boss
11  says, is So-and-So going to actually buy that, and is he going
12  to buy it this year?  You close the deal.  That's not evidence
13  of anything without more, your Honor.  They're asking you to
14  draw an inference --
15         THE COURT:  That's the whole purpose of an audit.  If
16  you're saying that if you have a question, you have to do an
17  audit at all.
18         MR. RAFFERTY:  NO.  The purpose of an audit is to test
19  the financial statements prepared in accordance with GAAP by
20  the client and the client represents that it's prepared its
21  financial statements in accordance with GAAP.
22         THE COURT:  That much I know.
23         MR. RAFFERTY:  We all know that, your Honor.  Your
24  Honor also wrote the opinion or your Honor worked on the U.S.
25  v. Simon back when --

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

132

64Kbwaig              Oral Argument

1         THE COURT:  Putting that aside --
2         MR. RAFFERTY:  Well, and I understand, you could have
3  a fraud where you have an audit that's done in accordance or
4  financial statements done in accordance with GAAP.  There's
5  nothing magical about that.  What these plaintiffs have alleged
6  is that we did not comply with the applicable auditing
7  standards.
8         THE COURT:  Whether or not they have a fraud claim is
9  to show that basically they performed the work at all.  Some of
10  these transactions, you had those employees when they didn't
11  look at it.
12         MR. RAFFERTY:  Your Honor, I could take the majority
13  of transactions at any large company and it would be a truism
14  that the outside auditors didn't look at them.
15         THE COURT:  You go beyond the motion to dismiss.
16         MR. RAFFERTY:  I do not think I am because I go back
17  to your Honor's Bleak House example.  The rules say that you
18  can draw an inference of scienter from a sufficient number of
19  red flags.  I do not think they've come even close.  If you
20  look at the half a dozen or a dozen at most red flags, some of
21  which are the things like the phone call to Mr. Grasso.
22         THE COURT:  That one I don't see how it affects the
23  financials.  Manipulating stock, I mean in the absence of
24  making money that way and underreporting, overreporting the
25  income, it doesn't impact at all.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

133

64Kbwaig              Oral Argument

1         MR. RAFFERTY:  Of course it doesn't, your Honor.  I
2  agree with you, but that's the kind of red flags that they're
3  reaching for because they don't have any facts that would
4  indicate that PwC either knowingly or wrecklessly engaged in a
5  fraud.
6         THE COURT:  It was an indication that the company was

Page 62

64Kbwaiga (2).txt
7   performing illegal conduct in one area, and, therefore, there's
8   an inference they might be doing it in another. That's really
9   what they're arguing.
10          MR. RAFFERTY:  I will test your patience with one more
11  thing.
12          THE COURT:  You're not testing my patience.  You're
13  testing the reporter's patience.  There's another case which
14  follows you, which I think I may have to reschedule unless they
15  want to stay here until six o'clock at night.  Who's here on
16  the Google case?  We've been here for three hours.  Do you want
17  to come back another day or what?
18          (Off the record)
19          THE COURT:  You are finished, aren't you?
20          MR. RAFFERTY:  Just about, your Honor.  Two very brief
21  things.  I was interested in Mr. Dubbs when he was talking
22  about the Union Excess arrangement with PwC with AIG,
23  characterized as a secret relationship.  He said, Union Excess
24  pretended to be totally separate, okay?  I wrote down what he
25  said.

64Kbwaig          Oral Argument
1           Once again, your Honor, they're trying to have it both
2   ways.  On the one hand, you've got a series of transactions
3   that steps appear to have been taken or at least the
4   allegations are that they're being kept separate and secret,
5   then the auditor can be liable for fraud because it didn't
6   happen to identify that red flag and get to the bottom of it.
7           THE COURT:  All they say is you should have checked to
8   see if you would have followed the same pattern as the others,
9   then it wouldn't have been so secret.
10          MR. RAFFERTY:  Right.  In any way where there was a
11  restatement, you simply have to take the restatement items, say
12  they were red flags, and you should have checked and you
13  obviously didn't.
14          THE COURT:  I'm going to reserve decision on the
15  motion.
16          MR. RAFFERTY:  Thank you, your Honor.
17          THE COURT:  Who's next?
18          MR. KOLLEENY:  Steven Kolleeny for CV Starr and Starr
19  International.  I'll be brief because the allegations in the
20  complaint against my clients are two claims.
21          THE COURT:  Who are you anyway?  Who's Starr
22  International?
23          MR. KOLLEENY:  These are both for control persons
24  1000, Section 14?
25          THE COURT:  The other guys who said control by

