# EXHIBIT D

# A REPORT TO THE SPECIAL REVIEW COMMITTEE OF THE BOARD OF DIRECTORS OF FANNIE MAE

## EXECUTIVE SUMMARY

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

| | |
|---|---|
| WARREN B. RUDMAN | ALEX YOUNG K. OH |
| ROBERT P. PARKER | DANIEL J. KRAMER |

**HURON CONSULTING GROUP INC.**

| | |
|---|---|
| GEORGE E. MASSARO | JEFFREY H. ELLIS |

February 23, 2006

### EXECUTIVE SUMMARY

I. **INTRODUCTION**

The Office of Federal Housing Enterprise Oversight ("OFHEO") began a special examination of Federal National Mortgage Association ("Fannie Mae" or the "Company") in November 2003 (the "Special Examination"). Almost one year later, OFHEO issued a report of its findings to date as of September 17, 2004 (the "OFHEO Report"). Among other things, the OFHEO Report found that the Company's accounting in various respects was not consistent with generally accepted accounting principles ("GAAP") and was motivated by management's desire to portray Fannie Mae "as a consistent generator of stable and growing earnings," and by an "executive compensation structure that rewarded management for meeting goals tied to earnings-per-share, a metric subject to manipulation by management."[1] OFHEO also concluded in its Report that the Company had "dysfunctional accounting policy development, key person dependencies, and poor segregation of duties" that contributed to accounting failures and safety and soundness problems.[2]

In September 2004, the Special Review Committee of the Board of Directors of Fannie Mae (the "SRC") engaged former Senator Warren B. Rudman and Paul, Weiss, Rifkind, Wharton & Garrison LLP (collectively, "Paul, Weiss") to conduct an independent investigation of, among other things, the issues that were raised in the OFHEO Report and to report our findings and conclusions to the SRC. This Executive Summary highlights the key findings and conclusions of the Paul, Weiss investigation. The full findings and conclusions are contained in a Report, which we also publish today.[3]

The scope of our investigation was initially defined by an agreement dated September 27, 2004 between the Board of Directors of Fannie Mae (the "Board") and OFHEO, which was supplemented by an agreement dated March 7, 2005, between OFHEO and the Board (collectively, "OFHEO Agreements"). The issues raised in the OFHEO Agreements primarily concerned the Company's accounting, internal controls, and corporate governance and structure. The scope of our investigation, however, was not limited to the issues in the OFHEO Agreements. In fact, the SRC did not place any

---

[1] OFHEO Report of Findings to Date in the Special Examination of Fannie Mae, dated Sept. 17, 2004, *available at* http://www.ofheo.gov/media/pdf/FNMfindingstodate17sept04.pdf., Executive Summary at i.

[2] *Id.* at viii.

[3] *See* "A Report to the Special Review Committee of the Board of Directors of Fannie Mae" (the "PW Report" or the "Report"). The three-volume Appendix to the PW Report includes sample documents of interest that are discussed in the PW Report, and certain submissions that Paul, Weiss received from attorneys who represent former Company officers.

1

limitations on our inquiry and instructed us to follow whatever leads we discovered during the course of our investigation.[4] We received the full support of the SRC and the Board during the course of our review, and the SRC instructed the Company to cooperate fully with our investigation.

Pursuant to the OFHEO Agreements, and with the approval of both the SRC and OFHEO, we retained the forensic accounting services of Huron Consulting Group Inc. ("Huron") to assist in our investigation. During the course of the investigation, Paul, Weiss and Huron collectively reviewed more than four million pages of hardcopy and electronic documents and conducted more than 240 interviews.[5] The accounting opinions expressed in this Report are Huron's. Neither Paul, Weiss nor Huron, however, conducted an audit of the Company's financial statements. The task of preparing restated financial statements remains that of the Company, and the task of auditing those financial statements remains that of the Company's independent auditor, Deloitte & Touche LLP.

Our engagement was unusual in that the OFHEO Agreements required the Company, contemporaneously with our investigation, to undertake prompt remedial measures with respect to Fannie Mae's accounting processes and procedures and corporate governance. As we detail in the Chapter of our Report addressing Corporate Governance and Internal Controls, the Board and the Company, with our input, have diligently pursued their obligations under the OFHEO Agreements and many remedial measures are already underway. As a result, many recommendations that we would have made are already in the process of being implemented. Accordingly, while we document in the Report many of the significant corrective measures the Company has taken, we do not make significant additional recommendations.

Our factual findings and conclusions focus on management's intent and motive with respect to the transactions we reviewed. Paul, Weiss's mandate, however, did not include determining whether any of the conduct we reviewed constituted a violation of law or breach of professional standards or whether the Company may properly assert legal claims against any individuals or entities.[6] We leave to others the task of determining the consequences that should flow from our factual findings.

---

[4] The SRC also specifically asked Paul, Weiss to review allegations made by a former-employee, Roger Barnes, including how the Company addressed Barnes's allegations, and any other matters raised anonymously by employees and former employees.

[5] As detailed further in Chapter II of the Report, our document review is ongoing. As recently as February 16, 2006, the Company brought to our attention the existence of new materials that could be relevant to our investigation. If necessary after reviewing all of the materials produced by the Company, we will supplement our findings and conclusions in this Report.

[6] For example, while the SRC was initially formed in January 2004 in response to a shareholder demand letter, we were not retained until September 2004 and were not

As with any private investigation, we relied on the voluntary cooperation of the Company, its employees (both current and former), and its agents. We did not have the power to compel testimony or production of documents. While we received good cooperation from the Company and its current employees, counsel and auditors, we were not able to interview certain former employees. Most significantly, Timothy Howard, a former Vice Chairman, Chief Financial Officer, and member of Fannie Mae's Board, declined our repeated requests for interviews. Similarly, Leanne G. Spencer, a former Senior Vice President and Controller, cooperated with our investigation during its early stages but declined further interviews after we became aware of a critical document in her files, which Spencer had failed to produce in response to Paul, Weiss's document requests to the Company.

Finally, under the SRC's direction, we cooperated fully with the United States Department of Justice ("DOJ"), the Securities and Exchange Commission ("SEC"), OFHEO, and the Public Company Accounting Oversight Board ("PCAOB"). Almost immediately after our retention, beginning in October 2004, we met with and regularly briefed the regulatory agencies on the progress of our investigation.

## II.    SUMMARY OF FINDINGS

The Company, under the Board's direction and with OFHEO's input, has undergone an extensive transformation both in personnel and structure since September 2004. Since that time, as we observe in the Chapter describing Corporate Governance and Internal Controls, there has been a dramatic shift in both the "tone at the top" and the Company's internal organization. During the course of our investigation, we communicated our findings to the SRC and the full Board, and the Company has not waited for the issuance of the PW Report before making necessary changes. As a result, (1) the Company has disclosed the principal problematic accounting issues that are the subject of this Report,[7] (2) no member of management who we found knowingly participated in improper conduct continues to be an employee of the Company, and (3) as noted above, our suggestions for changes in corporate governance either have been implemented or are underway.

We summarize below our principal conclusions about the Company's accounting practices, internal controls, and corporate governance and structure prior to 2005. We next summarize in detail each of the accounting issues and the related findings

---

asked to address the demand letter. We understand that the SRC and the Board are ably represented by other counsel in connection with the demand letter and with respect to pending civil actions, and it was not our role to advise the SRC or the Board in such matters.

[7]    As noted above, management and its current outside auditor are engaged in a restatement effort that involves a detailed review of all of the Company's accounting policies and practices. This process could result in additional matters being identified that are not addressed in this Report.

3