UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **In Re Fannie Mae Securities Litigation** | Consolidated Civil Action<br>No. 1:04-cv-1639 (RJL) |
| **Evergreen Equity Trust,** *et al.,* **v. Federal National Mortgage Association,** *et al.* | Case No. 1:06-cv-00082 (RJL) |
| **and** | |
| **Franklin Managed Trust,** *et al.* **v. Federal National Mortgage Association,** *et al.* | Case No. 1:06-cv-00139 (RJL) |

**SECOND SUPPLEMENTAL MEMORANDUM OF
RADIAN GUARANTY INC. IN SUPPORT OF ITS
MOTION TO DISMISS**

In their supplemental submission filed on March 15, 2007, the Evergreen and Franklin plaintiffs erroneously assert that this case "involve[es] very similar allegations" to those in *In re AIG Securities Litigation,* currently pending before Judge Sprizzo in the United States District Court for the Southern District of New York. *See* Pls' Supp. at 22. To support this erroneous assertion, the E&F plaintiffs' attached to their supplemental submission a transcript of an April 2006 argument before Judge Sprizzo, which they mistakenly contend supports denial of Radian's motion to dismiss. The transcript on its face shows no similarities to this case. Moreover, the *AIG* complaint, which the E&F plaintiffs did not provide, demonstrates all the more that the material allegations in *AIG* have no resemblance to the allegations here.[1]

---

[1]   Relevant excerpts from the *AIG* complaint are attached as Exhibit B.

According to the *AIG* plaintiffs' complaint, AIG and General Re explicitly agreed to concoct and improperly account for a fictional transaction to fend off rumors in the investment community that AIG had dipped into its claims reserve to boost earnings per share.  *See AIG* compl. ¶¶ 336-341.  The fictional transaction was alleged t artificially o have increased AIG's loss reserves by falsely reciting that General Re had made two payments of $250 million each to AIG, when actually no money had changed hands.  *Id.* ¶¶ 391-92, 404, 430.  The *AIG* plaintiffs alleged that General Re had meetings with AIG in which the two companies agreed that General Re would account for the fictional transaction as a deposit (*i.e.,* a loan to AIG) but AIG would account for it as reinsurance.  *Id.* ¶ 408.  As a result, AIG recorded $500 million in additional insurance reserves when, had the transaction been legitimate, it should have been recorded as an additional $500 million liability (a debt to General Re).  *Id.* ¶ 435.  The net effect was that AIG claimed increases in its reserves in two consecutive quarters when in reality it had a substantial decrease.  *Id.* ¶ 442.

The E&F plaintiffs made no similar allegations against Radian.  First, **the E&F plaintiffs did not -- and cannot -- allege a fictional transaction**:  the E&F plaintiffs conceded that Fannie Mae *paid* Radian $35 million in 2002, and that Radian thereafter *paid* $39 million in claims to cover actual defaulted loans.  Thus, *whatever* accounting treatment is applied to the Radian-Fannie Mae transaction -- insurance or loan -- there is no dispute it was a real transaction.

Second, **the E&F plaintiffs did not -- and cannot in good faith -- allege that Radian entered into the transaction with Fannie Mae for the purpose of influencing Fannie Mae's investment community.**

Third, ***the E&F plaintiffs never alleged that Radian agreed with Fannie Mae as to how it would account for the transaction or even that Radian knew how Fannie Mae accounted for the transaction***. The most the E&F plaintiffs alleged is that Radian knew that "the Transaction did not sufficiently transfer risk to qualify for accounting as insurance." Evergreen Complaint ¶ 249; Franklin Complaint ¶ 278. Radian's alleged knowledge that the transaction did not "qualify for insurance" is irrelevant unless Radian also knew that Fannie Mae would account for the transaction *as* insurance. Such an allegation, however, is not in the E&F plaintiffs' complaints.

Fourth and finally, unlike the plaintiffs in *AIG,* ***the E&F plaintiffs did not allege that Fannie Mae's alleged improper accounting of the transaction had any material impact on its financial statements***. Contrary to the E&F plaintiffs' assertions, the choice of accounting label -- insurance or loan -- by itself has no net financial statement impact. Indeed, Fannie Mae's November 2005 Form 12b-25, on which the E&F plaintiffs place so much emphasis in their complaints as a supposed Fannie Mae "admission" of wrongdoing, makes clear that Fannie Mae's recharacterization of the transaction as a loan to Radian "will have no cumulative impact on [its] results of operations or financial condition." *See* Form 12b-25, attached as Exhibit C, at 8.[2]

---

[2]  The Court properly may consider this filing because of the E&F plaintiffs' explicit reliance on it in the complaint." *See, e.g.*, *Arturi v. United States Office Prods. Co. (In re United States Office Prods. Co. Sec. Litig.)*, 251 F. Supp. 2d 58, 66-67 (D.D.C. 2003) ("While the court must generally limit its review to facts alleged within the complaint, the court may consider … documents that are both referenced in the complaint and central to the plaintiff's claim.") (*quoted in New York State Bar Ass'n v. F.T.C.*, 276 F. Supp. 2d 110, 114 n.6 (D.D.C. 2003)).

The E&F plaintiffs overlook this crucial fact because their argument here mistakenly *reverses* the debtor-creditor relationship between Radian and Fannie Mae under a loan treatment for the transaction, erroneously describing Radian as the *lender* rather than the borrower.  *See, e.g.,* Evergreen complaint ¶ 249 ("Radian knew or recklessly disregarded that *it was merely loaning money to Fannie Mae*") (emphasis added); Franklin complaint ¶ 278 (same). Contrary to the E&F plaintiffs' allegations, SFAS 113 makes clear that, if an insurance contract does not transfer sufficient risk, the insur*ed* (Fannie Mae) is the "lender" and the insur*er* (Radian) the "borrower," not the other way round.  *See* SFAS 113 ¶ 18a.  Thus, under a loan treatment for the Radian-Fannie Mae transaction, what Fannie Mae previously had booked as a $35 million premium *expense* now may be booked as a $35 million *asset* (a loan to Radian). Because they fail to take into account the effect of booking this asset, the E&F plaintiffs never explain how accounting for the Radian-Fannie Mae transaction as a loan could have any net material impact on Fannie Mae's financial condition.  Without this essential element, the E&F plaintiffs' claims against Radian fail.

For these reasons, and those in its Initial Papers, Reply Memorandum and Supplemental Memorandum, Radian respectfully requests that its motion to dismiss be granted and that the Second Amended Complaints be dismissed with prejudice as against Radian.

Dated:                                             Respectfully submitted,

                                                   RADIAN GUARANTY INC.
                                                   By Counsel

SCHNADER HARRISON SEGAL & LEWIS LLP


By:  /s/ Jonathan M. Stern
        Jonathan M. Stern (DC Bar No. 412689)
Suite 300
2001 Pennsylvania Avenue, NW
Washington, DC 20006-1825
Telephone: (202) 419-4200

Of Counsel:

David Smith
Jonathan S. Liss
Stephen A. Fogdall
Schnader Harrison Segal & Lewis LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103-7286
Telephone: (215) 751-2000