UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re Federal National Mortgage Association Securities, Derivative, and "ERISA" Litigation | ) ) ) ) ) ) | MDL No. 1668 |
| In re Fannie Mae Securities Litigation | ) ) ) ) ) | Consolidated Civil Action. No. 1:04-cv-1639 (RLJ) |

**LEAD PLAINTIFFS' RESPONSE TO DEFENDANT FANNIE MAE'S NOTICE OF SUPPLEMENTAL AUTHORITY**

In its Notice of Supplemental Authority ("Notice"), Defendant Fannie Mae calls this Court's attention to the Fifth Circuit majority's[1] recent holding in *Oscar Private Equity Invs. v. Allegiance Telecom., Inc.*, No. 05-10791, 2007 WL 1430225 (5th Cir. May 16, 2007) that plaintiff must establish loss causation to trigger the fraud-on-the-market presumption. Fannie Mae claims that *Oscar* represents "new authority" that makes it "unclear whether [the Ohio Public Employees Retirement System and State Teachers Retirement System of Ohio (collectively, "Lead Plaintiffs")] can meet their burden for certification of any class action." Notice at 1-2.

As an initial matter, *Oscar* is a Fifth Circuit case, and therefore is not binding authority on this Court.[2] Moreover, as set forth below, *Oscar* is a radical departure from existing law and

---

[1] *Oscar* was not a unanimous decision; Judges Jolly and Higginbotham wrote the majority opinion while Judge Dennis dissented. *See Oscar*, 2007 WL 1430225 at *1.

[2] *See, e.g., Schnitzer v. Harvey*, 389 F.3d 200, 203 (D.C. Cir. 2004) (noting that "[o]ur sister circuit's precedent … [is] not binding"); *Northwest Forest Resource Council v. Dombeck*, 107 F.3d 897, 900 (D.C. Cir. 1997) (noting that the District Court of the District of Columbia was not bound by a Western District of Washington decision, and stating that "the court of appeals in one circuit owes no obedience to decision of a court of appeals in another circuit … The district courts like the courts of appeals, owe no obedience to the decisions of their counters in other districts,

would require plaintiffs to establish a substantive element of their 10b-5 claim before a class could be certified. *Oscar* is now completely at odds with well-established Supreme Court precedent. As such, *Oscar* is inapplicable and should not be followed by this Court.

### I.   *Oscar* Conflicts With Established Supreme Court and Federal Circuit Precedent

*Oscar* holds that, to trigger the fraud-on-the-market presumption set forth in *Basic v. Levinson*, 485 U.S. 224, 244-247 (1988), securities class action plaintiffs must "establish loss causation." 2007 WL 1430225 at *2-3. Thus, under the majority opinion in *Oscar*, entitlement to the fraud-on-the-market presumption requires "more than proof of a material misstatement; [it] now require[s] proof that the misstatement *actually moved* the market." *Id.* at *3.

The Fifth Circuit's decision, however, is completely at odds with established and binding Supreme Court precedent as set forth in *Basic,* 485 U.S. 224 and *Eisen v. Carlisle & Jacqulin*, 417 U.S. 156 (1982). The underpinning of the Fifth Circuit's decision is "[t]he assumption that every material misrepresentation will move a stock in an efficient market is unfounded . . ." *Id* at 17. This is directly contrary to the Supreme Court's decision in *Basic* which holds that "[i]ndeed, nearly every court that has considered the proposition has concluded that where materially misleading statements have been disseminated into an impersonal, well-developed market for securities, the reliance of individual plaintiffs on the integrity of the market price may be presumed. . . . *Because most publicly available information is reflected in market price*, an investor's reliance on any public material misrepresentations, therefore may be presumed for purposes of a Rule 10b-5 action." *Basic*, 485 U.S. at 247. (emphasis added.)[3]

---

nor to the decisions of the courts of appeals in other circuits.") (quoting IB James WM. Moore, et. al., Moore's Federal Practice ¶ 0.401 (2d ed.1996)).

[3] As discussed, *Oscar* improperly conflates the "loss causation" requirement: that a decline in the stock price caused the stock purchaser's economic loss – with reliance: that the court may presume that the stock purchaser relied on

Thus, *Oscar* attempts to overturn *Basic* by holding that a material misrepresentation in an efficient market will not affect the stock price unless otherwise established by a preponderance of the evidence by the plaintiff. Tellingly, *Oscar* cites no authority for its sweeping re-write of *Basic*.[4]

