McGuireWoods LLP
Washington Square
1050 Connecticut Avenue, N.W.
Suite 1200
Washington, DC 20036-5317
Phone: 202.857.1700
Fax: 202.857.1737
www.mcguirewoods.com

C. Simon Davidson
Direct: 202.857.1715

# McGuireWoods

cdavidson@mcguirewoods.com
Direct Fax: 202.828.2962

October 5, 2007

<u>Via Hand-Delivery</u>
Scott B. Schreiber
Arnold & Porter LLP
555 Twelfth Street, N.W.
Washington, D.C. 20004-1206

Re: *In re Fannie Mae Securities Litigation*, No. 1:04-cv-1639 (D.D.C.)

Dear Scott,

Thank you for your call yesterday. I understand that you are traveling this week and therefore unable to discuss D&T's production, but that you will be available for a call next Tuesday at 10 a.m.. We look forward to discussing D&T's production with you at that time.

To facilitate that discussion, I wanted to reiterate the request for information that we made in our September 24, 2007 letter. Please note that we are *not* requesting that D&T identify which documents are responsive to each request. Rather, for each request, we simply need to know whether D&T is producing all responsive documents. To that end, for each request, please state whether: (1) D&T has already produced all responsive documents; (2) D&T has not yet produced all responsive documents, but intends to do so; or (3) D&T has not yet produced all responsive documents and does not intend to do so on the basis of its objections (and specify which objections). Without this basic information, it will be difficult to have meaningful discussions regarding D&T's production and its objections. In the event that it will facilitate your review of our requests, I am enclosing a document that illustrates the differences between our requests and the requests D&T has previously received from Lead Plaintiff and Franklin Raines.

In addition, please confirm that D&T has begun gathering and processing documents in response to our requests. It has been a full seven weeks since D&T received our subpoena and, despite our requests, D&T has yet to provide this confirmation. As you know, there are ongoing depositions in this litigation, and KPMG needs the documents it has requested from D&T as soon as possible in order to prepare for those depositions.

Please let me know if you have any questions. I look forward to speaking with you on Tuesday.

Sincerely,

C. Simon Davidson

Enclosure
Cc: Charles Wm. McIntyre


EXHIBIT F

## KPMG SDT to D&T
### Substantive Changes/Additions to Lead Plaintiff's or Raines' SDTs

The requests listed below are those that are substantively different from the requests previously served upon D&T by Lead Plaintiff or Raines or were added by KPMG to its subpoena to D&T. The bold type indicates either edits or additions to the previously served subpoenas.

As you know, "MLPR No." means Modified Lead Plaintiff Request and refers to Lead Plaintiff's Subpoena Duces Tecum to Deloitte & Touche USA LLP, *In re Fannie Mae Securities Litigation*, No. 1:04-cv-1639, United States District Court for the District of Columbia, Apr. 7, 2006, as modified by KPMG. "MRR No." means Modified Raines Request and refers to the Franklin D. Raines Subpoena Duces Tecum to Deloitte & Touche USA LLP, *In re Fannie Mae Securities Litigation*, No. 1:04-cv-1639, United States District Court for the District of Columbia, Sept. 28, 2006, as modified by KPMG.

6. All documents concerning **Communications** between or among Deloitte & Touche, OFHEO, **KPMG** and/or Fannie Mae regarding OFHEO's Special Examination of Fannie Mae. **(MRR No. 6)**.

11. All documents concerning any fees, payments or other compensation received by Deloitte & Touche for services provided **to Fannie Mae, including but not limited to fees for audit services and fees for consulting services.** (MRR No. 11).

12. All documents concerning Communications between or among Deloitte & Touche, OFHEO, **KPMG** and/or Fannie Mae regarding services provided by Deloitte & Touche as Fannie Mae's independent auditor, including any services provided in connection with Fannie Mae's **Restatement**. **(MRR No. 12)**.

13. **All documents concerning** Fannie Mae's dismissal, proposed dismissal or contemplated dismissal of KPMG as Fannie Mae's independent auditor. **(MRR No. 13)**.

