**USE OF SPECIALISTS—U.S. FIRM**

**GENERAL INSTRUCTIONS**

This Form provides guidance to auditors who use the work of a specialist [i.e., a person (or firm) possessing special skill or knowledge in a particular field other than accounting or auditing] in performing an audit in accordance with generally accepted auditing standards. Examples of situations in which we might consider using a specialist include:

- Valuation (e.g., special-purpose inventories, high-technology materials or equipment, pharmaceutical products, precious gems, complex financial instruments, real estate appraisal, restricted securities, works of art, and environmental contingencies).

- Determination of physical characteristics relating to quantity on hand or condition (e.g., a quantity or condition of minerals, mineral reserves, or materials stored in stockpiles).

- Determination of amounts derived by using specialized techniques or methods (e.g., actuarial determinations for employee benefits obligations and disclosures, and determinations for insurance loss reserves).

- Interpretation of technical requirements, regulations, or agreements (e.g., the potential significance of contracts or other legal documents or legal title to property).

This Form can assist engagement teams in performing and documenting procedures related to using specialists in the following circumstances:

- The client engages or employs a specialist and we use that specialist's work as evidential matter in performing substantive tests to evaluate management's assertions in the financial statements.

- The client engages a specialist employed by the Firm to provide consulting services and we use that specialist's work as evidential matter in performing substantive tests to evaluate management's assertions in the financial statements. [See AAPMS GEN 320 (Section 600, Consulting, Bookkeeping, and Other Professional Services) for independence considerations.]

- The Firm engages a specialist and uses that specialist's work as evidential matter in performing substantive tests to evaluate management's assertions in the financial statements.

In completing this Form, engagement teams should refer to the following for discussion regarding the use of specialists:

- AAPMS AUD 4: Select the Engagement Team (AAPMS AUD P4.01, P4.03a-P4.03b, 4.01-4.02a, 4.26a-4.26s)

- AAPMS AUD 15: Plan Substantive Tests (AAPMS AUD P15.01, 15.103-15.118)

- AAPMS OSS 225: Introducing Clients to Third-Party Valuation Providers

- SAS 73, *Using the Work of a Specialist* (AU 336)

- SAS 57, *Auditing Accounting Estimates* (AU 342).



EXHIBIT L

Confidential Treatment Requested by Deloitte & Touche LLP,

ATTORNEYS' EYES ONLY

DELOITTE-FNMA-0966543

I. **GENERAL INFORMATION**

1. Audit area for which we plan to use a specialist:

   > Fair value of MBS

2. Name of specialist:

   > Jeff Green, Principal – Deloitte Capital Markets
   >
   > Steve Votaw, Sr. Manager – Deloitte Capital Markets
   >
   > George Colclough, Manager – Deloitte Capital Markets

3. Specialist's area of expertise:

   > Pricing MBS

4. Specialist's professional certification, license, or other recognition of competence:

   > Jeff Green – B.A., Econometrics, Brigham Young Univ.
   >            B.S., Operations Research, BYU
   >            M.B.A., Finance, BYU
   >
   > Steve Votaw – CFA
   >
   > George Colclough – Masters in Econometrics

5. Specialist's relevant experience:

   > Jeff Green – 10 years of trader and trading desk manager experience for various primary dealers in mortgage-backed securities and mortgage related derivative products prior to joining Freddie Mac. Director of Derivatives Management for Freddie Mac prior to 1998. Vice President of the Product Development/Financial Structures department of GE Mortgage Insurance Corporation 1998.
   >
   > Steve Votaw: Senior Portfolio Manager at Freddie Mac 1990-1998, Trader at Greenwich Capital 1998-2000, Bond salesman at several small dealers, 2001-2005
   >
   > George Colclough: 1994-1999 Fixed Income Quantitative Analyst -- First Union Capital Markets Group, 2000-2002 Fixed Income Analyst/ Assistant Portfolio Manager for MBS and ABS – Forward Capital, LLC, 2003-2005 MBS Portfolio Manager -- Euclid Financial Group, Inc.

6. Will a Firm specialist perform procedures in conjunction with our use of a non-Firm specialist?

   Yes X      No

Confidential Treatment Requested by Deloitte & Touche LLP,

ATTORNEYS' EYES ONLY

DELOITTE-FNMA-0966544

If yes, describe the nature of the Firm specialist's involvement on the engagement.

> The Firm specialist will assist the Audit team in all stages of the auditing of the FV of MBS. The internal fair value (IFV) specialists will assist in understanding and evaluating the Company's methodology for determining fair value. The IFV specialist will play an active role in evaluating the Company's methodologies when a quoted market price cannot be obtained by the Company. The IFV specialist will also assist in the development of an independent price for the purpose of testing Management's price.

## II. DETAIL AUDIT PROCEDURES

| | Performed By | Comments, References |
|---|---|---|
| **A. ASSESS QUALIFICATIONS OF SPECIALIST AND OBTAIN AN UNDERSTANDING OF THE NATURE OF THE SPECIALIST'S WORK**<br><br>1. Before relying on the work of specialists, we should assess their qualifications to determine whether they possess the necessary skill or knowledge. In performing this assessment, we should determine the following: | | |
| a. The specialist maintains appropriate professional certification, license, or other recognition of competence. | JL 07/08/2006 | The IFV specialists have extensive experience in pricing MBS. See the relevant experience section above. |
| b. The specialist has a positive reputation and standing among peers and others familiar with the area of expertise. | JL 07/08/2006 | The IFV specialists are favorably viewed by peers |
| c. The specialist has an appropriate amount of experience in the area under consideration. | JL 07/08/2006 | The IFV specialists have collectively over 30 years of experience in pricing MBS. |
| 2. We should obtain an understanding of the nature of the specialist's work by considering the following:<br>a. The objectives and scope of the specialist's work. | JL 07/08/2006 | The objectives and scope of the IFV specialists work have been established by the Audit Team. |