64Kbwaig          Oral Argument
1   Mr. Greenberg.
2           MR. KOLLEENY:  The control persons allegations are the
3   Star ownership of AIG stock which is 11.9 percent for Star
4   International and two percent for CV Starr, and their ability
5   to pay contingent compensation deferred compensation to AIG
6   employees give rise to control person status.
7           Now, we submit and the cases are in our brief that
8   they've utterly failed to allege any particularized facts to
9   show that any Starr entity participated in any way in the
10  purported underlying allegations of law.  Whether or not you
11  find there's control, there's absolutely not a shred of
                            Page 63

64Kbwaiga (2).txt

12  allegation.
13          THE COURT:  You're a control person.  You don't have
14  to have culpable participation.
15          MR. KOLLEENY:  You do have to a have culpable
16  participation in order to be a control person.
17          THE COURT:  That's another issue.
18          MR. KOLLEENY:  Not with respect to the --
19          THE COURT:  I thought they were diversity.
20          MR. KOLLEENY:  That's on the 33 act claim, your Honor,
21  and, in that case, the better reason cases represented by the
22  DeMaria case that we cited at page five of the brief hold that
23  courts in the circuit have held that under Section 15, the same
24  standard of culpable participation in a substantial way in
25  actionable behavior that would be violative of the statute, the
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                            136
    64Kbwaig                Oral Argument
1   engagement under Section 15 as well as under Section 20.
2           THE COURT:  Well, culpable participation is required
3   that as a control person they had the control person liability
4   in the principal language.
5           MR. KOLLEENY:  Well, your Honor, that's the law.
6   There is a requirement for culpable participation because there
7   isn't a requirement -- there is such a requirement because it
8   wouldn't be right to haul every person who arguably had the
9   ability to control in on every claim that a company's involved
10  in, and here there's absolutely no allegation.  I think that is
11  underscored by the fact that in their brief, the plaintiffs at
12  pages 17 through 18, pull an example really out of thin air and
13  they say that thus, for example, when Greenberg ordered Umansky
14  to participate in the Nan Shan frauds, Umansky was under
15  tremendous pressure to follow instructions presumably because
16  his contingent compensation was at issue.
17          Well, Judge, you'll notice I didn't read anything
18  about Starr International or about CV Starr, and that's simply
19  because there's no such allegation, and culpable participation
20  is required under both of the claims.
21          THE COURT:  That's what Judge Kaplan said.  He says
22  it's Second Circuit, et al, that a Section 20 claim is
23  insufficient as to an allegation of culpable participation.
24  This fraud has been followed but he does not.  The plain
25  language of the statute is unambiguous.  The court holds that
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                            137
    64Kbwaig                Oral Argument
1   plaintiff stated a legally sufficient claim under the statute
2   between A, violation by a controlled person and controlled by
3   the relevant representative.
4           MR. KOLLEENY:  But, your Honor, that's not what the
5   Second Circuit said.  They said that you didn't have to show --
6           THE COURT:  He's saying this, Judge Kaplan.
7           MR. KOLLEENY:  I understand, your Honor.
8           THE COURT:  A very good judge.
9           MR. KOLLEENY:  I would not debate that.
10          THE COURT:  Not only that, he has the same birthday as
11  I have, to the year, the same birthday.
12          MR. KOLLEENY:  The cases are legion in the Boluski
13  case.
14          THE COURT:  He says the secretary has not held.  You
15  say it's held.
16          MR. KOLLEENY:  Your Honor, if you take a look --
                        Page 64