The *Oscar* majority also improperly attempts to support its holding by claiming that *Basic* "allows each of the circuits room to develop its own fraud-on-the-market rules". *Oscar*, 2007 WL 1430225 at *2-3 (citing *Abell v. Potomac Ins. Co.*, 858 F.2d 1104, 1117-1118 (5th Cir. 1988) (vacated on other grounds)). *Basic*, however, says no such thing. The Supreme Court in *Basic* never held that federal courts may shift the burden of proof to securities class action plaintiffs and require them to prove a fundamental element of Rule 10b-5 claims, loss causation, at the class certification stage. In fact, as Judge Dennis states in his dissent in *Oscar*, *Basic* "made it plain that the defendant bears the burden of establishing that the presumption should not apply:"

> Any showing that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price, will be sufficient to rebut the presumption of reliance. For example, if *[defendants] could show* that the "market makers" were privy to the truth about the merger discussions … and thus that the market price would not have been affected by their misrepresentations, the causal connection could be broken …

*Oscar*, 2007 WL 1430225 at *10-11 (Dennis, J. dissenting) (quoting *Basic*, 485 U.S. at 248-249) (emphasis added in original)).

---

the integrity of the market price which incorporated the misrepresentation into the stock price at the time of the purchase.

[4] *Oscar* cites a single Stanford Law Review article that is more than 17 years old for the proposition that "the market price of a security will not be uniformly efficient as to all types of information" as its only support. Yet, whether all types of information will affect all market prices in the same way is a far cry from declaring that material misrepresentations will not effect stock prices in an efficient market. 2007 WL 1430225 at *7, n. 43.

The *Oscar* majority additionally claims that district courts often "misread" *Eisen*, "tread[ing] too lightly on Rule 23 requirements that overlap with the 10b-5 merits, out of a mistaken belief that merits questions may never be addressed at the certification stage". *Oscar*, 2007 WL 1430225 at *5. Reasoning that, as part of a Fed. R. Civ. Pro. Rule 23 determination, courts must fully assess all "indicators" of fraud-on-the-market, including loss causation, the *Oscar* majority concluded that "loss causation must be established at the class certification stage by a preponderance of all admissible evidence." *Id.* at *6. Loss causation, however, is a substantive element of a Rule 10b-5 claim. *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 341-342 (U.S. 2005). The *Oscar* majority's holding that a plaintiff must establish a substantive element of their claim – on the merits – before a class can be certified directly conflicts with *Eisen*. In other words, *Oscar* holds that before a class can be certified a plaintiff must prove that they have recoverable damages. *Eisen* clearly states, however, that "nothing in either the language or the history of Rule 23 … gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action. *Eisen*, 417 U.S. at 177-178.

Consequently, for this Court to follow *Oscar*, it would have to choose to disregard well established holdings of the Supreme Court.

> **A.**   ***Oscar* Additionally Conflicts With Established District of Columbia Circuit Court And Other Federal Circuit Caselaw, Including Fifth Circuit Caselaw**

The majority opinion in *Oscar* also conflicts with the established precedent of the District of Columbia Circuit Court, which endorses the fraud-on-the-market doctrine as set forth in *Basic*. *See In re Baan Co. Sec. Litig.,* 103 F.Supp.2d 1, 10 (D.D.C. 2000) (citing to *Basic*'s description of the "fraud-on-the-market" doctrine); *In re Newbridge Networks Securities*

4

*Litigation*, 767 F.Supp. 275, 283 (D.D.C. 1991) (citing to *Basic*, and stating that "[u]nder the fraud-on-the-market theory plaintiffs have the benefit of a presumption that they indirectly relied on the alleged misstatement by relying on the integrity of the stock price established by the market.") (citation omitted).

The *Oscar* majority decision further "creates a conflict with the decisions of other circuits". 2007 WL 1430225 at *15-16 (Dennis, J. dissenting) (noting the majority decision conflicts with decisions from, at least, the Second, Fourth and Seventh Circuits). *See, e.g., In re Initial Pub. Offering Sec. Litig.,* 471 F.3d 24, 41-42 (2d Cir. 2006); *Gariety v. Grant Thornton, LLP,* 368, F.3d 356, 366 (4th Cir. 2004); and *Szabo v. Bridgeport Mach., Inc.,* 249 F.3d 672, 677 (7th Cir. 2001) ("A court may not say something like … 'I'm not going to certify a class unless I think the plaintiffs will prevail).[5]

Finally, *Oscar* contradicts the Fifth Circuit's **own** Fed. R. Civ. Pro. 23 caselaw. In *Unger v. Amedisys Inc.,* the Fifth Circuit recognized that, although district courts must conduct a "rigorous analysis" of the Rule 23 requirements, "[c]lass certification hearings should not be mini-trials on the merits of the class or individual claims." 401 F.3d 316, 320-321 (5th Cir. 2005) (citing *General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 161 (1982) and *Eisen*, 417 U.S. at 177)).