15. All manuals, guidelines, policies, directives, or similar statements, drafted, reviewed, relied upon or otherwise used by Deloitte & Touche, **regardless of date**, concerning **SFAS 133 including but not limited to exposure drafts, comment letters on the exposure drafts, draft and actual amendments to the standards and proposed or actual interpretations issued by the Derivatives Implementation Group ("DIG") or other authoritative accounting bodies.** (MRR No. 15).

16. All manuals, guidelines, policies, directives or similar statements, drafted, reviewed, relied upon or otherwise used by Deloitte & Touche, **regardless of date**, concerning **SFAS** 91. **(MRR No. 16)**.

24. All documents, **regardless of date**, concerning Fannie Mae that **Deloitte & Touche** created, received or reviewed in connection with its work on the Government Investigation. **(MLPR No. 8)**.

27. All documents concerning **Communications** between **Deloitte & Touche** and KPMG concerning Fannie Mae, the Government Investigation, the Rudman

Investigation or any **engagement to provide professional services of any kind to Fannie Mae by either KPMG or Deloitte & Touche. (MLPR No. 11).**

29. All documents, regardless of date, made available or provided by **Deloitte & Touche** or on **its** behalf in connection with any civil litigation initiated against Fannie Mae, **KPMG,** or any of the Individual Defendants **concerning** the Restatement or any of the activities, policies or procedures at issue in the Restatement. **(MLPR No. 13).**

32. **All documents concerning any engagement to provide professional services to Fannie Mae, including, but not limited to:**

    (a) working papers, including, but not limited to all planning documentation, audit programs or other documents concerning the procedures used in any engagement to provide professional services to Fannie Mae, including any additions, deletions, substitutions or amendments thereto and the reason for any such additions, deletions, substitutions or amendments, as well as an index and legend that describe the referencing system and abbreviations used in the working papers;

    (b) management letters or representations concerning Fannie Mae's internal controls or any other matter;

    (c) charts of accounts with a description of the use of each account;

    (d) point sheets, findings, memoranda or any other Communications that highlight or analyze points that arose during any engagement to provide professional services to Fannie Mae;

    (e) schedules or listings of adjusting entries, both proposed and accepted;

    (f) calendar or diary entries concerning any engagement to provide professional services to Fannie Mae;

    (g) memoranda that summarize, review or analyze specific problems or areas of any engagement to provide professional services to Fannie Mae; and

    (h) review notes or memoranda, quality control review notes or memoranda, and any other document concerning the evaluation of any engagement to provide professional services to Fannie Mae.

**(MLPR No. 16).**

33. All documents concerning any proposed, contemplated or implemented change in Fannie Mae's accounting practices, policies, or procedures, whether or not recommended by **Deloitte & Touche,** including, but not limited to memoranda, correspondence or other documents prepared by **either Fannie Mae's or Deloitte & Touche's firm-designated experts and/or national or global office personnel. (MLPR No. 18).**

34. All documents, **including but not limited to internal control questionnaires and evaluations,** concerning Fannie Mae's internal controls, including but not limited to: segregation of duties; key person dependencies; the maintenance of,

2

or failure to maintain, audit trails, written procedures and required documentation; procedures for preparing, reviewing, validating, authorizing and recording journal entries related to amortization adjustment; reliance on software applications and systems for portfolio accounting; controls concerning database modifications a/k/a "DB mods"; and controls concerning the falsification of signatures. **(MLPR No. 21).**

36. **All documents concerning exceptions to (approved or not approved) or KPMG's compliance or alleged non-compliance with, KPMG's stated auditing practices, policies or procedures, GAAS or any other auditing, accounting or professional standard.**

37. All documents, from June 1, 1998 through the present, concerning Communications between **Deloitte & Touche** and Fannie Mae concerning any **engagement for professional services**, including, but not limited to, **Communications** with the Audit Committee of Fannie Mae's Board of Directors or any individual members thereof. **(MLPR No. 23).**

38. **All documents concerning the employees, including but not limited to the quantity or quality of employees, in any department of Fannie Mae, including but not limited to its financial reporting, accounting, internal audit and controller departments. (MLPR No. 24).**

40. **All financial statements and restated financial statements of Fannie Mae, including but not limited to all drafts, accompanying footnotes, exhibits and auditor's reports or opinions. (MLPR No. 26).**