Confidential Treatment Requested by Deloitte & Touche LLP,

ATTORNEYS' EYES ONLY

DELOITTE-FNMA-0966545

|  | Performed By | Comments, References |
|---|---|---|
| b. The specialist's relationship with the client. | JL 07/08/2006 | The nature of the relationship between the Deloitte IFV Specialists and the client is independent. |
| c. The methods or assumptions used, and, if appropriate, their consistency with prior periods. | JL 07/08/2006 | As this is a first time audit and all of the periods (2001-2004) are being audited simultaneously, all methods and assumptions have been consistently applied. |
| d. The appropriateness of using the specialist's work as audit evidence. | JL 07/08/2006 | The IFV specialist's work serves to provide deep industry experience. This industry experience is used by the Audit Team to evaluate methods and estimates employed by Management in determining fair value. |
| e. The form and content of the specialist's findings and conclusions. | JL 07/08/2006 | Findings and conclusions are located in the Subject Matter Expert (SME) memo at workpaper **5259 Series** |
| f. The documentation included in the specialist's report. | JL 07/08/2006 | See Subject Matter Expert (SME) memo in workpaper **5259 Series** |
| B. EVALUATE RELATIONSHIP OF SPECIALIST TO THE CLIENT |  |  |
| 1. Before relying on the work of specialists, we should evaluate the relationship of the specialist to the client, including circumstances that might impair the specialist's objectivity. | JL 07/08/2006 | Deloitte IFV specialists are independent to the client |

Confidential Treatment Requested by Deloitte & Touche LLP,

ATTORNEYS' EYES ONLY

DELOITTE-FNMA-0966546

|  | Performed By | Comments, References |
|---|---|---|
| a. Determine whether there are circumstances that indicate that the client has the ability to directly or indirectly control or significantly influence (e.g., through employment, ownership, contractual right, family relationship, or otherwise) the specialist. | JL 07/08/2006 | Deloitte IFV specialists are independent to the client |
| b. If the specialist has a relationship with the client, we should perform additional procedures with respect to some or all of the specialist's assumptions, methods, or findings to determine that the findings are not unreasonable. We should consider whether it is necessary (1) to consult with others within the Firm having specialized functional or industry knowledge or (2) to engage another specialist to evaluate the assumptions, methods, or findings. | JL 07/08/2006 | Deloitte IFV specialists are independent to the client |
| 2. If deemed appropriate, obtain a letter confirming the specialist's independent status. See AAPMS AUD 4.26h.01 for Specialist's Independence Letter. | JL 07/08/2006 | Not Applicable |
| **C. USE THE FINDINGS OF A SPECIALIST** | | |
| 1. The appropriateness and reasonableness of the assumptions and methods used and their application in preparing estimates is the responsibility of the specialist. However, we should perform the following procedures with regard to the specialist's work: | | |
| a. Obtain an understanding of the assumptions and methods used by the specialist to determining if they are suitable for corroborating management's representations in the financial statements. | JL 07/08/2006 | See Subject Matter Expert (SME) memo in workpaper **5259 Series** |
| b. Conduct auditing procedures on the data provided by management to the specialist, taking into consideration our assessment of control risk, to obtain reasonable assurance that the data were appropriate, sufficient, relevant, and reliable. | JL 07/08/2006 | See Valuation Model Audit Program and Memo in the **5258A Series.** |
| c. Obtain or prepare adequate documentation of procedures performed, evidence obtained, and conclusions reached by the specialist. | JL 07/08/2006 | See Subject Matter Expert (SME) memo in workpaper **5259 Series** |
| d. Assess whether the specialist's findings are suitable for corroborating management's assertions in the financial statements. | JL 07/08/2006 | See Subject Matter Expert (SME) memo in workpaper **5259 Series** |

Confidential Treatment Requested by Deloitte & Touche LLP,

ATTORNEYS' EYES ONLY

DELOITTE-FNMA-0966547

| | Performed By | Comments, References |
|---|---|---|
| 2. Ordinarily, we may rely on the work of the specialist unless our knowledge of the business, the results of our procedures, or other information coming to our attention would lead us to believe that the work of the specialist is unreasonable in the circumstances. If we believe that the findings are unreasonable, we should apply additional procedures, which may include discussions with management and obtaining the opinion of another specialist. | JL 07/08/2006 | Not Applicable |
| **D. DETERMINE THE EFFECT OF A SPECIALIST'S WORK ON OUR REPORT**<br><br>1. If our concerns cannot be resolved after performing additional procedures in C2 above, we should determine whether we should qualify our opinion or disclaim an opinion because of a scope limitation (see AAPMS REP 245). | JL 07/08/2006 | Not Applicable |
| 2. If, after performing the procedures in A through C above, we conclude that management's assertions in the financial statements are not in conformity with generally accepted accounting principles, we should determine whether to express a qualified or adverse opinion (see AAPMS REP 240). | JL 07/08/2006 | Not Applicable |
| 3. We do not normally refer to the work or findings of a specialist in our report, because such a reference might be misunderstood to be a qualification of our opinion or a division of responsibility, neither of which is intended. If we decide to add an explanatory paragraph to our report as a result of the report or findings of the specialist, we may refer to and identify the specialist if it will facilitate the reader's understanding of the reason for the explanatory paragraph or the departure from an unqualified opinion. | JL 07/08/2006 | Not Applicable |

Confidential Treatment Requested by Deloitte & Touche LLP,

ATTORNEYS' EYES ONLY

DELOITTE-FNMA-0966548