64Kbwaiga (2).txt

```
17          THE COURT:  I can't believe Judge Kaplan is wrong on
18     that.
19          MR. KOLLEENY:  As to Section 20, your Honor, I believe
20     he's referring to Section 15.  There's indeed a split of
21     authority, but we submit the cases we cite in the brief on the
22     point --
23          THE COURT:  He's listed what he says.  The Second
24     Circuit hasn't held that Section 20 report is culpable
25     participation.
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

138

64Kbwaig                    Oral Argument
```
 1          MR. KOLLEENY:  I think he did miss it, your Honor.  I
 2     think it's clear from the Boluski case that we cite in our
 3     brief that legions of district court cases --
 4          THE COURT:  I'll take a look at your case.  I have a
 5     feeling that Judge Kaplan did not miss it from what I know of
 6     him.
 7          MR. KOLLEENY:  Judge, excuse me.  I don't even think
 8     that the plaintiffs are contending that they don't have to show
 9     that there was culpable participation under a Section 20(a)
10     claim.  So with that, your Honor, I'll turn it to you.
11          THE COURT:  You guys are getting tired.  Don't stumble
12     and bumble.  You don't have a jury trial here.
13          MR. BOTTLIEB:  First of all, with regard to the
14     culpable participation, we, of course, believe that Judge
15     Kaplan got it right.
16          In this case, we have SICO and CV Starr that pays more
17     to salaries for the top 700 employees of AIG than AIG did.
18     Here, we have a chart showing --
19          THE COURT:  Well, they made salary decisions?
20          MR. BOTTLIEB:  SICO made the salary decision.  AIG had
21     nothing to say for this.  These were for compensation,
22     long-term compensation.  You could be working for this company
23     for 25 years, as Evan Greenberg did, and when he left, know
24     what his father did?  He says you lost $14 million, good-bye,
25     you're not getting it.  He had all of that deferred
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

139

64Kbwaig                    Oral Argument
```
 1     compensation.  It's gone.
 2          When Hank Greenberg would do that to his own son, you
 3     could imagine what he would do to any other employee at AIG.
 4     If he fires you after you've been there for 25 years,
 5     everything you've accumulated is gone.  Now, the same thing
 6     that is true for SICO is also true for CV Starr.
 7          THE COURT:  Really Greenberg is the control person,
 8     isn't he?
 9          MR. BOTTLIEB:  They had more control over the
10     employees of AIG than people have over their children.  Those
11     employees had to do everything that Greenberg would say.  And
12     Greenberg doesn't say and today I'm wearing only my AIG hat
13     when I'm telling you what to do.
14          THE COURT:  You're saying that the primary violator
15     AIG, not Greenberg individually?
16          MR. BOTTLIEB:  Well, the primary violator is AIG.
17          THE COURT:  They're a control person of AIG, but
18     Greenberg is the control person for both.
19          MR. BOTTLIEB:  Greenberg is both.  Greenberg is
20     wearing three hats.  He is the head of SICO.  He is the head of
21     CV Starr.  He is the head of AIG.  When Greenberg tells you
```
Page 65

64Kbwaiga (2).txt

22    what to do, what hat is he wearing? All three.
23         THE COURT: He says jump, you say how high.
24         MR. BOTTLIEB: You bet.
25         I'd like the last two charts. I'd like to show the
              SOUTHERN DISTRICT REPORTERS, P.C.
                     (212) 805-0300

                                                          140

      64Kbwaig              Oral Argument
1     Court two charts which I will admit are not in the complaint
2     because we found out about this later. They are public
3     documents. This is taken -- this isn't plaintiffs' version or
4     the defendants' version. This is the version of the New York
5     Department of Insurance which in 2000 issues a report. They're
6     looking at one of AIG's subsidiaries, and they're doing this
7     report, and they're saying American Home Assurance Companies,
8     wholly owned by AIG, a Delaware holding company organized in
9     1967, which directly or indirectly owns all of the capital
10    stock of several insurance companies, including the American
11    Home/National Union Group. AIG, in turn, is ultimately
12    controlled by CV Starr & Co.
13         That's not my words. That's from the New York
14    insurance department. And they included a nice little
15    organizational chart. At the top of the chart is CV Starr.
16    Under that is Starr International. Under that is AIG and under
17    that are all these New York subsidiaries.
18         Now, for the convenience of the Court, we do have
19    copies of all of these posters, which we have presented to all
20    the defendants, and, if I may approach, I would like to give
21    one to the clerk and one to your Honor.
22         THE COURT: All right.
23         MR. BOTTLIEB: So the last thing is interlocking
24    directors, something that defendant didn't address. There are
25    a legion of cases that talk about interlocking directors as
              SOUTHERN DISTRICT REPORTERS, P.C.
                     (212) 805-0300