---

[5] *Oscar* also conflicts with First and Third Circuit caselaw. *See In re PolyMedica Corp. Sec. Litig.,* 432 F.3d 1, 3-4 (1st Cir. 2005) ("The fraud on the market theory of reliance … creates only a presumption, which a defendant may rebut by raising any defense to actual reliance."); and *Semerenko v. Cendant Corp.,* 223 F.3d 165, 179 (3rd Cir. 2000) (same). *See also In re Ribozyme Pharmaceuticals, Inc. Securities Litigation*, 205 F.R.D. 572, 577 (D.Colo. 2001) (stating that, although courts may "analyze the substantive claims and defenses of the parties" to determine whether the Rule 23 requirements have been met, "[t]here is a distinction … between identifying the issues that the case will present for purposes of determining whether the requirements of Rule 23 have been met and deciding those issues on the merits.").

5

II. **The *Oscar* Majority's Holding Is Further Undercut By *Dura Pharmaceuticals, Inc. v. Broudo***

The Supreme Court's recent decision in *Dura Pharmaceuticals, Inc. v. Broudo* undercuts the majority's opinion in *Oscar* in several key ways. While the *Oscar* majority distorted and ultimately ignored the binding Supreme Court precedent in *Basic*, *see Oscar,* WL 2007 14300225 at *2-3, *Dura* reaffirmed *Basic*'s articulation of the fraud-on-the-market presumption. *See Dura*, 544 U.S. at 341-342 (citing to *Basic's* presumption that "the price of a publicly traded share reflects a material misrepresentation that plaintiffs have relied upon that misrepresentation as long as they would not have bought the share in its absence."). Also, *Oscar* conflated two separate elements of a Section 10(b) cause of action, reliance and loss causation. *Dura*, in contrast, explicitly recognized that reliance and loss causation are two distinct elements of a private securities action and that the fraud-on-the-market presumption relates **only** to reliance. 544 U.S. at 341-342 (setting forth reliance and loss causation as separate and distinct elements of a private securities action).

In light of the radical differences between the extreme position taken in *Oscar* and virtually all the rest of the applicable federal caselaw, *Oscar*

> is an unjustified revision of securities class action procedure …. [and] incorrectly deprives plaintiffs of both the benefit of the fraud-on-the-market presumption … and inexplicably requires them to prove the separate element of loss causation at the class certification stage.

*Oscar,* 2007 WL 1430225 at *17 (Dennis, J. dissenting). As Judge Dennis stated in his dissent, the Fifth Circuit "do[es] not … [have] the authority to overrule the Supreme Court's decisions or to change the recognized elements of a Section 10(b) claim". *Id.* at *15 (Dennis, J. dissenting). The majority opinion in *Oscar* thus provides no persuasive authority for this Court's class certification decision.

**III.         Even If *Oscar* Is Controlling, Lead Plaintiffs Have Demonstrated That The Class Period Should Extend To September 27, 2005**

Assuming *arguendo* that *Oscar* is controlling, Lead Plaintiffs have nevertheless demonstrated that even under that tortured reading of the law, the class period should end on September 27, 2005.[6]

During the period from Fannie Mae's December 22, 2004 warning against reliance on its financial statements to the September 27, 2005 news that investigators had uncovered "new and pervasive accounting violations", additional information about the scope and magnitude of the fraud at Fannie Mae was regularly disclosed. *See* Declaration of Lead Plaintiffs' Expert, Michael J. Barclay, at ¶¶ 35-56 (outlining each of the statistically significant disclosures which revealed additional information about the extent and impact of the fraud at Fannie Mae). Price movements in Fannie Mae's stock during that period reflected the reactions to those disclosures of investors who continued to rely on the Company's financial statements, and not, as Fannie Mae asserts, "confounding events". *See* Notice at 2.

The recently approved Securities and Exchange Commission "Fair Fund" Distribution Plan ("Distribution Plan") supports this view: the Distribution Plan concluded that the artificial inflation due to Fannie Mae's fraudulent misrepresentations was not eliminated from Fannie's stock price until September 27, 2005.