42. **All documents concerning accounting differences, disagreements or disputes between or among Deloitte & Touche, KPMG, PricewaterhouseCoopers, Ernst & Young and/or any other accounting firm regarding Fannie Mae's accounting practices, policies, or procedures, internal controls, financial statements or results of the Restatement.**

49. All documents and **Communications**, regardless of date, concerning Fannie Mae's development, implementation and application of SFAS 133, *Accounting for Derivative Instruments and Hedging Activities*, SFAS 138, *Accounting for Certain Derivative Instruments and Certain Hedging Activities*, and Amendment of Statement No. 133, and SFAS 149, Amendments of Statement 133 on Derivative Instruments and Hedging Activities **including but not limited to exposure drafts, comment letters on the exposure drafts, draft and actual amendments to the standards and proposed or actual interpretations issued by the DIG or other authoritative accounting bodies. (MLPR No. 19).**

50. All documents and **Communications, regardless of date**, concerning Fannie Mae's use of and accounting for derivative and hedge transactions, including, but not limited to documents concerning (i) perfect hedges, (ii) effective hedges, (iii) ineffective hedges, (iv) the Fannie Mae carve-out, (v) term-outs, (vi) relinkage, (vii) redesignations, (viii) swaptions, (ix) hedge documentations, (x) match terms accounting, (xi) derivatives having a fair value equal to zero at the inception of the hedge relationship, (xii) time value of options, (xiii) seven day test, (ixx) duration matching, and (xx) de-minimus test. **(MLPR No. 20).**

3

51. All documents, **regardless of date**, concerning Fannie Mae's implementation and application of SFAS 91, *Accounting for Nonrefundable Fees and Costs Associated with Originating or Acquiring Loans and Initial Direct Costs of Leases.* **(MLPR No. 34).**

52. All documents concerning **Fannie Mae's**: (i) amortization of purchase premiums and discounts on securities and loans; (ii) amortization of other deferred charges; (iii) accounting treatment of Real Estate Mortgage Investment Conduit securities; (iv) deferral of $200 million of estimated expense in 1998 related to fluctuations in the rate of prepayment of mortgages or other loans; (v) calculation known as "catch-up"; (vi) premium discount amortization audit differences; (vii) "on-top" and other discretionary adjustments to Fannie Mae's general ledger, accounting results or financial statements; (viii) deferred price adjustments and deferred price amortization; (ix) "cushion," "warchest," "piggybank," or "cookie jar" reserves; (x) capitalization and amortization of reconciliation differences a/k/a "realignments"; (xi) thresholds of recognizing, not recognizing or deferring amortization income or expense; (xii) modeling or the modeling of multiple sensitivity runs; and/or (xiii) amortization factor anomalies. **(MLPR No. 35).**

60. All documents concerning Fannie Mae's use of and accounting for **interest** income and expense **based on a method other than** in accordance with the actual terms of the underlying instruments. **(MLPR No. 43).**

67. All documents concerning Fannie Mae's use of and accounting for **short-term investment securities ("STIS")** transactions. **(MLPR No. 50).**

72. All documents concerning **Fannie Mae's use** of debt repurchases to affect its earning per share for any period. **(MLPR No. 55).**

79. **All documents concerning Fannie Mae's accounting for real estate-owned and foreclosed property.**

80. **All documents concerning Fannie Mae's accounting for financial guaranties, including but not limited to the amortization of guaranty fee buy-downs, buy-ups and the valuation of guaranty assets and guaranty obligations.**

81. **All documents concerning the quantification of the impact of each item restated in Fannie Mae's Restatement.**

87. **All manuals, guidelines, policies, directives or similar statements, drafted, reviewed, relied upon or otherwise used by Deloitte & Touche concerning SFAS 115.**

88. **All manuals, guidelines, policies, directives or similar statements, drafted, reviewed, relied upon or otherwise used by Deloitte & Touche concerning SFAS 140.**

89. **All manuals, guidelines, policies, directives or similar statements, drafted, reviewed, relied upon or otherwise used by Deloitte & Touche concerning use of and accounting for dollar roll transactions.**

90. All manuals, guidelines, policies, directives or similar statements, drafted, reviewed, relied upon or otherwise used by Deloitte & Touche concerning SFAS 65.