                                                          141

      64Kbwaig              Oral Argument
1     being another grounds for determining control in a 20a case,
2     and here we have nine directors. The defendants may point to
3     some cases where courts have said having three out of nine
4     might not be enough. But these were outside directors.
5          Here the directors that are interlocking are the top
6     people, the people actually running the company. So you have a
7     person who is a director in SICO and CV Starr who is a chairman
8     of AIG. Likewise, you have Smith who is a director of SICO and
9     CV Starr and he was the CFO of AIG.
10         These people, all the people at the top, Sullivan,
11    Tizzio, Smith, Greenberg, these are the top people who are
12    running the company and they were directors at the same time of
13    CV Starr and SICO. If that isn't control, I don't know what
14    is. And if these people didn't culpably participate, Greenberg
15    and Smith --
16         THE COURT: Some of them took the Fifth Amendment,
17    didn't they?
18         MR. BOTTLIEB: They certainly did. Greenberg and
19    Smith took the Fifth Amendment. So I think we more than proved
20    control.
21         THE COURT: Which of them pleaded guilty?
22         MR. BOTTLIEB: That will come.
23         THE COURT: We're not going to cover this.
24         MR. KOLLEENY: Very quickly just put this chart back
25    up and I don't actually know --
              SOUTHERN DISTRICT REPORTERS, P.C.
                     (212) 805-0300
                        Page 66

64Kbwaiga (2).txt
(212) 805-0300

64Kbwaig                    Oral Argument
1           THE COURT: Where are those charts?
2           MR. KOLLEENY: It's interesting, if you look at the
3    chart that they flashed we saw those for the first time last
4    night or yesterday afternoon. It does say it's not from the
5    defendants and I'm talking about the one that they claim
6    demonstrates that there's control by CV Starr and SICO. That
7    is a July 29, 2000, what they identify as a New York Department
8    of Insurance report. They didn't give us a copy of it. But it
9    says that it's an association report on examination of the
10   American Home Assurance Company as of December 31, 1996.
11          Yet Mr. Bottlieb points to this as somehow indicating
12   that in fact why isn't there a later one, for example, from the
13   events that are under scrutiny here?
14          THE COURT: I'm not sure if he has to.
15          MR. LABATON: The facts didn't change.
16          MR. KOLLEENY: We're not to be held of what's in the
17   report of July 2000.
18          THE COURT: I know you want to be creative, but there
19   isn't any question in this case that you're not a control
20   person, not the slightest venture of a doubt.
21          MR. KOLLEENY: I'll just close by saying there is not
22   one allegation, that's why they're trying to pull these rabbits
23   out of a hat to show that there's some kind of culpable
24   participation. They want to gloss over the fact -- your Honor
25   hit it just right when you said that Greenberg may be a control
                   SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

64Kbwaig                    Oral Argument
1    person. There is no allegation of culpable participation by
2    either CV Starr or Starr International.
3           THE COURT: All right.
4           MR. KOLLEENY: Thank you, Judge.
5           THE COURT: I think to the extent of culpable
6    participation is required which it may not be under the federal
7    law is more than sufficient in establishing.
8           MR. KOLLEENY: Your Honor, I would urge you to look at
9    the case law we cite under the 33 act as well, and I think it's
10   clear that culpable participation required is just not in this
11   tone.
12          THE COURT: I think this is another noble effort that
13   is doomed to fail.
14          MR. KOLLEENY: Well, thank you for the compliment.
15          THE COURT: Sometimes you have a bad case.
16          MR. KOLLEENY: I do not think we do. Well, thank you.
17          THE COURT: Okay. Anything further? I reserve on the
18   motion. I reserve on the jurisdictional issue and I indicated
19   I'm going to send the other defendant decision by plaintiff's
20   counsel, Evan Greenberg, and all other motions are denied.
21   What about discovery?
22          MR. LABATON: Now that we've dismissed --
23          THE COURT: What comes next?
24          MR. CHERNIS: Michael Chernis on behalf of Christian
25   Milton. We did not argue, but we had a motion. We're going to
                   SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

64Kbwaig                    Oral Argument
1    rely on our briefs. Are you denying that motion as well?
2           THE COURT: All motions are denied.
                            Page 67