Lead Plaintiffs' argument is also supported by Fannie Mae's expert, who opines that the uncertainty in Fannie Mae's stock price was removed following the September 27, 2005 press reports. *See, e.g.*, Fannie Mae Defendants' expert, Dr. Dunbar, Decl. ¶ 11 ("Much of the

---

[6] The facts of *Oscar* are distinguished from the facts at bar. In *Oscar*, a press release that ended the class period disclosed four facts to the market and the majority required the plaintiff to establish by a preponderance of the evidence that one of the facts that revealed the fraud caused the drop in the stock price. Here, there is no such issue. The question here is not whether a particular fact caused Fannie Mae's stock price to decline but, instead, whether the class period should extend to coincide with the date when the artificial inflation was finally removed from the stock price.

uncertainty about Fannie Mae was not resolved until after September 27, 2005."). Lead Plaintiffs' expert reached a similar conclusion. Barclay Decl. ¶¶ 2(b), 50-56 (confirming that the September 27, 2005 disclosures removed the uncertainty and the artificial inflation in Fannie Mae's stock price). Thus, all of the evidence before the Court establishes that Fannie Mae's stock price remained artificially inflated until September 27, 2005.

Moreover, the market reaction to the full and final revelation of Fannie Mae's fraud on September 27, 2005 is evidence of the causal connection between Fannie's material misrepresentation and the loss alleged in Plaintiffs' Complaint, *i.e.*, the proof of loss causation that *Oscar* demands. *See Dura*, 544 U.S. at 341-342. Fannie Mae's stock price plummeted $4.99 per share, or 11%, from $46.70 on September 27, 2005 to $41.71 on September 28, 2005. Only after this final revelation did the uncertainty surrounding Fannie Mae's valuation, and the inflation in the price of Fannie Mae securities, finally leave the market.

Accordingly, even under the *Oscar* rationale, the class may properly rely on the fraud-on-the-market presumption up to September 27, 2005—the date the truth had completely entered the market and investors were fully and finally aware of the fraud's scope.[7]

---

[7] Lead Plaintiffs also have already provided far more evidence of loss causation than did the plaintiffs in *Oscar*. In *Oscar*, the majority specified that the plaintiffs' expert offered only "the raw opinion of analysts" to support the plaintiffs' position, and failed to include a supporting study of the relevant market quantifying the portion of the stock price decline caused by the disclosure. 2007 WL 1430225 at *8. As such, the Oscar majority stated, the plaintiffs failed to provide sufficient evidence linking the decline in the defendant company's stock to the "culpable disclosure". *Id.* Conversely, here Lead Plaintiffs' expert has offered an extensive analysis of loss causation in his previously filed Declaration In Support Of The Lead Plaintiffs' Motion for Class Certification.

Date: June 15, 2007	Respectfully submitted,

ATTORNEY GENERAL OF OHIO
MARC DANN

WAITE, SCHNEIDER, BAYLESS
& CHESLEY CO., L.P.A.
s/ Stanley M. Chesley
Stanley M. Chesley
s/ James R. Cummins
James R. Cummins (D.C. Bar #OH0010)
Melanie S. Corwin
1513 Fourth & Vine Tower
One West Fourth Street
Cincinnati, Ohio 45202
Telephone: (513) 621-0267
Facsimile: (513) 621-0262
E-mail: jcummins@wsbclaw.com
*Special Counsel for the Attorney General of Ohio
and Lead Counsel for Lead Plaintiffs*

BERMAN DEVALERIO PEASE TABACCO BURT & PUCILLO

s/Jeffrey C. Block
Jeffrey C. Block
Glen DeValerio
Kathleen M. Donovan-Maher
Julie A. Richmond
Joseph A. Merschman
Autumn Smith
One Liberty Square
Boston, MA 02109
Telephone: (617) 542-8300
Facsimile: (617) 542-1194
E-mail: jblock@bermanesq.com
*Co-Lead Counsel for Lead Plaintiffs*

                                                COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.
                                                s/ Daniel S. Sommers
                                                Steven J. Toll (DC Bar #225623)
                                                Daniel S. Sommers (DC Bar #416549)
                                                Matthew K. Handley (DC Bar #489946)
                                                1100 New York Avenue, N.W.
                                                Washington, D.C.  20005
                                                Telephone:  (202) 408-4600
                                                Facsimile:  (202) 408-4699
                                                E-mail:  stoll@cmht.com
                                                *Local Counsel for Lead Plaintiffs*

OF COUNSEL:

BARRETT & WEBER L.P.A.

C. Francis Barrett (0022371)
Suite 500, 105 East Fourth Street
Cincinnati, Ohio  45202
Telephone: (513) 721-2120
Facsimile: (513) 721-2139
E-mail:  cfbarrett@barrettweber.com
*Special Counsel for the Attorney General Of Ohio*

STATMAN, HARRIS, SIEGEL
  & EYRICH, LLC
Alan J. Statman (0012045)
Jeffrey P. Harris (0023006)
441 Vine Street
3700 Carew Tower
Cincinnati, Ohio  45202-2912
Telephone:  (513) 621-2666
Facsimile:  (513) 587-4477
E-mail:  ajstatman@shselegal.com
E-mail:  jharris@shselegal.com