91. All manuals, guidelines, policies, directives or similar statements, drafted, reviewed, relied upon or otherwise used by Deloitte & Touche concerning SFAS 114.

92. All manuals, guidelines, policies, directives or similar statements, drafted, reviewed, relied upon or otherwise used by Deloitte & Touche concerning the use of Special Purpose Entities to issue mortgage-backed securities.

93. All manuals, guidelines, policies, directives or similar statements, drafted, reviewed, relied upon or otherwise used by Deloitte & Touche concerning the recording of interest expense on short-term debt instruments and interest income on liquid investments.

94. All manuals, guidelines, policies, directives or similar statements, drafted, reviewed, relied upon or otherwise used by Deloitte & Touche concerning the use of and accounting for interest income and expense based upon a method other than in accordance with the actual terms of the underlying instruments.

95. All manuals, guidelines, policies, directives or similar statements, drafted, reviewed, relied upon or otherwise used by Deloitte & Touche concerning accounting for other-than-temporary impairment of manufactured housing bonds.

96. All manuals, guidelines, policies, directives or similar statements, drafted, reviewed, relied upon or otherwise used by Deloitte & Touche concerning accounting for other-than-temporary impairment of aircraft asset-backed securities.

97. All manuals, guidelines, policies, directives or similar statements, drafted, reviewed, relied upon or otherwise used by Deloitte & Touche concerning the use of and accounting for investments in interest-only mortgage-backed securities.

98. All manuals, guidelines, policies, directives or similar statements, drafted, reviewed, relied upon or otherwise used by Deloitte & Touche concerning the use of and accounting for securitization of wholly-owned mortgage-backed securities.

99. All manuals, guidelines, policies, directives or similar statements, drafted, reviewed, relied upon or otherwise used by Deloitte & Touche concerning the use of and accounting for income tax reserves, legal reserves, and all other reserves used by Fannie Mae.

100. All manuals, guidelines, policies, directives or similar statements, drafted, reviewed, relied upon or otherwise used by Deloitte & Touche concerning the use of and accounting for Synfuel tax-advantaged transactions.

101. All manuals, guidelines, policies, directives or similar statements, drafted, reviewed, relied upon or otherwise used by Deloitte & Touche concerning the use of and accounting for STIS transactions.

102. All manuals, guidelines, policies, directives or similar statements, drafted, reviewed, relied upon or otherwise used by Deloitte & Touche concerning the use of and accounting for insurance products.

103. All manuals, guidelines, policies, directives or similar statements, drafted, reviewed, relied upon or otherwise used by Deloitte & Touche concerning SFAS 113.

104. All manuals, guidelines, policies, directives or similar statements, drafted, reviewed, relied upon or otherwise used by Deloitte & Touche concerning SFAS 5.

105. All manuals, guidelines, policies, directives or similar statements, drafted, reviewed, relied upon or otherwise used by Deloitte & Touche concerning SFAS 109.

106. All manuals, guidelines, policies, directives or similar statements, drafted, reviewed, relied upon or otherwise used by Deloitte & Touche concerning the use of and accounting for out-of-portfolio securitization.

107. All manuals, guidelines, policies, directives or similar statements, drafted, reviewed, relied upon or otherwise used by Deloitte & Touche concerning the use of debt repurchases to affect earnings per share.

108. All manuals, guidelines, policies, directives or similar statements, drafted, reviewed, relied upon or otherwise used by Deloitte & Touche concerning the accounting for the amortization of callable debt expense, including, but not limited to treating callable debt and non-callable debt differently at the outset and end date amortization charges.

109. All manuals, guidelines, policies, directives or similar statements, drafted, reviewed, relied upon or otherwise used by Deloitte & Touche concerning APB 21.

110. All manuals, guidelines, policies, directives or similar statements, drafted, reviewed, relied upon or otherwise used by Deloitte & Touche concerning the accounting for realignments.

111. All manuals, guidelines, policies, directives or similar statements, drafted, reviewed, relied upon or otherwise used by Deloitte & Touche concerning APB 20.

112. All manuals, guidelines, policies, directives or similar statements, drafted, reviewed, relied upon or otherwise used by Deloitte & Touche concerning the use of and accounting for investments in affordable housing partnerships.