64Kbwaiga (2).txt

```
 3          MR. CHERNIS:  In that case, your Honor, I might as
 4   well make a point.
 5          THE COURT:  Why?
 6          MR. CHERNIS:  Just a very discrete point.  There's two
 7   control person claims against my client.
 8          THE COURT:  Who's the client?
 9          MR. CHERNIS:  Chris Milton.  One of them relates to a
10   reinsurance transaction.  One of them relates to these dead
11   offerings.  Count 4 of the complaint alleges control person
12   liability against Mr. Milton related to the dead offerings
13   which the complaint doesn't allege may involve him, and we, in
14   our papers, make the point that there's no allegation of any
15   control person liability.
16          The response by plaintiff does not address the point.
17   I think actually they misunderstood our argument.  I would
18   contend there's no basis to hold Mr. Milton liable under Count
19   4 which relates to the dead offerings.
20          THE COURT:  Go ahead.
21          MR. BOTTLIEB:  Your Honor, Mr. Milton was the point
22   man from AIG on the Gen deal.  He has pled guilty.  He has been
23   fired.
24          MR. CHERNIS:  Well, he's been arraigned.  He hasn't
25   been tried yet.
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

145

64Kbwaig          Oral Argument

```
 1          MR. BOTTLIEB:  I'm sorry.  He plead the Fifth.
 2          THE COURT:  Which permits an adverse inference.
 3          MR. BOTTLIEB:  Yes.
 4          MR. CHERNIS:  I'm not talking about the Gen Re
 5   transaction, sir.  I'm talking about the dead offering claims
 6   which is Count 4 of your complaint.
 7          MR. BOTTLIEB:  If you like, we can look at that and
 8   write to the Court.
 9          THE COURT:  Dead offering claim?  What does that
10   relate to?
11          MR. BOTTLIEB:  It relates to --
12          THE COURT:  This is one count against him?  Is it the
13   only count?
14          MR. CHERNIS:  We have ten claims against him.
15          THE COURT:  Forgot it.  I'm not going to dismiss one
16   count.  It doesn't get us anywhere.
17          MR. CHERNIS:  I'm not sure.  It's a completely
18   different claim.
19          THE COURT:  It's not going to be independently
20   appealable.  So it can't be used later anyway.  So if there's
21   no claim here, that's the end of the motion for summary
22   judgment, all right?  Anyway, the ruling stands as given.
23   What's next, a class action motion or what?
24          MR. DUBBS:  Your Honor, we intend to serve discovery
25   requests.
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

146

64Kbwaig          Oral Argument

```
 1          THE COURT:  All right.  On the class action?
 2          MR. DUBBS:  On the merits.
 3          THE COURT:  What about class action status?
 4          MR. DUBBS:  We will confer with counsel as to how they
 5   wish to proceed on that.
 6          THE COURT:  You have totality problems here, standing
 7   arguments where a representative of the class action.
```

Page 68

64Kbwaiga (2).txt

```
 8           MR. DUBBS:  We will see if your decision is wrong.  I
 9  guess that's the --
10           THE COURT:  My decision is wrong or not?
11           MR. DUBBS:  We will see whether it is or not.
12           THE COURT:  It is wrong?  I haven't ruled on it yet.
13           MR. DUBBS:  The prior decision that was referred to
14  earlier in the afternoon.  We will confer with counsel for the
15  defendants on what their druthers are on class discovery and
16  proceedings under class.
17           THE COURT:  You don't want a separate discovery for a
18  class action?
19           MR. DUBBS:  No.  We want to do it simultaneously.
20           THE COURT:  It doesn't really make a lot of difference
21  for one person who's not in the class and my rulings are the
22  same with respect to the other motion.  I do not think I need
23  to hear a lot of arguing on the motion because they're
24  essentially the same.
25           MR. PUCILLO:  Michael Pucillo, Florida State Board.
              SOUTHERN DISTRICT REPORTERS, P.C.
                      (212) 805-0300
```