113. All manuals, guidelines, policies, directives or similar statements, drafted, reviewed, relied upon or otherwise used by Deloitte & Touche concerning the accounting for real estate-owned and foreclosed property.

114. All manuals, guidelines, policies, directives or similar statements, drafted, reviewed, relied upon or otherwise used by Deloitte & Touche concerning the accounting for financial guaranties, including but not limited to the amortization of guaranty fee buy-downs, buy-ups and the valuation of guaranty assets and guaranty obligations.

115. All documents concerning Deloitte & Touche's ability to be independent in the OFHEO investigation and as Fannie Mae's independent auditor, and all documents concerning any analyses regarding Deloitte & Touche's ability to participate in the OFHEO investigation and as Fannie Mae's independent auditor.

116. All PricewaterhouseCoopers and/or Ernst & Young documents reviewed or relied on by Deloitte & Touche during the course of its work for Fannie Mae on the Restatement or in the course of its work during the OFHEO investigation.

117. All documents concerning Deloitte & Touche's comments and/or analyses regarding revisions, either implemented or considered, to Fannie Mae's Derivatives Accounting Guidelines ("DAG").

118. All documents concerning KPMG's work for Fannie Mae.

119. All Communications between Deloitte & Touche, or anyone on its behalf, and any of the parties to this Litigation concerning the subject matter of the Litigation.

120. All Communications between Deloitte & Touche, or anyone on its behalf, and PricewaterhouseCoopers or Ernst & Young concerning the subject matter of the Litigation.

121. All Communications between Deloitte & Touche, or anyone on its behalf, and anyone concerning the subject matter of the Litigation.

122. All subpoenas duces tecum received by Deloitte & Touche in the Litigation.

123. All affidavits or opinion letters, including but not limited to drafts, Deloitte & Touche prepared or signed, or was asked to prepare or sign by Fannie Mae in connection with any professional accounting services provided as Fannie Mae's independent auditor, including any services provided in connection with Fannie Mae's Restatement.

124. All documents concerning any opinions of or analyses by Deloitte & Touche concerning KPMG's work for Fannie Mae.

125. All documents concerning any opinions of or analyses by PricewaterhouseCoopers, Huron and/or Ernst & Young concerning KPMG's work for Fannie Mae.

126. All documents concerning any opinions of or analyses by PricewaterhouseCoopers, Huron and/or Ernst & Young concerning Fannie Mae's accounting practices, policies, procedures, internal controls, financial statements or the Restatement.

127. All presentations by Deloitte & Touche to Fannie Mae's Board of Directors or Audit Committee.

128. All documents concerning the evaluation and/or acceptance of Fannie Mae as a Deloitte & Touche client.

129. All documents, including but not limited to manuals, guidelines, policies, directives or similar statements, drafted, reviewed, relied upon or otherwise used by Deloitte & Touche, regardless of date, concerning testing or calculating the effectiveness of a hedge pursuant to SFAS 133.

130. All documents concerning Investigation SID-04-0034-1 by the Special Investigation Division of the Office of Investigation of the Office of Inspector General.

131. All documents concerning the matters discussed in the October 5, 2004 Report of Investigation SID-04-0034-1.

132. All subpoenas duces tecum or other requests for production of documents Deloitte & Touche received from the Office of Inspector General, the Office of Investigation, the Special Investigation Division, the Department of Housing and Urban Development, or anyone else in connection with Investigation SID-04-0034-1 by the Special Investigation Division of the Office of Investigation of the Office of Inspector General.

133. All documents, regardless of date, Deloitte & Touche provided to the Office of Inspector General, the Office of Investigation, the Special Investigation Division, the Department of Housing and Urban Development, or anyone else in connection with Investigation SID-04-0034-1 by the Special Investigation Division of the Office of Investigation of the Office of Inspector General.

134. All documents sufficient to identify any person who has been interviewed by, deposed by or otherwise testified before the Office of Inspector General, the Office of Investigation, the Special Investigation Division, the Department of Housing and Urban Development, or anyone else in connection with Investigation SID-04-0034-1 by the Special Investigation Division of the Office of Investigation of the Office of Inspector General.

\4812406.1