147

64Kbwaig                    Oral Argument

```
 1  The arguments are the same.
 2           THE COURT:  My ruling will apply to your case, as
 3  well.
 4           MR. PUCILLO:  Very well.
 5           MR. KRAMER:  Your Honor, just a couple of things
 6  Kramer.  Your Honor, what's different about the Florida cases
 7  is they have state claims, one of which is preempted by the
 8  Martin Act.  We've made that argument and both of which require
 9  allegations of actual reliance, they don't get a presumption on
10  the state claims and that's not official.  And so in our view,
11  the state law claims should be out, and then the two cases will
12  be very similar.
13           THE COURT:  Those go to the merits, don't they?
14           MR. KRAMER:  No, your Honor.  The Martin Act in
15  Castilano, the Second Circuit found that the Martin Act, which
16  is a New York statute, precludes claims of negligent
17  misrepresentation when it relates to misrepresentations in
18  securities offerings.  We cite the Castilano case.  It's a
19  Second Circuit case.  We believe Castilano precludes them from
20  being able to proceed with negligent misrepresentation as a
21  matter of law.  It's in our brief.  They've responded and we
22  can get into that argument.
23           THE COURT:  If I dismiss it now it doesn't have any
24  effect whatsoever because it can't be appealed.  So plead out
25  at the end of the case if that's the case.
              SOUTHERN DISTRICT REPORTERS, P.C.
                      (212) 805-0300
```

148

64Kbwaig                    Oral Argument

```
 1           MR. KRAMER:  It's our view it's not properly pled.
 2           THE COURT:  It may happen you may want to drop those.
 3           MR. PUCILLO:  If I can respond.  If you'd like, it
 4  will take a second.  There's a split.  This is a question that
 5  the highest court of appeals of New York has not addressed.
 6  There's splits in the appellate division.  There's splits in
 7  the Southern District.  Judge Koeltl has an opinion that
 8  disagrees.  The notion that the Second Circuit decided this in
 9  Castilano I think is incorrect.  I think it deferred to the
10  appellate division cases.  Frankly, and the point of this, it
11  only relates to the negligent misrepresentation case anyway.
12  As I understand, the law is pretty clear.  It doesn't affect
                      Page 69
```

64Kbwaiga (2).txt
```
13   the fraud claim.
14            So the fraud claim is staying in under the theory of
15   the Martin Act anyway. This just relates to the negligent
16   misrepresentation claim. You've got one case in the appellate
17   division that goes one way. You got two or three that go the
18   other way, and you've got two split opinions within this court.
19   So I would submit we're happy to take it to the Court of
20   Appeals.
21            THE COURT: It's not that clear that you can take it
22   to the Court of Appeals.
23            MR. PUCILLO: That's correct, your Honor.
24            THE COURT: I will deny the motion without prejudice.
25   It may be renewed later.
```
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                              149
64Kbwaig              Oral Argument
```
1            MR. KRAMER: Thank you, your Honor. We have an
2    argument under the National Securities Market Improvement Act
3    that both of their state law claims are preempted by that act,
4    as well. We briefed that motion. There is no case law in the
5    Second Circuit. It's the National Securities Market
6    Improvement Act of 1996.
7            THE COURT: I never heard of that. What does that do?
8            MR. KRAMER: What that does, it provides no law of any
9    state shall directly or indirectly impose any conditions on
10   disclosure documents relating to covered securities. I've
11   shortened the statute. In the legislative history, it says
12   there has to be uniform standards for the liability of public
13   disclosure documents.
14           THE COURT: What part of this claim does that?
15           MR. KRAMER: Well, they're arguing that there's a
16   securities charge in connection with misrepresentations in
17   disclosure documents that AIG made.
18           THE COURT: There's the argument that the state
19   requirements are different from the federal requirements.
20           MR. KRAMER: The argument is they can only be a
21   federal claim, a 10b claim. It's the argument that the state
22   claims and at this time can only be a federal claim there. So
23   it's another argument as to why there's state claims.
24           THE COURT: But the statute effectively said that the
25   state can't impose a requirement on the state. The state
```
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                              150
64Kbwaig              Oral Argument
```
1    provision would have to be in conflict with the federal
2    provision. Otherwise, it doesn't apply. If it's consistent
3    with the federal scheme, why would it be granted?
4            MR. KRAMER: Because it simply says that they can't
5    impose any conditions. That's what the statute says.
6            THE COURT: I know, but I think the clear purpose of
7    that is, again, postconditions that would be federal law
8    because we want a uniform standard.
9            MR. KRAMER: It didn't say inconsistent. It says
10   where there's no conditions.
11           THE COURT: That has to be reviewed. I'm not sure
12   that preemption is established in this case.
13           MR. KRAMER: I wanted to make sure the Court is aware
14   of the argument, as well.
15           THE COURT: That motion is denied on the same basis
16   that I just stated. Is there something you want to say to
17   that?
```
                        Page 70

64Kbwaiga (2).txt

18    MR. PUCILLO:  I heard "deny," your Honor.  I learned
19  enough to know.  Thank you, your Honor.
20    THE COURT:  I do not think preemption normally applies
21  to a situation where the state rule is not inconsistent with
22  the federal.
23    MR. PUCILLO:  This deals with the blue sky filings.
24  That's why you've never heard of it, your Honor.
25    THE COURT:  We're really scraping the bottom of the
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
                                                          151
64Kbwaig              Oral Argument
 1  barrel.
 2    MR. KRAMER:  Your Honor, I do not think it's
 3  restricted to blue sky.  We cite the cases that are out there.
 4    THE COURT:  Anyway, it's not a significant argument.
 5    MR. KRAMER:  Without prejudice?
 6    THE COURT:  Normally it would have a great deal to do
 7  with whether or not the case settles.
 8    MR. KRAMER:  Let me address discovery for a moment.
 9  It's our view that there are significant issues about adequacy
10  and typicality with respect to many of the claims that the Ohio
11  plaintiffs have brought.  We would like separate discovery on
12  the class issues.  We believe they are significant issues.
13    THE COURT:  Why would that be so important to resolve
14  because I got an individual plaintiff here who's opted out of
15  the class.
16    MR. KRAMER:  That individual plaintiff does not
17  purport to have purchased any bonds whatsoever.  I think
18  there's a problem and a defect here and I think we should
19  address it earlier rather than later.  The Florida case is
20  based solely on common stock and the Florida case raises no
21  Section 11 claims and no claims related to any of the bonds,
22  your Honor.  So you don't have a plaintiff here that is
23  positioned to -- neither plaintiff in our view is positioned to
24  raise those claims and we think we ought to get to the bottom
25  of this sooner rather than later, that that's what makes sense
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
                                                          152
64Kbwaig              Oral Argument
 1  would be efficient, and we would like discovery on the class
 2  issues and to move to the class certification.
 3    THE COURT:  The argument on the class issues, the
 4  argument is whether the --
 5    MR. KRAMER:  Since, your Honor, our point is because
 6  we don't believe any of the plaintiffs here are proper
 7  plaintiffs on the eleven claims, it wouldn't make sense not to
 8  address the class issues first.
 9    MR. DUBBS:  We can have merits discovery on the 10b5
10  claims, but it would be a waste of time.  The bond claims here
11  should not wag the dog.  We're more than happy to give him his
12  shot to argue about the typicality of the bond offering, but
13  why don't we go on parallel tracks.  This case has been stayed
14  a long time.  Your Honor knows that the statute imposes a stay,
15  and this should not be a back door way of keeping a stay.
16  We're anxious to get it moving.
17    THE COURT:  I'm not going to do that.
18    MR. DUBBS:  Good.
19    THE COURT:  Both issues at the same time.
20    MR. DUBBS:  Very well.  Same time.
21    THE COURT:  I'm not going to stay discovery.  I'll
22  give you a six-month period to complete it, right?  That's
                        Page 71

64Kbwaiga (2).txt
23   enough.  The class action motion was filed sooner.  You have to
24   file the motion.  He can't file the motion.
25           MR. DUBBS:  Absolutely.
              SOUTHERN DISTRICT REPORTERS, P.C.
                 (212) 805-0300

                                                153

  64Kbwaig           Oral Argument
1           THE COURT:  If you file the motion sooner, I'll set a
2   briefing schedule and resolve it.
3           MR. DUBBS:  Very well, your Honor.
4           THE COURT:  Get the facts.  You need to raise the
5   motion.  There's no reason why we shouldn't have discovery of
6   the merits also.  There's been ample discovery in terms of the
7   SEC reports and everything else, all right?  Have a good day.
8   It's been a long day.
9           MR. GAMBLE:  I represent Frank Hoenemeyer, chairman of
10   the audit committee.  Because you have reserved on the PwC
11   motion to dismiss rather than denying my motion, you also
12   reserve on that because they can be separately --
13           THE COURT:  I will deny your motion.  Yours is
14   different.  All right?
15           MR. GAMBLE:  Thank you, Judge.
16           MR. KRAMER:  Thank you, Judge.
17           MR. LABATON:  Thank you, Judge.
18           (Adjourned)
19
20
21
22
23
24
25

              SOUTHERN DISTRICT REPORTERS, P.C.
                 (212) 805-0300